SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISTRICT

| | |
|---|---|
| In re: EIGHTH JUDICIAL DISTRICT CHILD VICTIMS ACT LITIGATION | **CASE MANAGEMENT ORDER** |
| THIS DOCUMENT APPLIES TO CASES AGAINST RELIGIOUS INSTITUTIONS AND CLERGY | |

## I.  <u>Applicability of This Order</u>

This Order applies to all pretrial procedures involving all Child Victims Act cases against religious institutions and clergy now or hereafter commenced in the Supreme Court of State of New York, Eighth Judicial District ("EJDCVAL"), except as otherwise directed by the Court upon motion and for good cause shown by the party seeking to have this Order declared inapplicable.

## II.  <u>Purpose of This Order</u>

It is in the interest of justice to encourage and bring about the fair, expeditious and inexpensive resolution of these cases. This Case Management Order ("CMO") is established in an effort to achieve this goal, to allow the parties to obtain reasonably necessary documents and information without imposing undue burdens, and to permit the parties to evaluate these cases,

reach early settlements and prepare unsettled cases for trial. The essential components of the CMO include, to the extent feasible:

    A.    Standardization of discovery so that the parties can obtain the necessary information to evaluate cases for settlement or to prepare them for trial at minimum cost;

    B.    Conducting early pretrial conferences to explore settlement opportunities, resolve pretrial management problems and establish discovery cut-off dates;

    C.    Ordering and scheduling of cases for pretrial procedures and trial and

    D.    Coordination of discovery, the use of Liaison Counsel, and other matters as necessary to avoid duplication, contain costs and expedite disposition through settlement or trial.

    E.    Judges assigned to CVA cases shall establish a dedicated day and time for conferences and motions.

## III.    <u>Rules of Procedure</u>

The Civil Practice Law and Rules and the Rules of the Fourth Department, the Eighth Judicial District and the Counties comprising the Eighth Judicial District Rules, together with the express provisions of this Order, shall govern all proceedings in the EJDCVAL.

Any costs incurred through the Alternative Dispute Resolution program of the Eighth Judicial District shall be equally paid by the participating parties.

## IV.    <u>Liaison Counsel</u>

A.    Appointment of Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to act on behalf of plaintiffs' counsel and defendants' counsel, respectively, after appropriate consultation where necessary, will facilitate communications among the Court and counsel, minimize duplication of effort, and provide for the efficient progress and control of this litigation.

B.    Subject to the right of any party to present individual positions or divergent positions or to take individual actions, Liaison Counsel are vested by the Court with the following responsibilities and duties:

1.    Coordinating the conduct of discovery procedures, including but not limited to coordination of the preparation of joint written interrogatories, joint requests to admit, and joint requests for the production of documents, where applicable;

2.    Coordinating the examination of witnesses in depositions;

3.    Calling meetings of counsel for plaintiffs' counsel and defendants' counsel, respectively, for the purpose of proposing joint actions, including but not limited to responses to questions and suggestions of the Court or of adversaries with regard to orders, schedules, briefs, and stipulations of the facts.

C.    Liaison Counsel for the plaintiffs shall be:   Stephen Boyd, Esq.; Diane Paolicelli, Esq.; Michael Reck, Esq.; Devin Storey, Esq.; James Marsh, Esq.; Jordon Merson, Esq.; and Francis Letro, Esq.

D.    Liaison Counsel for the defendants shall be:  Terrence M. Connors, Esq.; Randall D. White, Esq.

E.    Liaison Counsel are authorized to receive orders, notices, correspondence and telephone calls from the Court regarding general case management issues on behalf of all

3

plaintiffs and defendants. Liaison Counsel shall be responsible for notifying all plaintiffs' counsel and defendants' counsel, respectively, of all communications received from the Court. Liaison Counsel may not be used by any party for service and/or distribution of papers, orders, notices or correspondence to other counsel.

F.     Notwithstanding the appointment of Liaison Counsel, each counsel shall have the right to participate in all proceedings before the Court as fully as such counsel deems necessary.

G.     Liaison Counsel shall not have the right to bind any party except Liaison Counsel's own respective clients as to any matter without the consent of counsel for any other party.

H.     Plaintiffs' Liaison Counsel have agreed not to be compensated for their services. Defense Liaison Counsel shall be compensated for their services by each defense law firm on an equitable basis to be agreed upon by the parties. Each plaintiff and defense law firm are to pay a proportionate share of the disbursements incurred by its respective Liaison Counsel in representing its interest.    Counsel for plaintiffs and defendants shall meet and confer regarding what disbursements are eligible for cost sharing and the method for determining each plaintiff's and defendant's proportionate share of those disbursements.    Liaison Counsel shall keep records of such disbursements and/or services in reasonable detail for examination by counsel. Liaison Counsels' invoices for services and/or disbursements as Liaison Counsel pursuant to this Order shall be due and payable when submitted. Interest shall be computed at the rate applicable to judgments starting thirty (30) days after the date of their submission.

I.     The designation of Liaison Counsel can be amended without any further court Order.

4

## V.    Pleadings

### A.    Plaintiff's Statement:

A Plaintiff's Statement Form, a copy of which is annexed as Appendix A, shall be completed for each injured plaintiff and provided to defense counsel within thirty (30) days after service of Answer or upon request of defense counsel. Plaintiff's Statement shall not be filed. In no event are Plaintiff's Statements intended to limit proof and they shall not be admissible for any purpose.

If at any time after providing the Plaintiff's Statement, but before service of plaintiff's Answers to Standard Interrogatories, plaintiff's claims change, the Plaintiff's Statement shall be amended accordingly. All such amendments must be provided within sixty (60) days of notification to defendant's counsel of such change in claim.

### B.    Defendant's Statement:

A Defendant's Statement Form, a copy of which is annexed as Appendix B, shall be completed for each defendant and provided to plaintiff's counsel within sixty (60) days after service of the Answer. Defendant's Statement shall not be filed. In no event are Defendant's Statements intended to limit proof and they shall not be admissible for any purpose.

## VI.    Standard Consolidated Discovery

### A.    Interrogatories and Document Requests:

Standard Interrogatories and Requests for Production of Documents shall be used as set forth herein. The Court on its own motion hereby permits the use of interrogatories in addition to depositions pursuant to CPLR §3130.

## I. Defendants' Interrogatories and Document Requests:

a. Defendants' Standard Interrogatories and Requests for Production of Documents to plaintiffs will be provided to Plaintiffs' Liaison Counsel. These Standard Interrogatories captioned "Defendants' First Set of Interrogatories and Request for Production of Documents" ("Defendant's' Standard Interrogatories"), are annexed as Appendix C.

b. Plaintiffs shall serve responses to Defendants' Standard Interrogatories ("Plaintiffs' Answers to Standard Interrogatories") upon all defendants in an action and in accordance with the applicable discovery and trial submission schedule for that action. Defendants' Standard Interrogatories shall be answered in full, unless appropriate objections are stated in lieu of an answer. Plaintiffs' Answers to Standard Interrogatories shall be verified by the individual injured plaintiff(s) or plaintiff's estate representative.

c. A defendant may serve supplemental, non-repetitive interrogatories and requests for production of documents ("Defendant's Supplemental Interrogatories") in accordance with the applicable discovery and trial submission schedule for that action. Defendants' counsel are to exercise good faith in determining the need for such further interrogatories.

d. Copies of any records obtained by a defendant pursuant to authorization of a plaintiff, other than those records which are obtained through a mutually agreed upon records retrieval service, shall be made available to plaintiff's counsel by notice of

6

receipt mailed to plaintiff's counsel within twenty (20) days of defendant's receipt of such records.

**2.      Plaintiffs' Interrogatories and Document Requests:**

a.      Plaintiffs' Standard Interrogatories, and Omnibus and Standard Requests for Production of Documents will be provided to Defendants' Liaison Counsel. These Standard Interrogatories and Request for Production of Documents are annexed as Appendices D, E and F. In the event that a plaintiffs' counsel commences an action against a defendant not previously sued, said plaintiff's counsel will serve Plaintiffs' Standard Interrogatories and Document Requests on such defendant.

b.      To the extent not previously done, each defendant shall serve on plaintiff's counsel a single set of responses to Plaintiffs' Standard Interrogatories ("Defendants' Answers to Standard Interrogatories"). Defendants' Answers to Standard Interrogatories shall be applicable to all EJDCVAL actions. When so served, Defendants' Answers to Standard Interrogatories shall be deemed served in accordance with the applicable discovery schedule in each individual action.

c.      A defendant who has served answers to Standard Interrogatories in any jurisdiction in New York State other than the Eighth Judicial District is entitled to adopt those interrogatories answers as and for their responses to Plaintiffs' Standard Interrogatories in the EJDCVAL, provided that the defendant serves responses to any non-duplicative interrogatories contained in Plaintiffs' Standard Interrogatories in the EJDCVAL.

d.      A plaintiff may serve supplemental, non-repetitive interrogatories and requests for production of documents ("Plaintiff's Supplemental Interrogatories") in

7

accordance with the applicable discovery and trial submission schedule for an action. Plaintiffs' counsel are to exercise good faith in determining the need for such further interrogatories.

**B.      General Guidelines Regarding Document Requests:**

1.      A party requesting discovery and inspection of documents shall specify a reasonable time, place, and manner for making the inspection. The request will describe each item with reasonable particularity.

2.      Responses to requests for discovery and inspection of documents should be, to the extent practicable, in such form as will make clear the request to which the document is responsive.

3.      Any response that a document cannot be located shall state with reasonable particularity the efforts made to obtain the requested document.

4.      Counsel are to exercise good faith in making requests for and in responding to requests for production of documents.

5.      Counsel are to exercise their best efforts to resolve on an informal basis disputes arising out of the document requests and responses and objections thereto.

**C.      General Guidelines Regarding Discovery:**

1.      Counsel are to meet and confer regarding any and all discovery disputes. Any discovery dispute that remains unresolved shall be called immediately to the attention of the Court for resolution and, unless otherwise directed by the Court, shall not be relied upon by any party as a justification for not adhering to any applicable discovery and trial submission schedule.

2.      Objections to discovery based on privilege shall clearly identify the privilege claimed and shall provide sufficient information concerning (i) the basis for the claim

8

of privilege to establish *prima facie* the validity of the claim, and (ii) the privileged information to permit identification of the information or document as to which privilege is claimed. If not so identified, the privilege shall be deemed waived. The parties shall negotiate in an effort to preserve any confidentiality.

3. Any objection to discovery based on burdensomeness shall describe the burden with reasonable particularity. Any objection based on burdensomeness and any objection to the time, place, or manner of production shall state a reasonable alternative as a counterproposal.

4. Any response that information cannot be determined shall state with reasonable particularity the efforts made to obtain the requested information.

5. Any notice and/or motion for discovery served upon a non-party shall be served contemporaneously upon all parties to the action.

## VII. <u>Physical Examinations of Plaintiffs</u>

Physical examinations of plaintiffs shall be conducted in accordance with the CPLR and applicable case law.

9

## VIII. Depositions

### A. General Guidelines:

  1. All depositions of parties shall be held in the Judicial District where the case is venued, unless otherwise ordered by the Court or agreed to by the parties, and may be attended by any counsel who has a pending case involving the parties being deposed.

  2. All counsel shall avoid unnecessary and repetitive questioning of witnesses.

  3. Unless all parties otherwise agree, all objections, except as to the form of the question, shall be reserved for determination by the trial judge.

  4. Counsel may notice any deposition to apply to more than one case and shall use best efforts to ensure that depositions are noticed to apply to all appropriate cases. Nothing in this provision shall be deemed to prohibit a party from moving to limit the use of deposition testimony based upon good cause shown.

  5. All depositions shall be conducted with due regard for the physical and emotional condition, health, and disability of the deponent.

  6. In the event that a notice for a discovery deposition is not served, but deposition is scheduled by agreement of counsel or order of the Court, any such deposition of an injured plaintiff, plaintiff spouse or personal representative will be deemed to have been noticed for or scheduled by defendants' counsel and any such depositions of a defendant will be deemed to have been noticed for or scheduled by plaintiffs' counsel.

  7. Deposition testimony may be used only against those parties which received actual written notification of the deposition stating the date, time and location of the

10

deposition. Said notification must be served in compliance with the CPLR, this Order, or other Court order and, in any event, unless good cause is shown, must be served no later than ten (10) business days prior to the scheduled date of the deposition.

       8.     Counsel may attend any deposition by way of video conference at their own expense.

**B.    Depositions of Plaintiffs:**

       1.     Depositions of injured plaintiffs will be scheduled by Defendants' Liaison Counsel when preparing discovery and trial submission schedules for actions scheduled for trial. In all actions, the rights of defendants and third-party defendants to depose plaintiff spouses, personal representatives and distributees of decedents at any time prior to jury selection is reserved. Such a deposition may be requested, noticed for and/or scheduled by any defense counsel.

       2.     Questioning of the injured plaintiff by defendant's counsel shall begin with interrogation by Defendants' Liaison Counsel, followed by interrogation by other defendant's counsel in an order agreed to by defendant's counsel or as decided by Defendants' Liaison Counsel when such an agreement cannot be reached.

       3.     Questioning of plaintiff spouses, personal representatives and distributees of decedents shall begin with interrogation by the defendant's counsel who requested, noticed and/or scheduled the deposition, followed by interrogation by other defendant's counsel in an order agreed to by defendant's counsel or as decided by Defendants' Liaison Counsel when such an agreement cannot be reached.

**C.    Depositions of Defendants and Non-Party Witnesses:**

1.      Depositions of defendants' witnesses will be noticed for and/or scheduled by the party seeking the deposition during the period of time that is provided in the applicable discovery and trial submission schedule for conducting of such depositions.

2.      Any plaintiff may serve notice of intent to take non-repetitive deposition of defendants' representatives pertaining to issues which were not covered or not adequately covered by prior depositions of that defendant. Deposition of defendants' representatives will be scheduled by Plaintiffs' Liaison Counsel. Objections to said depositions shall be brought by the affected defendant before the Court who shall issue a ruling. All corporate depositions shall be noticed at a time and place convenient to the parties and witnesses, taking into account the expense to the parties and the health of the defendants' witness.

3.      Questioning by plaintiffs' counsel shall begin with interrogation by Plaintiffs' Liaison Counsel or by the plaintiffs' counsel who noticed the deposition, followed by the plaintiffs' counsel in the order of their appearance in this litigation and defendant's counsel in the order described in Section VIII(B)(2). If the above deponent is a present or former officer or employee of a defendant, that defendant shall question first, followed by other defendant's counsel in the order described in Section VIII(B)(2).

4.      Depositions of non-party witnesses will be noticed and/or scheduled by the party seeking the deposition through Liaison Counsel.

**D.     Videotaped Depositions:**

1.      For the purpose of this section, the term videotaped depositions shall include videotaped trial testimony.

12

2.    Any party upon service of proper notice of deposition may videotape depositions for any use permitted by the CPLR. All videotape depositions shall be conducted in accordance with 22 NYCRR 202.15, with the exceptions and stipulations set forth below:

a.    If the party noticing or scheduling a deposition wants the deposition to be videotaped, the party shall so advise all parties either in its notice of the deposition or by letter;

b.    The videographer may not be an employee of any party or any party's counsel;

c.    The videotaped deposition shall be taken before a person authorized by statute who will swear the deponent and make a stenographic record of the proceedings;

d.    At the beginning of the deposition, the videographer will state on camera, in addition to the information required by Uniform Rule Section 202.15(d)(1), the title and venue of the action, the name of the deponent and the name of the officer before whom the deposition is being taken.

3.    Unless all counsel agree otherwise or unless the Court on motion directs otherwise, no more than three (3) cameras may be used.

4.    All objections to questions and testimony given at a videotaped deposition, except as to the form of the question, are preserved until the time of trial.

5.    The cost of the videotape and the cost of recording the deposition on videotape will be borne by the party noticing the videotaped deposition; that party shall have ownership of the videotape. When an edited version is required, the cost of the videotape, as a material, and the cost of producing the edited version of the videotape recording for use at trial

13

shall be borne by the party who caused to be recorded testimony of other evidence subsequently determined to be objectionable and ordered stricken from the tape by the Court; that party shall have ownership of the edited version of the videotape.

### E. Stenographer's Fees

1. When a deposition of a party to an action is taken at the request of any other party, the cost of the stenographer's appearance, the preparation of the transcript and the party deponent's copy of the transcript shall be divided equally among all counsel who appear at the deposition, other than counsel for the party-deponent. Any party, other than the party-deponent, who requests a copy of the transcript shall bear the cost of that copy.

2. When a party elects to take his, hers or its own testimony, that party shall bear the cost of the stenographer's appearance and the preparation of the transcript. Any party who requests a copy of the transcript shall bear the cost of that copy.

3. When a deposition of a non-party is taken, the cost of the stenographer's appearance, the preparation of the transcript, and the non-party's copy of the transcript will be divided equally among all counsel who appear at the deposition, other than counsel for the non-party. Any party, other than the non-party's counsel, who requests a copy of the transcript shall bear the cost of that copy.

## IX. Expedited Discovery and Trials for *In Extremis Plaintiffs*

A. When an injured plaintiff is *in extremis*, plaintiff's counsel may petition the Court for an Order providing for a jury selection date and an expedited discovery and trial submission

schedule. Any such petition to the Court shall be served on all parties and/or prospective parties and shall include and/or be accompanied by:

    1.    A medical affidavit executed by a treating physician specifying the injured plaintiff's present diagnosis and prognosis and indicating any prescribed medication which would in any way affect the injured plaintiff's mental faculties and ability to understand and respond to questioning;

    2.    A copy of the summons and complaint and any amended and/or supplemental summonses and complaints;

    3.    Plaintiff's responses to Defendants' Standard Interrogatories and to any supplemental interrogatories previously served;

    4.    All medical records and reports in the possession of plaintiff and plaintiff's counsel; and

    5.    All other documents requested by defense counsel and in plaintiff's or plaintiff's counsel's possession including all tax, workers' compensation and social security records.

B.    In the event that plaintiffs' counsel seeks to conduct videotaped trial testimony of the injured plaintiff, plaintiffs' counsel will permit defendants to conduct a discovery deposition prior to the videotaped trial testimony.

C.    Plaintiff may not conduct videotaped trial testimony of an *in extremis* injured plaintiff unless the materials set forth in Section VI (A) have been provided to all defense counsel and defense counsel have completed their discovery deposition.

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41, Description: Exhibit 5, Page 15 of 116

D.    The parties will make a good faith effort to schedule the *in extremis* discovery deposition and videotaped trial testimony at mutually agreeable times and locations. All parties are encouraged to act reasonably concerning the scheduling.

## X.    Scheduling of Trials and Discovery

### A.    Jury Selection Date and Discovery:

At the time of the party's preliminary conference, a Jury Selection date shall be selected.

Following the assignment of Jury Selection Date for a given calendar year, counsel will meet and confer to develop a Discovery and Trial Submission Schedule. Counsel shall endeavor to comply with 22 NYCRR 202.72. The Discovery and Trial Submission Schedule will set forth a date for each of the following discovery and trial submissions steps as in Appendix G:

Step 1.    Date by which defendants are to serve standard interrogatories and document requests.

Step 2.    Date by which plaintiffs are to serve responses to defendants' standard interrogatories and document requests and any objections to defendant's standard interrogatory and document requests.

Step 3.    Date by which plaintiffs are to serve standard interrogatories and document requests and serve medical authorizations.

Step 4.    Date by which defendants are to serve responses to plaintiffs' standard interrogatories and document requests and any objections to plaintiffs' interrogatory responses.

16

Step 5.    Date by which defendants are to serve supplemental interrogatories.

Step 6.    Date by which plaintiffs are to serve supplemental interrogatories.

Step 7.    Date by which defendants are to serve responses to plaintiffs' supplemental interrogatories.

Step 8.    Date by which plaintiffs are to serve responses to defendants' supplemental interrogatories.

Step 9.    Date for referral to Alternative Dispute Resolution prior to depositions.

Step 10.   The date of injured plaintiff's deposition. In all actions, the rights of defendants and third-party defendants to depose plaintiff spouses, personal representatives and distributees of decedents at any time prior to jury selection is reserved.

Step 11.   The date of commencement of depositions of defendants, third-party defendants and non-parties.

Step 12.   Date by which plaintiffs are to provide all medical materials relative to damages to defendants. It is plaintiffs' duty to locate and obtain possession of all medical materials relative to damages and to provide them to the defendants.

Step 13.   Pretrial conference.

Step 14.   Date by which defendants are to commence third-party actions, if any.

Step 15.   Date by which plaintiffs are to serve expert information.

Step 16.   Date by which defendants are to serve expert information.

Step 17.   Pretrial conference.

17

Step 18.        Date for referral to Alternative Dispute Resolution prior to trial.

Step 19.        Date by which plaintiffs and defendants are to serve all motions for summary judgement.

Step 20.        The date by which plaintiffs are to serve and file notes of issue and statements of readiness and to serve on each defendant a settlement demand.

Step 21.        Pretrial conference and argument of motions for summary judgment.

Step 22.        Date by which plaintiffs and defendants are to serve trial witness and exhibit lists and by which both plaintiffs and defendants are to serve all motions in limine.

Step 23.        Date by which plaintiffs and defendants are to serve deposition designations for trial.

Step 24.        Date by which plaintiffs and defendants are to serve counter designations for trial.

Step 25.        Date on which motions in limine will be argued and a final pretrial conference will be conducted. Ordinarily, the motions in limine will be argued two weeks prior to Jury Selection.

Step 26.        The Jury Selection Date.

Plaintiffs' Counsel and Defendants' Counsel will provide a copy of the Discovery and Trial Submission Schedule to the Court (see appendix C) within thirty (30) days after the preliminary conference.

**B.      Removal of Actions from the Trial Calendar:**

1.      An action will be removed from the Trial Calendar if the plaintiff fails to comply with Discovery Step 2 within 30 days of the scheduled date for compliance.

18

2.      An action may be removed from the Trial Calendar if the plaintiff fails to comply with Discovery Step 15. Any party wishing to avail themselves of the sanction provided by this paragraph shall make a written application.

## XI.    **Miscellaneous**

Matters not addressed in this CMO will be addressed by the Assigned Judge's individual rules. The Court recognizes that cooperation among counsel and parties is essential for the orderly and expeditious resolution of this litigation. The communication of information among plaintiffs' counsel, among defendants' counsel, and among defendants shall not be deemed a waiver of the attorney-client privilege, the protection afforded by the attorney work-product doctrine, or any other privilege to which a party may be entitled. Any cooperative efforts described above shall not, in any way, be used against any of the parties, shall not constitute evidence of conspiracy, concerted action, or any wrongful conduct, and shall not be communicated to the jury. The exchange of information or documents by counsel will not, by itself, render such information or documents privileged.

Liaison Counsel for plaintiffs and defendants are hereby directed to transmit a copy of this Order to all counsel who have appeared in these actions.

**SO ORDERED.**

_(signature)_ 11/8/19

HONON. DEBORAH A. CHIMES, J.S.C.

19

# APPENDIX A

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 20 of 116

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISTRICT

_____

In re     EIGHTH JUDICIAL DISTRICT
          CHILD VICTIMS ACT

_____

This document applies to:

EIGHTH JUDICIAL DISTRICT
CHILD VICTIMS ACT LITIGATION
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF _____

_____

                                        Plaintiffs,


        vs.                                        PLAINTIFF'S STATEMENT

                                        INDEX NO._____

                                        Defendants.

_____


PLEASE STATE:


    Alleged Causes of Action:


_____

_____

_____

Alleged Abuse:

_____

_____

_____

_____

_____

Location of Abuse:

_____

_____

_____

_____

As to PLAINTIFF:

1.    Full Name: _____

2.    Date of Birth: _____

3.    Present Address: _____

4.    Dates of Alleged Sexual Abuse: _____

Case 1-20-01016-CLB,    Doc 29-5,    Filed 05/19/20,    Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 22 of 116

5.   Age at time of Sexual Abuse: _____

6.   Plaintiff's Present Age: _____

7.   Name of Alleged Perpetrator: _____

8.   Affiliation of Alleged Perpetrator: _____


As to Plaintiff's Spouse, if applicable:


10.   Full Name: _____

11.   Date of Birth: _____

12.   Present Address: _____


Dated: _____

                                        (Signature of Plaintiff or Attorney)



                                        _____


                                        By: (Typed name of signator) Name,

                                        address, telephone number and e-mail

                                        address of Attorney for Plaintiff(s)



APPENDIX A


23

# APPENDIX B

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 24 of 116

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISTRICT

---

In re   EIGHTH JUDICIAL DISTRICT
        CHILD VICTIMS ACT

---

This document applies to:

EIGHTH JUDICIAL DISTRICT
CHILD VICTIMS ACT LITIGATION
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF _____

---

                                   Plaintiffs,

    vs.                                      DEFENDANT'S
STATEMENT

                                      INDEX NO._____

                                   Defendants.

---

PLEASE STATE:

1.     Is alleged perpetrator still alive?  YES / NO

       If deceased, date of death: _____

2.     Last known address of alleged abuser:

_____

_____

3.    If a named or identified parish merged with any other parish state when the merger or mergers occurred.

_____

_____

       Identify the surviving parish's name:

_____

_____

4.    If a named or identified parish closed, state when closure occurred:

_____

_____

Dated: _____              _____
                                    (Signature of Defendant or Attorney)


                                    _____

                                    By: (Typed name of signator) Name,

                                    address, telephone number and e-mail

                                    address of Attorney for Plaintiff(s)


APPENDIX B

26

# APPENDIX C

SUPREME COURT OF THE STATE OF NEW YORK

EIGHTH JUDICIAL DISTRICT

COUNTY OF _____

_____

In Re: EIGHTH JUDICIAL DISTRICT

CHILDREN VICTIMS ACT LITIGATION

_____

**DEFENDANTS'
STANDARD FIRST SET OF
INTERROGATORIES &
REQUEST FOR PRODUCTION
OF DOCUMENTS**

                              Plaintiff,

v.

INDEX NO.:

JUSTICE:

                              Defendants.

_____

DEFENDANTS' STANDARD

FIRST SET OF INTERROGATORIES &

REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants, hereby propound the following Standard First Set of Interrogatories & Request for Production pursuant to the Case Management Order, and CPLR §3120 and §3130, to be answered separately and severally under oath by the Plaintiff, within twenty (20) days of service, or as otherwise directed by the applicable case scheduling order.

## **INTERROGATORIES**

## INSTRUCTIONS AND DEFINITIONS

A. The following interrogatories shall be deemed to be continuing, and any additional information, including but not limited to, any conclusions, opinions, or contentions which relate in any way to these interrogatories, which are different from those set forth in your answers hereto, and which you acquire subsequent to the date of answering these interrogatories, up to and including the date of trial, shall be furnished to the attorneys for the defendant promptly after such information is acquired.

B. Each interrogatory is addressed to the personal knowledge of the Plaintiff, the attorney(s) for said Plaintiff and investigators, agents and employees or other representatives, as well as to all information available to them.

C. The term "individual identified in the Complaint" refers to the alleged individual or individuals, whether or not a party to the action, including clergy and lay persons, that

Plaintiff contends actually committed the alleged abuse, tortious, criminal, wrongful, unlawful or nonconsensual conduct or contact involving the Plaintiff.

D. The terms "incident" and "incidents" and "incident(s)" refers to the alleged events of abuse, tortious, criminal, wrongful, unlawful or nonconsensual conduct or contact identified or alleged in the Complaint.

## INTERROGATORIES

1. State the Plaintiff's full name, and any aliases or nicknames, Social Security number, and date and place of birth.

2. State the names, dates of birth and addresses of Plaintiff's parents, foster parents or legal guardians. If deceased please identify the date of death.

3. State the names, dates of birth and addresses of Plaintiff's siblings. If deceased, please identify the date of death.

4. State the names, dates of birth and addresses of Plaintiff's children. If deceased please identify the date of death.

5. State Plaintiff's current marital status, including marriage date, name of spouse, and date of birth of Plaintiff's most recent spouse, and if applicable, the name of any former spouse and provide prior marriage dates and dates of death, divorce or annulment for prior marriages, as applicable.

6.  State each of Plaintiff's addresses before and after the alleged incident(s) and give the inclusive dates during which Plaintiff resided at each, and the names of all persons with whom you resided and your relationship to those persons.

7.  With regard to the *earliest or first incident* of alleged abuse against the Plaintiff identified in the Complaint provide the following information:

    (a)    Date:_____

    (b)    Time:_____

    (c)    Location:_____

    (d)    On that date with whom did Plaintiff reside at home?

    (e)    On that date what school, academic or vocational institution was Plaintiff attending?

    (f)    On that date who was Plaintiff's primary care physician?

    (g)    Is the Plaintiff aware of, or in possession of, any contemporaneous document, writing or other physical evidence memorializing the incident? If yes, provide a copy.

    (h)    Identify the individual identified in the Complaint who Plaintiff contends committed this earliest or first incident?

    (i)    Identify the first person this incident was reported to; the date the report was made; by whom the report was made; and how the

31

report was made.

8. With regard to *each subsequent incident* of alleged abuse against the Plaintiff identified in the Complaint provide the following information:

   (a) Date:_____

   (b) Time:_____

   (c) Location:_____

   (d) On that date with whom did Plaintiff reside at home?

   (e) On that date what school, academic or vocational institution was Plaintiff attending?

   (f) On that date who was Plaintiff's primary care physician?

   (g) Is the Plaintiff aware of, or in possession of, any contemporaneous document, writing or other physical evidence memorializing the incident? If yes, provide a copy.

   (h) Identify the individual identified in the Complaint who Plaintiff contends committed this earliest or first incident?

   (i) Identify the first person this incident was reported to; the date the report was made; by whom the report was made; and how the report was made.

9. State whether the Plaintiff ever filed bankruptcy, and if so, identify the court

32

and docket number, date of original filing and date of discharge.

10.   As to each school, academic or vocational institution attended by Plaintiff, identify the name and address of the school, the period of time attended, highest grade level, degree obtained and the reason for leaving the school, academic or vocational institution.

11.   Was Plaintiff ever drafted, enlisted, been commissioned, or been rejected for service in any branch of the military?   If yes, identify the following:

  (a)   branch of service;

  (b)   date of enlistment or commission;

  (c)   military occupational specialty;

  (d)   assigned duty stations/locations;

  (e)   date of discharge;

  (f)   rank on discharge date;

  (g)   characterization of discharge on Form DD214, or other applicable characterization;

  (h)   if administratively separated state the basis;

  (i)   if rejected for military service state the reason.

12.   State the names and addresses, and give the inclusive dates of employment of each of Plaintiff's employers before and after the date of the incident(s) alleged in the

33

Complaint and a description of Plaintiff's duties, job title, supervisor, rate of compensation and the reason for terminating employment.

13. State whether the Plaintiff claims any loss of income and/or employment related benefits from the incident(s) alleged in the Complaint.

14. If Plaintiff is claiming any loss of earnings and/or employment related benefits, or loss of earning capacity, that Plaintiff alleges to have been caused by the incidents or injuries alleged in the Complaint, please state:

    (a)    Any periods of time that Plaintiff claims to have been completely unable to work;

    (b)    Any periods of time when Plaintiff claims to have been restricted in ability to perform work;

    (c)    The total amount that Plaintiff claims to have lost, or that Plaintiff claims Plaintiff will lose in the future, together with a description of how the amounts are computed;

    (d)    The total amount of wages that Plaintiff claims to have lost, or that Plaintiff claims Plaintiff will lose in the future;

    (e)    Identify the employment related benefits that Plaintiff claims to have lost, or that Plaintiff claims Plaintiff will lose in the future, together with a valuation for each employment related benefit identified;

    (f)    The name and address of the employer or employers from whom Plaintiff

34

would have earned any amounts allegedly lost or to be lost.

15. Has the Plaintiff ever applied and been rejected for any life insurance, medical insurance or disability insurance policy? If yes, identify the policy and the relevant date.

16. State the name and address of every physician, naturopath, psychiatrist, psychologist, counselor, or other health care provider that treated Plaintiff for any health problem or injury Plaintiff contends is related to or caused by the incidents alleged in the Complaint, including but not limited to drug, alcohol or other substance abuse, at any time, including the dates of treatment and a description of the condition for which treatment was provided.

17. State the following with regard to the Plaintiff's past and current medical condition(s):

    (a)    the identity of each Physician who treated, examined or consulted with Plaintiff, the dates of said treatment, examination or consultation and any diagnosis made and the date of diagnosis;

    (b)    the identity of each Health Care Institution in which Plaintiff was confined, treated or examined, stating the inclusive dates of any hospitalization and/or the dates of any outpatient treatment, the diagnosis made, the date of

diagnosis, and the nature of the treatment; and

(c)    if the Plaintiff is presently under a Physician's care for medical condition(s) state:

    i.    The identity of each Physician;

    ii.    Any medications or treatments prescribed by each Physician; and

    iii.    The dates of Plaintiff's visits/treatments the last 12 months.

18.    If Plaintiff has ever been involved as a party, witness or other capacity in any civil or criminal litigation give the name and address of the parties, the title and location of the court, the docket number of the case, the date the action was commenced and the date of termination, and a description of the factual circumstances out of which the case arose, and a brief description of Plaintiff's involvement in the litigation.

19.    If Plaintiff has ever presented a claim for compensation to any person, business, insurance carrier or other entity, for physical, mental, or emotional injuries, including any claim for benefits, provide the following as to each claim:

(a)    give the name and address of the party to whom the claim was presented;

(b)    the date the claim was presented;

(c)    a description of the factual circumstances out of which the claim arose together with the date of any accident or injury;

(d)    a description of the physical or mental injuries you sustained together with the

36

period of time during which you suffered from them;

(e) the name and address of every physician or other health care provider rendering treatment; and

(f) if the claim resulted in any administrative or judicial proceedings, give the name and address of the adverse party, the title and address of the court or tribunal, the docket number of the proceedings and the resolution of the proceedings.

(This Interrogatory encompasses and includes health or accident insurance benefits, social security benefits, Veteran's Administration benefits, state or federal benefits for disabilities, workers' compensation benefits, veterans' benefits, tort claims or suits, Federal Employers Liability Act claims or suits, Longshoremen and Harbor Workers Act claims or suits, unemployment compensation insurance benefits, or early payment from any public or private pensions due to disability or his medical condition.)

20. If Plaintiff or any other person acting on Plaintiff's behalf has made any oral or written report of the incident(s) alleged in the Complaint, or made any statements, either oral or in writing, concerning the incident(s) or the alleged injuries (including statements to police officers, insurance investigators, private investigators, or any other person requesting information concerning the incident(s) or injuries), state the name and address of the person making the report or statement (if not the Plaintiff), the name and address of the person or entity to whom the report or statement was given; the date it

was given; and state whether it was given orally or in writing; and if oral, whether it was recorded in any form.

21. If any person, legal entity or agency was arrested, cited or charged with a violation of any criminal or civil law, statute, ordinance, or regulation as a result of the incident(s) alleged in the Complaint, please state: the name of the person, legal entity or agency; the date of arrest, citation or charge; the jurisdiction or court; and the outcome of the proceedings.

22. For each individual identified in the Complaint, state the basis for the allegation that the person was an employee, agent, volunteer, or representative of any Defendant at the time of the alleged incident(s) alleged in the Complaint.

23. List all the sacraments, events, activities, or classes that the individual(s) identified in the Complaint supervised and in which you participated.

24. If Plaintiff alleges that Defendants had notice of conduct by the individual(s) identified in the Complaint that included abuse or unlawful contact with other persons and/or the Plaintiff at any time, state: any and all factual bases for your contention; identify when and to whom the notice was provided; the content of the notice; and whether verbal or written.

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 38 of 116

25. For every injury, condition, or disability that Plaintiff claims to have suffered and which Plaintiff alleges to have been caused by any alleged abuse, tortious, criminal, wrongful, unlawful or nonconsensual conduct, contact, omission or other misconduct for which it is alleged Defendants are responsible, please state:

    (a)    A description of each injury, condition or disability;

    (b)    The date upon which you became aware of each injury, condition, or disability;

    (c)    The manner in which you allege each injury, condition, or disability was caused by any alleged act, omission or other misconduct committed by Defendants, including the identity of any involved person;

    (d)    The name and address of every person upon whom you may rely to establish the existence of each injury, condition, or disability;

    (e)    A description of every item or document, thing, and any other evidence upon which you may rely on to establish or prove each injury, condition, or disability and its causal connection with any alleged act, omission or other misconduct committed by Defendants.

26. Please state any and all factual bases for your allegation that each Defendant engaged in conduct warranting the assessment of punitive damages.

27. As to any alleged abuse, tortious, criminal, wrongful, unlawful or nonconsensual conduct, contact, omission or other misconduct perpetrated or committed by the

39

individual identified in the Complaint involving any person other than the captioned Plaintiff, state: the date of the alleged incident; the time of day each incident took place; the location of the alleged incident; a detailed description of the acts or conduct constituting alleged abuse or other wrongful conduct; the name and address of any person who witnessed the alleged conduct; when and to whom the alleged wrongful conduct was first reported; and whether Plaintiff contends any Defendant had notice of said incident and when.

28. Has the Plaintiff had any written or oral communication with any Defendant about the individual(s) identified in the Complaint? If your answer is yes, state with respect to each Defendant:

    (a)    Whether Plaintiff was a party to such communication;

    (b)    The sum and substance of each such communication;

    (c)    The date and exact location of each communication;

    (d)    Whether such communication was written or oral. If written, annex a copy of same to the response to these interrogatories; if oral, provide a copy of any notes, recordings or transcripts);

    (e)    The identity of or if not known, a description of such Defendant or its alleged employees, agents and/or servants with whom the communication was had; and

    (f)    The identity of or if not known, a description of each witness to each such oral communication.

40

29. Identify by case or docket number all proceedings in which Plaintiff has given a statement or testimony under oath, including statements made in a declaration, affidavit, deposition or other testimony involving or in any way related to the incident(s) alleged in the Complaint.

## DOCUMENT REQUESTS

## INSTRUCTIONS AND DEFINITIONS

A. In responding to these requests, plaintiff is required to produce all documents known or reasonably available to plaintiff, regardless of whether such documents are currently in plaintiff's possession, custody, or control or in the possession, custody, or control of plaintiff's agents, consignees, representatives or investigators, including plaintiff's attorneys or their agents, employees, representatives, or investigators.

B. If any of the documents or information requested cannot be produced in full, plaintiff is required to specify, to the extent possible, the reasons for plaintiff's inability to produce the remainder, and the approximate date when plaintiff expects to produce such documents, if at all.

C. If plaintiff cannot produce documents for any other reason, respond to the extent possible stating the reasons for the inability to respond in full.

D. These requests impose a continuing obligation upon plaintiff. If after producing documents or information responsive to this demand additional information or documents become available to plaintiff, plaintiff is required to produce such additional documents or information.

41

E.     With respect to each document requested that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, plaintiff shall provide the following information separately as to each such document:

(1)     A general description of the subject matter, author, recipient(s), date;

(2)     The identity of each person who has received a copy or had an opportunity to receive a copy thereof;

(3)     The last custodian of the document or copies thereof; and

(4)     The full particulars or circumstances whereby the document was disposed of, destroyed, or otherwise lost including, but not limited to:

1. When and where it was destroyed, or why it is otherwise unavailable;

2. The name and address of each person who destroyed it; and

3. The name and address of each person who directed, approved, or knew of its destruction.

F.     The term "individual identified in the Complaint" refers to the alleged individual or individuals, whether or not they have been made a party to this action, including clergy, lay persons or teacher, that Plaintiff contends actually committed the alleged abuse, tortious, criminal, wrongful, unlawful or nonconsensual conduct or contact involving the Plaintiff.

G.     The terms "incident" and "incidents" and "incident(s)" refers to the alleged events of abuse, tortious, criminal, wrongful, unlawful or nonconsensual conduct or contact identified in the Complaint.

H.    The term "document" shall include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, minutes of meetings, correspondence and communications of any type, photographs, films, tapes, discs, documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by or on behalf of the answering party or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of the answering party.

I.    Definitions provided herein are intended to apply to any grammatical variance of the term or phrase defined.

## DOCUMENT REQUESTS

1.    Any and all documents that memorialize, document and/ or corroborate the alleged incident(s) referenced in the Complaint. This includes, but is not limited to, any document referencing the dates, location, witnesses, number, and/or nature of each incident.

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 43 of 116

2. Any and all photographs, video, and/or other media depicting or memorializing the alleged incident(s) referenced in the Complaint. This includes, but is not limited to, any photographs, video, and/or other media depicting or memorializing the dates, location, witnesses, number, and/or nature of each incident.

3. If Plaintiff is asserting a claim for lost income and/or employment related benefits, any and all documents relating to or substantiating the income loss and/or lost employment related benefits, allegedly sustained by Plaintiff as a result of the incident(s) referenced in the Complaint.

4. If Plaintiff is asserting a claim for lost income and/or employment related benefits, produce copies of Federal and State Income Tax Returns filed by Plaintiff for all years in which you claim income loss, copies of all W-2 statements and 1099 forms, and a copy of Plaintiff's Social Security Earnings Statement, and authorizations to obtain same.

5. Any and all records and documents relating to out-of-pocket medical expenses and claims for health or medical insurance benefits prepared by or on behalf of Plaintiff, in connection with any and all treatment sought for injuries Plaintiff claims resulted from the incident(s) referenced in the Complaint.

6. Any and all diaries, calendars, day planners or journals written by Plaintiff from at or near the time of the alleged incident(s) in the Complaint to the present that memorialize, document or reference the alleged incident(s) referenced in the Complaint in any manner.

7. Any and all correspondence, letters, memoranda, or communications by and between any Defendant and Plaintiff and/or family.

8. Any and all documents claimed to be authored by anyone employed by any Defendant relating in any way to the allegations made by the Plaintiff in the Complaint.

9. Any and all documents relating to reports or complaints made by anyone (including, but not limited to, Plaintiff and/or family) to any Defendant concerning any of the allegations made by the Plaintiff in the Complaint.

10. Any and all documents relating to any alleged incident(s) identified in the Complaint with respect to persons other than Plaintiff, which Plaintiff claims provided notice, or which Plaintiff intends to rely upon to establish any claim. This includes, but is not limited to, alleged incidents occurring before or after the incidents referenced in the Complaint.

11. Any and all documents supporting or otherwise relating to your allegations in the Complaint that any Defendant breached any alleged duty of care in oversight and supervision.

12. Any and all documents supporting or otherwise relating to allegations in the Complaint that any Defendant acted with gross neglect or recklessness.

13. Any and all documents supporting or otherwise relating to allegations in the Complaint that any Defendant committed fraud or failed to make material disclosures.

14. Any and all documents supporting or otherwise relating to allegations that any Defendant engaged in conduct warranting the assessment of punitive damages.

15. Any and all documentation of Plaintiffs attendance at any school, academic, or vocational institution identified in the Complaint.

16. Any and all documents pertaining to the Plaintiff's academic performance, including but not limited to records from current and former schools, attendance records, absence records, confidential individual education plan reports for special education services, learning disability records, records regarding medication use at school, report cards and/or grade transcripts for each year, standardized test scores, disciplinary records, incident reports, teacher comments,

45

suspension records, alternative placements records, counseling records and evaluations. Provide authorizations for Defendant to obtain same.

17.    Any and all documents pertaining to the Plaintiff's employment performance and compensation, including but not limited to records from current and former employers, job applications, performance evaluations, disciplinary records, termination notices, actions regarding salary, all or part of any employer's personnel file, W-2 statements, 1099 forms, payroll records, garnishment records, attendance/absence records, medical records, and several records. Provide authorizations for Defendant to obtain same.

18.    Any and all documents pertaining to the Plaintiff's periods of employment, disability or retirement including receipt of unemployment benefits, worker's compensation benefits, insurance payments to cover periods of disability, provider authorizations, payments, retirement benefits and payments, and social security benefits/payments.

19.    Any and all documents pertaining to the Plaintiff's medical history, including but not limited to: nursing notes, doctor's reports, all other reports (including but not limited to: MRI reports, x-ray reports, toxicology screening reports), evaluations, admission summaries, discharge summaries, progress notes, insurance summaries and correspondence, diagnoses, prescription records, tests, records of office visits and all billings and charges. Provide authorizations for Defendant to obtain same.

20.    Any and all documents pertaining to the Plaintiff's mental health history, including but not limited to: hospital records and notes, evaluations, admission summaries, discharge summaries, progress notes, insurance summaries and correspondence, diagnoses, prescription records, psychological test results (including raw test data), psychological reports and evaluations, and all billings and charges. Provide authorizations for Defendant to obtain same.

21.     Any and all documents pertaining to the Plaintiff's substance abuse treatment, if any. Provide authorizations for Defendant to obtain same.

22.     Any and all documents pertaining to the Plaintiff's evaluations by any psychiatric, psychological, and other mental health experts who have had any contact with plaintiff or who have conducted a review of plaintiff's records. Provide authorizations for Defendant to obtain same.

23.     Any and all documents pertaining to any statement given by Plaintiff or Plaintiff's legal guardians to police, teachers, clergy, therapists, social service workers counselors, doctors, or anyone else about the incident(s) alleged in the Complaint.

24.     Any and all documents pertaining to the Plaintiff's military experience, if any, including but not limited to: enlistment records, disciplinary records, promotion or demotion records, standardized test results, medical records, results of medical boards, court-martial proceedings, and a copy of plaintiff's Form DD214 pertaining to discharge.

25.     To the extent permitted by law, any and all documents pertaining to any releases, settlement agreements or other settlements signed by Plaintiff or executed on Plaintiff's behalf, involving claims of sexual, mental, physical or emotional abuse, including this lawsuit, claims arising from the same events complained of herein, claims prior to the subject incident(s) and claims subsequent to the subject incident(s).

26.     Any and all documents pertaining to any Defendant in this lawsuit, knowing or having reason to know, or being otherwise on notice, of any unlawful conduct by the individual identified in the Complaint (whether or not they have been made a party) prior to the acts and incidents which Plaintiff has alleged in this case.

27. Any and all documents Plaintiff claims support a claim that any Defendant in the captioned lawsuit failed to take reasonable steps to avoid or prevent the alleged unlawful conduct by the individual identified in the Complaint.

28. Any and all writings or documents allegedly authored by any individual identified in the Complaint or any Defendant.

29. Produce for inspection any and all physical evidence of any type pertaining to Plaintiff's allegations in the Complaint.

30. Any and all documents identified, or to which Plaintiff referred to, or relied upon, in responding to Plaintiff's Interrogatory responses.

DATED: _____

_____

_____

[Defense Counsel Signature]

Appendix C

48

# APPENDIX D

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 49 of 116

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISRTICT
COUNTY OF _____

_____

In re: EIGHTH JUDICIAL DISRTICT
　　　　CHILD VICTIMS ACT LITIGATION

_____

　　　　　　　　　　　　　　　PLAINTIFFS' OMNIBUS
　　　　　　　　　　　　　　　REQUESTS FOR PRODUCTION
　　　　　　　　　　　　　　　OF DOCUMENTS

　　　　　　　　　　　　　　　INDEX NO. _____
　　　　　　　　　　　　　　　JUSTICE _____


PLEASE TAKE NOTICE that any entity named as a defendant for the first time in an

Eighth Judicial District Child Victims Act Litigation matter in which a cleric or other

agent of the Roman Catholic Church or another Religious Institution is alleged to have

sexually assaulted, sexually abused, or sexually molested a person under the age of

eighteen years of age, engaged in a sexual offense against a person under the age of

eighteen years of age, or otherwise engaged in sexual misconduct, as defined below,

shall within twenty days after receipt of this notice, serve responses with the Plaintiff

who first served this request upon the defendant. Thereafter, the defendant shall serve

the same responses and any supplement thereto within twenty days after receipt of this

notice from subsequent Plaintiffs.

　　If this case involves non-Roman Catholic religious Institutions, entities and agents,

appropriate revisions should be made to definitions and requests.

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 50 of 116

# I. GENERAL INSTRUCTIONS AND DEFINITIONS

Except as otherwise expressly indicated:

1. As used herein, the terms "you," "your," and "Diocese Corporation" refer to Defendant The Diocese of Buffalo, N.Y., the New York corporation known as The Diocese of Buffalo, N.Y.

2. As used herein, the term "Diocese of Buffalo" refers to the Roman Catholic diocese known as the Roman Catholic Diocese of Buffalo, N.Y.

3. As used herein, the term "cleric" shall refer to a clergyman and includes, but is not limited to, cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop, vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, religious, superior, monk and member of religious institute.

4. As used herein, the term "clerical" shall relate to a clergyman or the clergy.

5. As used herein, the terms "religious" and "religious individual" shall refer to any individual whom a diocesan bishop, the Apostolic See, religious superior, or other authority of the Roman Catholic Church has considered, treated, or determined is a member of a Roman Catholic religious institute, society, house, or order and should be treated as religious, and includes but is not limited to, nun, postulant, novice, temporary professed, perpetually professed, religious brother, religious sister, superior, major superior, prior, abbot, abbot primate, abbot superior, supreme moderator, superior of a monastic congregation, provincial, prior provincial, provincial superior, supreme superior, monk, and member of religious institute, and may include cardinal,

51

archbishop, bishop, auxiliary bishop, regional bishop, titular bishop vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, simplex, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, vicar, moderator, director, counselor, councilor, president, and master.

6. The term "or" is not exclusive and shall be construed both conjunctively and disjunctively in each request.

7. The term "and" is not exclusive and shall be construed both conjunctively and disjunctively in each request.

8. As used herein, the term "parish" refers to a Roman Catholic parish erected or established by a Roman Catholic Bishop or higher authority of the Roman Catholic Church.

9. As used herein, the terms "Perpetrating Cleric" or "Perpetrating Religious Individual" means a cleric, religious, or other employee of the Roman Catholic Church who was alleged, at any time from 1930 to the present, to have, or otherwise were reported to have sexually assaulted, sexually abused, or sexually molested a person under the age of eighteen years of age, committed a sexual offense against a person under the age of eighteen years of age, or otherwise engaged in sexual misconduct. The terms "Perpetrating Cleric" or "Perpetrating Religious Individual" include, but are not limited to individuals that plaintiffs, claimants, or others have alleged, claimed, or reported sexually assaulted, sexually abused, or sexually molested individuals when they were minors, or otherwise engaged in sexual misconduct.

52

10.   As used herein, the term "sexual misconduct" means any of the misconduct referred to in CPLR 208 (b) or CPLR 214-g, including, but not limited to:

a.   The actor touching a minor's intimate parts; the touching by the minor of the actor's, the minor's, or another's intimate parts effected by the use of a position of authority, or by the inducement of the actor;

b.   The actor otherwise inappropriately touching a minor; including, but not limited to, massaging parts of the minor's body or kissing the minor on the lips;

c.   Sexual intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, into the genital or anal openings:

i.   Of the complainant's body by any part of the actor's body or any object used by the actor for this purpose;

ii.   Of the complainant's body by any part of the body of the complainant, by any part of the body of another person, or by any object used by the complainant or another person for this purpose, when effected by the use of a position of authority or by the inducement of the actor;

iii.   Of the body of the actor of another person by any part of the body of the complainant of by any object used by the complainant for this purpose, when effected by use of a position of by the inducement of the actor.

53

d. The actor talking, writing or communicating in any way with a minor regarding anything of a sexual nature;

e. The actor having a minor in the actor's private living quarters, including the actor's bedroom; and

f. The actor engaging in unconsented to sexual activity with an adult; or the actor otherwise sexually touching the adult without consent.

11. As used herein the term "boundary violation" shall mean communications, observations, rumors, suspicions, patterns of behavior, course of conduct, or activity by an adult with a minor child that might be an indicator of inappropriate behavior by that adult, including, but not limited to, buying gifts for a child, giving money to a child, touching a child in a way that makes the child uncomfortable, giving a child extra or special attention, spending time with a child alone without other adult supervision, kissing a child on the lips, sharing a bed with a child, viewing pornography with a child, being alone with a child in a meeting, being alone with a child in a classroom, close physical contact with a child such as lap sitting, knee touching and hugging, tickling a child, massaging a child or having a child massage the adult, commenting on a child's body or appearance, physically disciplining a child, wrestling with a child, giving a child alcohol or drugs, violating the boundaries of a child, allowing a child to spend the night in the rectory, or taking overnight trips with a child that are unrelated to an official event or function.

12. "Person" means any natural person or any business, legal or governmental entity or association.

13. "Concerning" means relating to, referring to, describing, evidencing or constituting.

14. The term "communication" means the transmittal of information (in the form of facts, opinions, ideas, inquiries, or otherwise).

15. The term "document" means, regardless of origin or location, any book, pamphlet, periodical, letter, memorandum, writing, telegram, email, text message, report, record, study, note, working paper, graph, drawing, chart, photograph, image, film, video recording, audio recording, index, tape, disk, data sheet or data processing card, electronically stored information, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, to which you have or have had access. "Document" shall include originals (or copies if originals are not available) and nonidentical copies (whether different from the original because of handwritten notes or underlining or otherwise) and any translations of any document.

16. "Electronically Stored Information" or "ESI" includes any electronically stored information stored in any medium from which such information can be obtained, either directly or after translation by the responding party into a reasonably usable form.

17. Any word written in the singular shall also be construed as plural and any word written in the plural shall also be construed in the singular.

18.    The term "employee" means any officer, director, employee, agent, attorney, accountant or other person acting or purporting to act on behalf of an entity, whether currently or at any time employed by that entity.

19.    Reference to any entity includes each of its officials, officers, directors, employees, agents, attorneys, or other persons acting or purporting to act on behalf of the foregoing, whether currently or formerly employed or retained in these capacities.

20.    When referring to documents, to "identify" means to give, to the extent known, (a) the type of document; (b) the general subject matter; (c) the date of the document; (d) the author or authors, according to the document; (e) the persons to whom, according to the document (or a copy) was to have been sent; and (f) the current location of the document.

21.    If any document, or any portion of any document, is withheld under claim of attorney-client privilege or upon any other ground, the respondent withholding the document shall furnish a list, signed by the person supervising the response to this request, identifying each document withheld and stating with respect to each:

    a.   the legal ground for withholding such document;

    b.   the type of document;

    c.   the general subject matter of the document;

    d.   the date of the document; and

    e.   the number of pages of the document, the identities of the document's author, addressee, and each person to whom copies were sent or were to be sent, including the identity of each person to whom the document, its

56

contents, or any portion thereof is known or has been disclosed, and any other information as is sufficient to identify the document for a subpoena duces tecum.

22. The term "relevant time period" refers to, unless otherwise specified, the period to the present from the earlier of (1) the date the Perpetrating Cleric or Perpetrating Religious Individual started attending seminary or (2) became a postulant, novice, or temporary professed of a Roman Catholic religious institute, society, house, or order.

## IDENTIFICATION OF DESTROYED DOCUMENTS

If any document requested herein has been destroyed, erased, or otherwise discarded, please identify the document in the same manner as you have been requested to identify documents that you claim are privileged, to the extent that such identification is possible.

## DOCUMENT REQUESTS

1. The documents concerning any canons, rules, encyclicals, decrees, decretals, directives, guidelines, rulings, pronouncements, regulations, policies, standards, protocols, or ethical codes of conduct, written or oral, which were in effect at any time from 1930 to the present, pertaining to the actions to have been taken when any archbishop, bishop, vicar general, chancellor, auxiliary bishop, episcopal vicar, vicar forane, regional bishop, supervisor of a region, dean, supervisor of a deanery, archpriest, pastor, parochial vicar, associate pastor, priest, provincial, nun, religious

57

individual, agent, officer, servant, employee, trustee, director, or independent contractor of the Diocese Corporation, of the Diocese of Buffalo, or of the Roman Catholic Church were informed by any manner and from any source of allegations that a priest or member of a religious order affiliated with the Diocese Corporation or engaged in activities in the Diocese of Buffalo had had sexual or other inappropriate contact with an individual under eighteen years of age.

2.   All documents reflecting any report, allegation or claim from 1930 to the present, that a cleric, religious, or other employee of the Roman Catholic Church sexually assaulted, sexually abused, or sexually molested a person under the age of eighteen years of age, committed a sexual offense against a person under the age of eighteen years of age, or otherwise engaged in sexual misconduct including but not limited to all documents contained, stored and maintained in the secret files, subsecreto files, "Z" files, Canon 489 of The Code of Canon Law (1983) files, Canon 379 of The Pio Benedictine Code of Canon Law (1917) files, Red Files, "Active Clergy Files," "The Well," "The Confidential Archive (archivum secretum), "Archive," "Inappropriate Behavior Policies/Referrals," and/or "Clergy File Room".

3.   The documents concerning any canons, rules, encyclicals, decrees, decretals, directives, guidelines, rulings, pronouncements, regulations, policies, standards, protocols, or ethical codes of conduct, written or oral, which were in effect at any time from 1930 to the present concerning the archbishop, bishop, vicar general, chancellor, auxiliary bishop, episcopal vicar, vicar forane, regional bishop, supervisor of a

region, dean, supervisor of a deanery, archpriest, pastor, parochial vicar, associate pastor, priest, provincial, nun, religious individual, agent, officer, servant, employee, trustee, director, or independent contractor of the Diocese Corporation, of the Diocese of Buffalo, or of the Roman Catholic Church, with respect to any and all interaction with minors.

4.    All documents reflecting any report from 1930 to the present, by the archbishop, bishop, vicar general, chancellor, auxiliary bishop, episcopal vicar, vicar forane, regional bishop, supervisor of a region, dean, supervisor of a deanery, archpriest, pastor, parochial vicar, associate pastor, priest, provincial, nun, religious individual, agent, officer, servant, employee, trustee, director, or independent contractor of the Diocese Corporation, of the Diocese of Buffalo, or of the Roman Catholic Church, concerning sexual misconduct, sexual abuse, boundary violations, or molestation of a minor made to any United States government official, New York state official, any county or municipality of New York, or any other official governmental entity, health department, service organization, foster service, police department and/or other law enforcement or social services entity at any time up to and including the present.

5.    All documents containing, referring, and/or relating to a Perpetrating Cleric or Perpetrating Religious Individual's duties and responsibilities at each diocese, parish, church, religious institute, or other entity or institution with which he or she had ever been affiliated during the relevant time period, the documents concerning: the nature and scope of said duties and responsibilities; the dates each duty or

responsibility was performed; the percentage of time spent performing each duty or responsibility; whether a Perpetrating Cleric or Perpetrating Religious Individual was required to submit anything in writing to any such entity or institution regarding meeting with, or spending time with, minors; and whether a Perpetrating Cleric or Perpetrating Religious Individual was required to inform the entity or institution of the Perpetrating Cleric or Perpetrating Religious Individual's activities with minors and whether he or she in fact did so.

6. For all parishes, churches, religious institutes or other entities or institutions with which a Perpetrating Cleric or Perpetrating Religious Individual had ever been affiliated, during the relevant time period, the documents which identify:

(a) Persons who selected, hired, or appointed a Perpetrating Cleric or Perpetrating Religious Individual;

(b) Persons who reviewed a Perpetrating Cleric or Perpetrating Religious Individual's work or performance;

(c) Persons who had authority to discipline a Perpetrating Cleric or Perpetrating Religious Individual;

(d) Persons who had the responsibility to review a Perpetrating Cleric or Perpetrating Religious Individual's work or performance; or

(e) Persons who had the authority to terminate, demote, or transfer a Perpetrating Cleric or Perpetrating Religious Individual.

7.     All documents, regardless of the date the document was created, identifying, referring to, or relating to any and all clerics, lay employees, agents, members, and representatives of the Diocese who have worked or continue to work in the Diocese who have been accused of sexual misconduct, sexual abuse, molestation or boundary violations.

8.     All manuals, handbooks, policies, procedures, notices, or directives concerning the prevention or report of sexual or physical abuse or misconduct, boundary violations, and molestation with individuals under the age of eighteen which the Diocese or any other Defendant had in place at any time.

9.     All documents relating to the training and education of lay and clerical teachers in the Diocese concerning the problem of child sexual abuse, sexual misconduct or boundary violations and the policies and procedures to be followed by them for prevention of such abuse.

10.     All documents sent to the New York Attorney General responsive to the New York Attorney General's civil subpoena issued to the Diocese in September 2018 as part of the New York Attorney General's civil investigation of the New York Roman Catholic dioceses' handling of allegations of sexual abuse of minors.

11.     All documents, including minutes and reports, from the Priest Personnel Board, sexual abuse review board, Praesidium, or similar entity; Board of Consultors; Diocese Finance Counsel; Senate; Definitorium; or other advisory body that refers or relates to misconduct of the Perpetrating Cleric or Perpetrating Religious Individual.

12.     All Quinquennial Reports sent by the Dioceses to the Holy See between 1950

61

and the present, and all documents prepared in connection with such Quinquennial Reports.

13.    All documents evidencing insurance coverage for losses resulting from tortious conduct committed by clerics, religious or employees of the Diocese Corporation or the Diocese of Buffalo from 1940 to the present, including but not limited to copies of all insurance policies and/or any communications with insurance carriers regarding coverage.

14.    All documents evidencing insurance coverage for losses resulting from tortious conduct committed by clerics, religious or employees of parishes of the Diocese of Buffalo from 1940 to the present, including but not limited to copies of all insurance policies and/or any communications with insurance carriers regarding coverage.

15.    All memoranda of understanding between the Diocese Corporation or the Diocese of Buffalo and law enforcement authorities, including but not limited to, police and prosecutors concerning confirmed, alleged or suspected misconduct committed by clerics, religious or employees of the Diocese Corporation or the Diocese of Buffalo, or concerning preventing misconduct committed by clerics, religious or employees of the Diocese Corporation or the Diocese of Buffalo.

16.    All documents relating or referring to the Diocese's awareness of alleged or actual sexual misconduct or boundary violations with minors committed by clerics, religious or employees of the Diocese Corporation or the Diocese of Buffalo from 1930 to the present, regardless of when such documents were created.

17.    The original Certificate, Articles of Incorporation, Bylaws and any

62

subsequent amendments for the Diocese Corporation.

18. The original Certificate, Articles of Incorporation, and Bylaws and any subsequent amendments for each parish at which a Perpetrating Cleric or Perpetrating Religious Individual served.

19. The Records Retention Schedule or Index of fields and documents held by each department in the Diocese.

20. The documents concerning the publication entitled The Problem of Sexual Molestation by Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner, by Peterson, Mouton & Doyle, compiled June 8-9, 1985.

21. The copies of *De Modo Procedendi in Causis Sollicitationis*, promulgated by the Holy See since 1921, maintained by, or in the possession of, the Diocese, and any materials which relate or refer to it.

Appendix D

# APPENDIX E

SUPREME COURT OF THE STATE OF NEW YORK
EIGHTH JUDICIAL DISRTICT
COUNTY OF _____

In re: EIGHTH JUDICIAL DISRTICT
CHILD VICTIMS ACT LITIGATION

PLAINTIFFS' STANDARD
NOTICE OF
REQUESTS FOR PRODUCTION
OF DOCUMENTS

INDEX NO. _____
JUSTICE _____

TO:        Defendant Diocese of Buffalo or other Religious Institutions and their

attorneys.

PLEASE TAKE NOTICE that plaintiff *[name of plaintiff]* requests that defendant

produce for discovery, within twenty (20) days after receipt of this notice, the

documents described below.

The request for production of documents is to be deemed continuing. If you, your

counsel, or anyone representing your interests obtains any documents or takes any

statements within the scope of this document request at any time prior to

commencement of trial in this action, you are hereby required and directed to furnish

those documents or statements to the undersigned attorneys.

If a case involves non-Roman Catholic religious entities and agents, appropriate revisions should be made to definitions and requests.

# I. GENERAL INSTRUCTIONS AND DEFINITIONS

Except as otherwise expressly indicated:

1. As used herein, the terms "you," "your," and "Diocese Corporation" refer to Defendant The Diocese of Buffalo, N.Y., the New York corporation known as The Diocese of Buffalo, N.Y.

2. As used herein, the term "Diocese of Buffalo" refers to the Roman Catholic diocese known as the Roman Catholic Diocese of Buffalo, N.Y.

3. As used herein, the term "Complaint" means the Child Victims Act Litigation Complaint served in the matter with the above-referenced Index Number.

4. As used herein, the term "Plaintiff" means the plaintiff identified in the Complaint.

5. As used herein, the term "cleric" shall refer to a clergyman and includes, but is not limited to, cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop, vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, religious, superior, monk and member of religious institute.

6. As used herein, the term "clerical" shall relate to a clergyman or the clergy.

7. As used herein, the terms "religious" and "religious individual" shall refer to any individual whom a diocesan bishop, the Apostolic See, religious superior, or other

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41, Description: Exhibit 5, Page 66 of 116

authority of the Roman Catholic Church has considered, treated, or determined is a member of a Roman Catholic religious institute, society, house, or order and should be treated as religious, and includes but is not limited to, nun, postulant, novice, temporary professed, perpetually professed, religious brother, religious sister, superior, major superior, prior, abbot, abbot primate, abbot superior, supreme moderator, superior of a monastic congregation, provincial, prior provincial, provincial superior, supreme superior, monk, and member of religious institute, and may include cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, simplex, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, vicar, moderator, director, counselor, councilor, president, and master.

8.    The term "or" is not exclusive and shall be construed both conjunctively and disjunctively in each request.

9.    The term "and" is not exclusive and shall be construed both conjunctively and disjunctively in each request.

10.    As used herein, the term "parish" refers to a Roman Catholic parish erected or established by a Roman Catholic Bishop or higher authority of the Roman Catholic Church.

11.    As used herein, the terms "Perpetrating Cleric" or "Perpetrating Religious Individual" means the individual alleged in the Complaint to have sexually abused the Plaintiff when the Plaintiff was a minor.

12. As used herein, the term "Perpetrator's Parish" refers to the Roman Catholic parish located within the Diocese of Buffalo at which the "Perpetrating Cleric" or "Perpetrating Religious Individual" was assigned at the time the "Perpetrating Cleric" or "Perpetrating Religious Individual" is alleged in the Complaint to have sexually abused the Plaintiff.

13. As used herein, the term "Perpetrator's Institution" refers to the Roman Catholic institution, other than a parish, located within the Diocese of Buffalo at which the Perpetrating Cleric or Perpetrating Religious Individual was assigned at the time the Perpetrating Cleric or Perpetrating Religious Individual is alleged in the Complaint to have sexually abused the Plaintiff.

14. As used herein the term "position of authority" as that term is used above includes, but is not limited to: any person who is charged with any duty or responsibility for the education, guidance, counseling, welfare, health, or supervision of a child under the age of eighteen, either independently or through another, no matter how brief, at the time of the act. For the purpose of this definition, a cleric, a religious or religious individual is deemed to have a "position of authority."

15. As used herein, the term "sexual misconduct" means any of the misconduct referred to in CPLR 208 (b) or CPLR 214-g, including, but not limited to:

   a. The actor touching a minor's intimate parts; the touching by the minor of the actor's, the minor's, or another's intimate parts effected by the use of a position of authority, or by the inducement of the actor;.

68

b. The actor otherwise inappropriately touching a minor; including, but not limited to, massaging parts of the minor's body or kissing the minor on the lips;

c. Sexual intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, into the genital or anal openings:

    i. Of the complainant's body by any part of the actor's body or any object used by the actor for this purpose;

    ii. Of the complainant's body by any part of the body of the complainant, by any part of the body of another person, or by any object used by the complainant or another person for this purpose, when effected by the use of a position of authority or by the inducement of the actor;

    iii. Of the body of the actor of another person by any part of the body of the complainant of by any object used by the complainant for this purpose, when effected by use of a position of by the inducement of the actor.

d. The actor talking, writing or communicating in any way with a minor regarding anything of a sexual nature; and

e. The actor having a minor in the actor's private living quarters, including the actor's bedroom.

f. The actor engaging in unconsented to sexual activity with an adult; or the actor otherwise sexually touching the adult without consent.

16. As used herein the term "boundary violation" shall mean communications, observations, rumors, suspicions, patterns of behavior, course of conduct, or activity by an adult with a minor child that might be an indicator of inappropriate behavior by that

adult, including, but not limited to, buying gifts for a child, giving money to a child, touching a child in a way that makes the child uncomfortable, giving a child extra or special attention, spending time with a child alone without other adult supervision, kissing a child on the lips, sharing a bed with a child, viewing pornography with a child, being alone with a child in a meeting, being alone with a child in a classroom, close physical contact with a child such as lap sitting, knee touching and hugging, tickling a child, massaging a child or having a child massage the adult, commenting on a child's body or appearance, physically disciplining a child, wrestling with a child, giving a child alcohol or drugs, violating the boundaries of a child, allowing a child to spend the night in the rectory, or taking overnight trips with a child that are unrelated to an official event or function.

17. "Person" means any natural person or any business, legal or governmental entity or association.

18. "Concerning" means relating to, referring to, describing, evidencing or constituting.

19. The term "communication" means the transmittal of information (in the form of facts, opinions, ideas, inquiries, or otherwise).

20. The term "document" means, regardless of origin or location, any book, pamphlet, periodical, letter, memorandum, writing, telegram, email, text message, report, record, study, note, working paper, graph, drawing, chart, photograph, image, film, video recording, audio recording, index, tape, disk, data sheet or data processing card, electronically stored information, or any other written, recorded, transcribed,

70

punched, taped, filmed or graphic matter, however produced or reproduced, to which you have or have had access. "Document" shall include originals (or copies if originals are not available) and nonidentical copies (whether different from the original because of handwritten notes or underlining or otherwise) and any translations of any document.

21. "Electronically Stored Information" or "ESI" includes any electronically stored information stored in any medium from which such information can be obtained, either directly or after translation by the responding party into a reasonably usable form.

22. Any word written in the singular shall also be construed as plural and any word written in the plural shall also be construed in the singular.

23. The term "employee" means any officer, director, employee, agent, attorney, accountant or other person acting or purporting to act on behalf of an entity, whether currently or at any time employed by that entity.

24. Reference to any entity includes each of its officials, officers, directors, employees, agents, attorneys, or other persons acting or purporting to act on behalf of the foregoing, whether currently or formerly employed or retained in these capacities.

25. When referring to a natural person, stating the "identity" means to give, to the extent known, the person's (a) full name, (b) present or last known address, and (c) the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

26. When referring to an entity, stating the "identity" means to give, to the extent known, (a) the entity's full name, including (when not apparent from the name) the

71

nature of the entity, e.g. corporation, limited liability corporation, partnership, professional corporation, religious organization, religious institute, religious society, religious house, religious order, juridic person, or moral person, (b) present or last known address of its headquarters or principal place of business, and (c) the state in which the entity is incorporated or otherwise created. Once an entity has been identified in accordance with this paragraph, only the name of that entity need be listed in response to subsequent discovery requesting the identification of that entity.

27. When referring to documents, to "identify" means to give, to the extent known, (a) the type of document; (b) the general subject matter; (c) the date of the document; (d) the author or authors, according to the document; (e) the persons to whom, according to the document (or a copy) was to have been sent; and (f) the current location of the document.

28. If any document, or any portion of any document, is withheld under claim of attorney-client privilege or upon any other ground, the respondent withholding the document shall furnish a list, signed by the person supervising the response to this request, identifying each document withheld and stating with respect to each:

    f.  the legal ground for withholding such document;

    g.  the type of document;

    h.  the general subject matter of the document;

    i.  the date of the document; and

    j.  the number of pages of the document, the identities of the document's author, addressee, and each person to whom copies were sent or were to be

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41, Description: Exhibit 5, Page 72 of 116

sent, including the identity of each person to whom the document, its contents, or any portion thereof is known or has been disclosed, and any other information as is sufficient to identify the document for a subpoena duces tecum.

29. The term "relevant time period" refers to, unless otherwise specified, the period to the present from the earlier of (1) the date the Perpetrating Cleric or Perpetrating Religious Individual started attending seminary or (2) became a postulant, novice, or temporary professed of a Roman Catholic religious institute, society, house, or order.

## IDENTIFICATION OF DESTROYED DOCUMENTS

If any document requested herein has been destroyed, erased, or otherwise discarded, please identify the document in the same manner as you have been requested to identify documents that you claim are privileged, to the extent that such identification is possible.

## II. DOCMENT REQUESTS

22. The documents concerning the hierarchical structure of the Diocese Corporation during the relevant time period, including but not limited to corporate structure, organizational structure, clerical authority, decision making authority, supervisory authority, oversight authority, managerial authority, and administrative authority.

23. The documents concerning any written constitutions, bylaws, canons, statutes, laws, decrees, decretals, guidelines, handbooks, clergy manuals, rules, or regulations

73

governing the conduct of priests and other clerics of the Diocese of Buffalo during the relevant time period.

24. For the parishes, churches, religious institutes, or other religious institutions or entities with which the Perpetrating Cleric or Perpetrating Religious Individual was affiliated during the relevant time period, the documents describing or identifying: the deaneries in which said parishes, churches, religious institutes, or other religious institutions or entities were located; the names of the persons who served as dean, vicar forane, or supervisor of the deaneries in which said parishes, churches, religious institutes, or other religious institutions or entities were located; the dates when such persons served as dean, vicar forane, or supervisor of the deaneries; the most recent residential address of such persons who served as dean, vicar forane, or supervisor of the deaneries; the most recent business address of such persons who served as dean, vicar forane, or supervisor of the deaneries; and the dates such persons served as dean, vicar forane, or supervisor of the deaneries.

25. For the parishes, churches, religious institutes, or other religious institutions or entities with which the Perpetrating Cleric or Perpetrating Religious Individual was affiliated, during the relevant time period, the documents describing or identifying: the vicariates in which said parishes, churches, religious institutes, or other religious institutions or entities were located; the names of the persons who served as vicar, vicar forane, or supervisor of the vicariates in which said parishes, churches, or other religious institutions or entities were located; the dates when such persons served as vicar, vicar forane, or supervisor; the most recent residential address of such persons who served as

74

vicar, vicar forane, or supervisor; the most recent business address of such persons who served as vicar, vicar forane, or supervisor; and the dates such persons served as vicar, vicar forane, or supervisor.

26. For the parishes, churches, or other religious institutions or entities with which the Perpetrating Cleric or Perpetrating Religious Individual was affiliated, during the relevant time period, the documents describing or identifying: the regions of the Diocese of Buffalo in which said parishes, churches, or other religious institutions or entities were located; the names of the persons who served as coordinator, vicar, vicar forane, or supervisor of the regions of the Diocese of Buffalo in which said parishes, churches, or other religious institutions or entities were located; the most recent residential address of such persons who served as coordinator, vicar, vicar forane, or supervisor of the region; the most recent business address of such persons who served as coordinator, vicar, vicar forane, or supervisor of the region; and the dates such persons served as coordinator, vicar, vicar forane, or supervisor of the region.

27. The documents concerning the Perpetrating Cleric's or Perpetrating Religious Individual's education, religious instruction, training, licenses, certificates, memberships, honors, or awards.

28. The documents concerning the Perpetrating Cleric's or Perpetrating Religious Individual's applications to parishes, dioceses, archdioceses, seminaries, religious institutes, or places of employment, including but not limited to information concerning applications, references, and interviews.

29. The documents concerning evaluations of the Perpetrating Cleric's or

75

Perpetrating Religious Individual's performance or conduct at any seminary which the Perpetrating Cleric or Perpetrating Religious Individual attended at any time during the relevant time period; including, but not limited to, evaluations by the faculty, evaluation of summer diaconate work, and documents relating or referring to disciplinary action taken against a Perpetrating Cleric or Perpetrating Religious Individual during seminary or other schooling.

30. The documents concerning the Perpetrating Cleric's or Perpetrating Religious Individual's residences, addresses, and whereabouts at any time during the relevant time period.

31. The documents concerning the Perpetrating Cleric's or Perpetrating Religious Individual's membership in religious institutes or religious orders during the relevant time period.

32. The documents created or maintained by any priest, agent, employee, or official of the Diocese concerning the Perpetrating Cleric that is kept separate and apart from the main personnel or "priest file" for the Perpetrating Cleric; including, but not limited to: the documents in the secret files, subsecreto files, "Z" files, Canon 489 of The Code of Canon Law (1983) files, Canon 379 of The Pio Benedictine Code of Canon Law (1917) files, Red Files, "Active Clergy Files," "The Well," "The Confidential Archive (archivum secretum)," "Archive," "Inappropriate Behavior Policies/Referrals," and/or "Clergy File Room" documents and/or files created, kept or maintained that refer to the conduct of the Perpetrating Cleric or Perpetrating Religious Individual.

33. The diaries, desk calendars, personal calendars, and other calendars of any

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41, Description: Exhibit 5, Page 76 of 116

Bishop or Vicar General of the Diocese concerning:

    a.  conduct of the Perpetrating Cleric or Perpetrating Religious Individual, where such conduct might be indicative of or evidence of conduct constituting boundary violations, or sexual misconduct;

    b.  discipline, proposed discipline, suggested discipline, or disciplinary proceedings concerning the Perpetrating Cleric or Perpetrating Religious Individual

34.  The documents concerning the removal of the Perpetrating Cleric or Perpetrating Religious Individual from the clerical state, including but not limited to, petitions, appointments and documents created and maintained by the Promoter of Justice, advocates, votum, acts of the case, applications, processes, transmittal to the Holy See and declarations.

35.  The documents concerning the Perpetrating Cleric or Perpetrating Religious Individual that were provided to, or transferred to, or received from the Holy See, the Holy See's congregations or embassies; including, but not limited to, the Apostolic Nunciature in the United States.

36.  The documents concerning fundraising in which the Perpetrating Cleric or Perpetrating Religious Individual provided direction, management, or assistance or otherwise participated in during the relevant time period on behalf the Perpetrator's Parish, or the Perpetrator's Institution; or on behalf of any parish, church, other institution or entity, or fund of the Diocese Corporation or the Diocese of Buffalo; or on behalf of the Diocese Corporation or the Diocese of Buffalo; or on behalf of any religious

77

institute, society or order.

37. The documents concerning any acquiring of real or personal property the Perpetrating Cleric or Perpetrating Religious Individual engaged in, or accepted, during the relevant time period on behalf the Perpetrator's Parish, or the Perpetrator's Institution; or on behalf of any parish, church, other institution or entity, or fund of the Diocese Corporation or the Diocese of Buffalo; or on behalf of the Diocese Corporation or the Diocese of Buffalo; or on behalf of any religious institute, society or order.

38. The documents concerning any psychiatric or psychological counseling which the Perpetrating Cleric or Perpetrating Religious Individual received, including but not limited to: the dates of the counseling; the name and the most recent residential and business address of the counselor; the nature of the counseling; whether the counseling concerned the Perpetrating Cleric's or Perpetrating Religious Individual's alleged sexual activity toward minors; the reason the Perpetrating Cleric or Perpetrating Religious Individual was referred to counseling; whether the counseling benefited the Perpetrating Cleric or Perpetrating Religious Individual; the name and the most recent residential and business address of the person who recommended the counseling; the Perpetrating Cleric's or Perpetrating Religious Individual's medical records; the Perpetrating Cleric's or Perpetrating Religious Individual's psychiatric records; the Perpetrating Cleric's or Perpetrating Religious Individual's psychological records; the psychological diagnosis or prognosis of the Perpetrating Cleric or Perpetrating Religious Individual; and the psychiatric diagnosis or prognosis of the Perpetrating Cleric or Perpetrating Religious Individual.

39. The documents concerning any of the Perpetrating Cleric's or Perpetrating Religious Individual's physical or medical illnesses, conditions, maladies, or disabilities, including but not limited to information from medical doctors, licensed practical nurses, registered nurses, nurse practitioners, therapists, hospitals, clinics, institutions, or other health care providers, for medical care concerning said illnesses, conditions, maladies, or disabilities during the relevant time period.

40. The documents concerning any of the Perpetrating Cleric's or Perpetrating Religious Individual's mental illnesses, conditions, maladies, or disabilities, including but not limited to information from medical doctors, psychiatrists, psychologists, licensed practical nurses, registered nurses, nurse practitioners, therapists, social workers, hospitals, clinics, institutions, or other care providers, for care concerning said illnesses, conditions, maladies, or disabilities for any time during the relevant time period.

41. The documents concerning any psychiatric, psychological, or neurological evaluations performed on the Perpetrating Cleric or Perpetrating Religious Individual during the relevant time period.

42. The documents received from or sent to mental health treatment providers concerning the Perpetrating Cleric, including but not limited to, Intake Reports, the Evaluation Report to the Bishop, Monthly Treatment Reports, aftercare contracts, and the Final Evaluation of the Perpetrating Cleric or Perpetrating Religious Individual.

43. The documents concerning any reports or complaints, suspicions,

information, claims, demands or allegations of inappropriate comments, inappropriate touching, sexual misconduct, boundary violations (whether over the telephone, face-to-face, or in writing, electronic or otherwise) by the Perpetrating Cleric or Perpetrating Religious Individual.

44. The documents concerning monies paid or loans made by the Diocese to the Perpetrating Cleric or paid on the Perpetrating Cleric's or Perpetrating Religious Individual's behalf for (1) medical, psychological or psychiatric treatment and/or evaluation, (2) the settlement with victims of sexual misconduct, or (3) legal expenses related to allegations of sexual misconduct with minors.

45. The documents which describe, list, contain, or reflect any of the Perpetrating Cleric's or Perpetrating Religious Individual's existing resumes or curricula vitae.

46. For all parishes, churches, religious institutes or other entities or institutions with which the Perpetrating Cleric or Perpetrating Religious Individual had ever been affiliated, during the relevant time period, the documents which identify:

(a) Persons who selected, hired, or appointed the Perpetrating Cleric or Perpetrating Religious Individual;

(b) Persons who reviewed the Perpetrating Cleric's or Perpetrating Religious Individual's work or performance;

(c) Persons who had authority to discipline the Perpetrating Cleric or Perpetrating Religious Individual;

(d) Persons who had the responsibility to review the Perpetrating Cleric's or Perpetrating Religious Individual's work or performance; or

(e) Persons who had the authority to terminate, demote, or transfer the Perpetrating Cleric or Perpetrating Religious Individual.

47. The documents concerning any reports of inappropriate touching, sexual

contact, kissing, or conversation of a sexual nature (whether over the telephone, face-to-face, or in writing) between the Perpetrating Cleric or Perpetrating Religious Individual and any individual who at the time of such contact or conversation was a minor; that is, a person less than eighteen years of age.

48. The documents concerning any meetings, discussions, encounters, evaluations, or conversations that any Diocese Corporation's, Diocese of Buffalo's, Perpetrator's Parish's, or Supervisory Province's agent, servant, employee, trustee, officer, independent contractor, bishop, auxiliary bishop, regional bishop, supervisor of a region, vicar general, chancellor, episcopal vicar, vicar forane, dean, supervisor of a deanery, archpriest, priest, pastor, parochial vicar, assistant pastor, associate pastor, deacon, nun, religious, superior, provincial, or monk had with the Perpetrating Cleric or Perpetrating Religious Individual during the relevant time period concerning the Perpetrating Cleric's or Perpetrating Religious Individual's conduct with minor children.

49. The documents, created at any time, concerning the Perpetrating Cleric or Perpetrating Religious Individual during the relevant time period: engaging in inappropriate touching or nonconsensual sexual contact with any individual(s); engaging in boundary violations; engaging in conversation of a sexual nature (whether over the telephone, face-to-face, or in writing, electronic or otherwise) with minor children; engaging in kissing, inappropriate contact or communication with minor children; engaging in sexual abuse of children under the age of 18 years; engaging in sexual conduct which would impair or debauch the morals of a child; engaging in flagrantly lewd and offensive acts; engaging in open or gross lewdness; engaging in lewd or wanton

or lascivious behavior; engaging in indecent exposure; engaging in conduct which contributed to the delinquency of a minor child; engaging in conduct which abused other individuals; or engaging in sexual misconduct.

50. The documents concerning communications made at any time pertaining to allegations or claims of inappropriate, questionable, or improper conduct or interaction with minor children by the Perpetrating Cleric or Perpetrating Religious Individual during the relevant time period.

51. The documents concerning any report(s) made or communications concerning the Perpetrating Cleric or Perpetrating Religious Individual and/or the Plaintiff or the Plaintiff's family to any US government official, New York State official, New York County or Municipality, or any other official governmental entity, health department, service organization, foster service, police department and/or other law enforcement or social services organization or department at any time up to and including the present.

52. The documents concerning any discussions, conversations, encounters, evaluations, or meetings between the Perpetrating Cleric or Perpetrating Religious Individual and anyone concerning allegations that the Perpetrating Cleric or Perpetrating Religious Individual had sexual or otherwise inappropriate encounters with minor children or parishioners during the relevant time period.

53. The documents concerning any investigation conducted at any time of any of the Perpetrating Cleric's or Perpetrating Religious Individual's alleged inappropriate conduct with any individual under the age of eighteen that the Perpetrating Cleric or Perpetrating Religious Individual engaged in during the relevant time period.

54.   The documents concerning any disciplinary action(s) imposed at any time upon the Perpetrating Cleric or Perpetrating Religious Individual for engaging in nonconsensual sexual contact with any individuals during the relevant time period; engaging in sexual contact or abuse of minor children during the relevant time period; engaging in sexual conduct which would impair or debauch the morals of a child during the relevant time period; engaging in flagrantly lewd and offensive acts during the relevant time period; engaging in sexual conversation with minor children during the relevant time period; engaging in inappropriate contact or communication with minor children during the relevant time period; engaging in open or gross lewdness during the relevant time period; engaging in lewd or wanton or lascivious behavior during the relevant time period; engaging in indecent exposure during the relevant time period; engaging in conduct which contributes to the delinquency of a minor child during the relevant time period; or engaging in conduct which abused other individuals during the relevant time period.

55.   With regard to any lawsuits or civil actions which allege or deny negligent or intentional tortious conduct on the part of the Perpetrating Cleric or Perpetrating Religious Individual, the docket sheets for the aforementioned lawsuits or civil actions, as well as any other index containing the party names and docket numbers in the aforementioned lawsuits or civil actions.

56.   The documents, transcripts or recordings of testimony, statements, pleadings, and discovery responses in any civil case, administrative action, insurance action, or Canon law proceeding arising in whole or in part from boundary violations and/or sexual misconduct relating

Case 1-20-01016-CLB,   Doc 29-5,   Filed 05/19/20,   Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 83 of 116

to the Perpetrating Cleric or Perpetrating Religious Individual.

57. The documents concerning investigations, inquiries, or actions conducted or taken as a result of any alleged sexual misconduct by the Perpetrating Cleric or Perpetrating Religious Individual with any minor for any location at which the Perpetrating Cleric or Perpetrating Religious Individual had worked or served at any time during the relevant time period.

58. The documents concerning the Perpetrating Cleric's or Perpetrating Religious Individual's seminary records, transfer indications, references, transfer records, letters of commendation, celebrets, or personnel records.

59. The documents concerning complaints of individuals who alleged that the Perpetrating Cleric or Perpetrating Religious Individual abused them or interviews or statements of individuals who alleged that the Perpetrating Cleric or Perpetrating Religious Individual abused them.

60. The Supervisory Province's or the Diocese Corporation's or the Diocese of Buffalo's assignment cards or assignment records for the Perpetrating Cleric or Perpetrating Religious Individual.

61. The photographs, films, projections, videotapes, audiotapes, microfilm, drawings, diagrams, pictures, sketches, or pictorial representations of the Perpetrating Cleric or Perpetrating Religious Individual during the relevant time period.

62. The documents concerning any manuals, handbooks, policies, procedures, notices, or directives concerning the prevention or reporting of sexual or physical abuse of individuals under the age of eighteen which the Perpetrating Cleric or Perpetrating

84

Religious Individual received, or should have received, at any time f during the relevant time period.

63. The documents concerning any manuals, handbooks, policies, procedures, notices, or directives concerning counseling, therapy, or treatment for perpetrators or victims of sexual or physical abuse which the Perpetrating Cleric or Perpetrating Religious Individual received, or should have received, at any time during the relevant time period.

64. The documents concerning the supervision, oversight, direction, management, or control of the Perpetrating Cleric or Perpetrating Religious Individual by other priests, religious individuals, or bishops who at any time during the relevant time period had some authority to supervise, oversee, direct, manage, or control the Perpetrating Cleric or Perpetrating Religious Individual.

65. All documents concerning the conduct of the Perpetrating Cleric or Perpetrating Religious Individual.

66. The documents concerning any canons, rules, encyclicals, decrees, decretals, directives, guidelines, rulings, pronouncements, regulations, policies, standards, protocols, or ethical codes of conduct, written or oral, which were in effect at any time during the relevant time period, pertaining to the treatment to be rendered to a priest or a member of a religious order, when any bishop, vicar general, chancellor, auxiliary bishop, episcopal vicar, vicar forane, regional bishop, supervisor of a region, dean, supervisor of a deanery, archpriest, pastor, parochial vicar, associate pastor, priest, provincial, nun, religious individual, teacher, counselor, administrator, agent, officer,

servant, employee, trustee, director, or independent contractor of the Diocese Corporation, of the Diocese of Buffalo, of the Perpetrator's Parish, of the Perpetrator's Institution, of the Supervisory Province, or otherwise of the Roman Catholic Church, was informed by any manner and from any source of allegations that the Perpetrating Cleric or Perpetrating Religious Individual had had sexual or other inappropriate contact with any individual.

67. The documents concerning the communications, whether in person, in writing, over the telephone, or made through some other electronic device, between Plaintiff, or anyone purporting to be acting on Plaintiff's behalf, and any bishop, vicar general, chancellor, auxiliary bishop, episcopal vicar, vicar forane, regional bishop, supervisor of a region, dean, supervisor of a deanery, archpriest, pastor, parochial vicar, associate pastor, priest, provincial, nun, religious individual, teacher, counselor, administrator, agent, officer, servant, employee, trustee, director, or independent contractor of the Diocese Corporation, the Diocese of Buffalo, the Perpetrator's Parish, the Perpetrator's Institution, or the Supervisory Province.

68. The documents concerning the communications, whether in person, in writing, over the telephone, or made through some other electronic device, regarding Plaintiff, or anyone purporting to be acting on Plaintiff's behalf, between or among any of the following: agents, employees, officers, representatives or designees of the Roman Curia, the Papal Nuncio, or the Holy See; or any Diocese Corporation's, Diocese of Buffalo's, Perpetrator's Parish's, Perpetrator's Institution's, or Supervisory Province's vicar general, chancellor, auxiliary bishop, episcopal vicar, vicar forane, regional bishop,

86

supervisor of a region, dean, supervisor of a deanery, archpriest, pastor, parochial vicar, associate pastor, priest, provincial, nun, religious individual, agent, teacher, counselor, administrator, officer, servant, employee, trustee, director, or independent contractor.

69. The documents concerning any touching, sexual contact, sexual misconduct, kissing, or conversation of a sexual nature (whether over the telephone or face-to-face) between the Perpetrating Cleric or Perpetrating Religious Individual and Plaintiff.

70. The documents concerning any investigations made by any person for any entity, institution, community, congregation, or governmental or regulatory body regarding any interaction between the Perpetrating Cleric or Perpetrating Religious Individual and Plaintiff.

71. The documents regarding the complaints, concerns, or inquiries communicated during the relevant time period pertaining to any interaction between the Perpetrating Cleric or Perpetrating Religious Individual and Plaintiff by anyone to the Perpetrating Cleric or Perpetrating Religious Individual; to any bishops, auxiliary bishops, priests, provincials, nuns, religious individuals, agents, officers, servants, employees, trustees, directors, or independent contractors of the Diocese Corporation, of Diocese of Buffalo, of the Perpetrator's Parish, of the Perpetrator's Institution, or of the Supervisory Province; to any entity or institution; to any community; to any congregation; or to any governmental or regulatory body.

72. The documents concerning any discussions, conversations, encounters, evaluations, or meetings between the Perpetrating Cleric or Perpetrating Religious Individual and anyone in which one of the subjects of such discussion, conversation,

87

encounter, evaluation or meeting was the Perpetrating Cleric's or Perpetrating Religious Individual's encounter(s) with the Plaintiff.

73. The documents concerning any films, projections, videotapes, audiotapes, computer disks, computer documents, computer files, digital photographs, microfilm, and data compilations which contain statements of the Plaintiff.

74. The documents concerning the written statements, whether signed or unsigned, allegedly given by any person alleged or believed to be a witness to the Perpetrating Cleric's or Perpetrating Religious Individual's interactions with the Plaintiff.

75. The documents concerning the oral statements, regardless of the manner in which they were taken, recorded, or obtained, allegedly given by any person alleged or believed to be a witness to the Perpetrating Cleric's or Perpetrating Religious Individual's interactions with the Plaintiff.

76. The documents concerning the written statements, whether signed or unsigned, allegedly given by the Perpetrating Cleric or Perpetrating Religious Individual regarding any interaction which the Perpetrating Cleric or Perpetrating Religious Individual had with the Plaintiff.

77. The documents concerning the oral statements, regardless of the manner in which they were taken, recorded or obtained, allegedly given by the Perpetrating Cleric or Perpetrating Religious Individual regarding any interaction which the Perpetrating Cleric or Perpetrating Religious Individual had with the Plaintiff.

78. The documents concerning any written statements, whether signed or unsigned, allegedly given by the Plaintiff.

79.    The documents concerning the oral statements, regardless of the manner in which they were taken, recorded, or obtained, allegedly given by the Plaintiff regarding any interaction which the Plaintiff had with the Perpetrating Cleric or Perpetrating Religious Individual.

80.    The documents providing the identities of persons known to have, or believed to have, knowledge of interactions of the Perpetrating Cleric or Perpetrating Religious Individual with the Plaintiff.

81.    The documents concerning the Plaintiff.

82.    The documents concerning contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the matter with the above-referenced Index Number, or to indemnify or reimburse for payments made to satisfy any judgment entered in such matter.

Appendix E

Case 1-20-01016-CLB,    Doc 29-5,    Filed 05/19/20,    Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 89 of 116

# APPENDIX F

Case 1-20-01016-CLB,    Doc 29-5,    Filed 05/19/20,    Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 90 of 116

SUPREME COURT OF THE STATE OF NEW YORK

EIGHTH JUDICIAL DISTRICT

COUNTY OF _____

_____

In re:  EIGHTH JUDICIAL DISTRICT

CHILD VICTIMS ACT LITIGATION

_____

PLAINTIFFS' STANDARD

INTERROGATORIES

INDEX NO. _____

JUSTICE _____

TO: Defendant Diocese of Buffalo or defendant of Religious Institution and their attorneys:

**PLEASE TAKE NOTICE** that Plaintiff demands separate and complete answers under oath to each of these interrogatories within twenty days of service as prescribed by the New York Civil Practice Law and Rules.  Pursuant to subdivision (h) of CPLR 3101 you are required to amend or supplement an answer previously given to an interrogatory promptly upon you thereafter obtaining information that an answer was incorrect or incomplete when made, or that the answer, though correct and complete when made, no longer is correct and complete, and the circumstances are such that a failure to amend or supplement the response would be materially misleading.

If a case involves non-Roman Catholic religious entities and agents, appropriate revisions should be made to definitions and requests.

# I. GENERAL INSTRUCTIONS AND DEFINITIONS

Except as otherwise expressly indicated:

1. As used herein, the terms "you," "your," and "Diocese Corporation" refer to Defendant The Diocese of Buffalo, N.Y., the New York corporation known as The Diocese of Buffalo, N.Y.

2. As used herein, the term "Diocese of Buffalo" refers to the Roman Catholic diocese known as the Roman Catholic Diocese of Buffalo, N.Y.

3. As used herein, the term "Complaint" means the Child Victims Act Litigation Complaint served in the matter with the above-referenced Index Number.

4. As used herein, the term "Plaintiff" means the plaintiff identified in the Complaint.

5. As used herein, the term "cleric" shall refer to a clergyman and includes, but is not limited to, cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop, vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, religious, superior, monk and member of religious institute.

6. As used herein, the term "clerical" shall relate to a clergyman or the clergy.

7. As used herein, the terms "religious" and "religious individual" shall refer to any individual whom a diocesan bishop, the Apostolic See, religious superior, or other authority of the Roman Catholic Church has considered, treated, or determined is a member of a Roman Catholic religious institute, society, house, or order and should be treated as religious, and includes but is not limited to, nun, postulant, novice, temporary professed, perpetually professed, religious brother, religious sister, superior, major superior, prior, abbot, abbot primate, abbot superior, supreme moderator, superior of a monastic congregation, provincial, prior provincial, provincial superior, supreme

superior, monk, and member of religious institute, and may include cardinal, archbishop, bishop, auxiliary bishop, regional bishop, titular bishop vicar general, chancellor, episcopal vicar, vicar forane, dean, archpriest, priest, simplex, pastor, prior, sub-prior, rector, parochial vicar, assistant pastor, associate pastor, deacon, vicar, moderator, director, counselor, councilor, president, and master.

8.      The term "or" is not exclusive and shall be construed both conjunctively and disjunctively in each request.

9.      The term "and" is not exclusive and shall be construed both conjunctively and disjunctively in each request.

10.     As used herein, the term "parish" refers to a Roman Catholic parish erected or established by a Roman Catholic Bishop or higher authority of the Roman Catholic Church.

11.     As used herein, the terms "Perpetrating Cleric" or "Perpetrating Religious Individual" means the individual alleged in the Complaint to have sexually abused the Plaintiff when the Plaintiff was a minor.

12.     As used herein, the term "Perpetrator's Parish" refers to the Roman Catholic parish located within the Diocese of Buffalo at which the "Perpetrating Cleric" or "Perpetrating Religious Individual" was assigned at the time the "Perpetrating Cleric" or "Perpetrating Religious Individual" is alleged in the Complaint to have sexually abused the Plaintiff.

13.     As used herein, the term "Perpetrator's Institution" refers to the Roman Catholic institution, other than a parish, located within the Diocese of Buffalo at which the Perpetrating Cleric or Perpetrating Religious Individual was assigned at the time the Perpetrating Cleric or Perpetrating Religious Individual is alleged in the Complaint to have sexually abused the Plaintiff.

14.     As used herein the term "position of authority" as that term is used above includes, but is not limited to: any person who is charged with any duty or responsibility for the education, guidance, counseling, welfare, health, or supervision of a child under the age of eighteen, either independently or through another, no matter how brief, at the time of the act. For the purpose of this definition, a cleric, a religious or religious individual is deemed to have a "position of authority."

15.     As used herein, the term "sexual misconduct" means any of the misconduct referred to in CPLR 208 (b) or CPLR 214-g, including, but not limited to:

a.  The actor touching a minor's intimate parts; the touching by the minor of the actor's, the minor's, or another's intimate parts effected by the use of a position of authority, or by the inducement of the actor;.

b.  The actor otherwise inappropriately touching a minor; including, but not limited to, massaging parts of the minor's body or kissing the minor on the lips;

c.  Sexual intercourse, cunnilingus, fellatio, anal intercourse, or an intrusion, however slight, into the genital or anal openings:

   i.  Of the complainant's body by any part of the actor's body or any object used by the actor for this purpose;

   ii.  Of the complainant's body by any part of the body of the complainant, by any part of the body of another person, or by any object used by the complainant or another person for this purpose, when effected by the use of a position of authority or by the inducement of the actor;

   iii.  Of the body of the actor of another person by any part of the body of the complainant of by any object used by the complainant for this purpose, when effected by use of a position of by the inducement of the actor.

d.  The actor talking, writing or communicating in any way with a minor regarding anything of a sexual nature; and

e.  The actor having a minor in the actor's private living quarters, including the actor's bedroom.

94

f. The actor engaging in unconsented to sexual activity with an adult; or the actor otherwise sexually touching the adult without consent.

16. As used herein the term "boundary violation" shall mean communications, observations, rumors, suspicions, patterns of behavior, course of conduct, or activity by an adult with a minor child that might be an indicator of inappropriate behavior by that adult, including, but not limited to, buying gifts for a child, giving money to a child, touching a child in a way that makes the child uncomfortable, giving a child extra or special attention, spending time with a child alone without other adult supervision, kissing a child on the lips, sharing a bed with a child, viewing pornography with a child, being alone with a child in a meeting, being alone with a child in a classroom, close physical contact with a child such as lap sitting, knee touching and hugging, tickling a child, massaging a child or having a child massage the adult, commenting on a child's body or appearance, physically disciplining a child, wrestling with a child, giving a child alcohol or drugs, violating the boundaries of a child, allowing a child to spend the night in the rectory, or taking overnight trips with a child that are unrelated to an official event or function.

17. "Person" means any natural person or any business, legal or governmental entity or association.

18. "Concerning" means relating to, referring to, describing, evidencing or constituting.

19. The term "communication" means the transmittal of information (in the form of facts, opinions, ideas, inquiries, or otherwise).

20. The term "document" means, regardless of origin or location, any book, pamphlet, periodical, letter, memorandum, writing, telegram, email, text message, report, record, study, note, working paper, graph, drawing, chart, photograph, image, film, video

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 95 of 116

recording, audio recording, index, tape, disk, data sheet or data processing card, electronically stored information, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, to which you have or have had access. "Document" shall include originals (or copies if originals are not available) and nonidentical copies (whether different from the original because of handwritten notes or underlining or otherwise) and any translations of any document.

21.    "Electronically Stored Information" or "ESI" includes any electronically stored information stored in any medium from which such information can be obtained, either directly or after translation by the responding party into a reasonably usable form.

22.    Any word written in the singular shall also be construed as plural and any word written in the plural shall also be construed in the singular.

23.    The term "employee" means any officer, director, employee, agent, attorney, accountant or other person acting or purporting to act on behalf of an entity, whether currently or at any time employed by that entity.

24.    Reference to any entity includes each of its officials, officers, directors, employees, agents, attorneys, or other persons acting or purporting to act on behalf of the foregoing, whether currently or formerly employed or retained in these capacities.

25.    When referring to a natural person, stating the "identity" means to give, to the extent known, the person's (a) full name, (b) present or last known address, and (c) the present or last known place of employment. Once a person has been identified in accordance with this paragraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

26.    When referring to an entity, stating the "identity" means to give, to the extent known, (a) the entity's full name, including (when not apparent from the name) the nature of the entity, e.g. corporation, limited liability corporation, partnership,

professional corporation, religious organization, religious institute, religious society, religious house, religious order, juridic person, or moral person, (b) present or last known address of its headquarters or principal place of business, and (c) the state in which the entity is incorporated or otherwise created. Once an entity has been identified in accordance with this paragraph, only the name of that entity need be listed in response to subsequent discovery requesting the identification of that entity.

27. When referring to documents, to "identify" means to give, to the extent known, (a) the type of document; (b) the general subject matter; (c) the date of the document; (d) the author or authors, according to the document; (e) the persons to whom, according to the document (or a copy) was to have been sent; and (f) the current location of the document.

28. As used herein, the term "describe" means to state fully and with particularity a description responsive to the interrogatory, including but not limited to, stating each date, fact, event, occurrence, allegation, claim or defense; stating the identity of each individual who can testify, or who could have testified, as to each date, fact, event, occurrence, allegation, claim or defense; and identifying the documents concerning each date, fact, event, occurrence, allegation, claim or defense.

29. If any document, or any portion of any document, is withheld under claim of attorney-client privilege or upon any other ground, the respondent withholding the document shall furnish a list, signed by the person supervising the response to this request, identifying each document withheld and stating with respect to each:

k. the legal ground for withholding such document;

l. the type of document;

m. the general subject matter of the document;

n. the date of the document; and

o. the number of pages of the document, the identities of the document's author, addressee, and each person to whom copies were sent or were to be sent, including the identity of each person to whom the document, its contents, or any portion thereof is known or has been disclosed, and any other information as is sufficient to identify the document for a subpoena duces tecum.

30. The term "relevant time period" refers to, unless otherwise specified, the period to the present from the earlier of (1) the date the Perpetrating Cleric or Perpetrating Religious Individual started attending seminary or (2) became a postulant, novice, or temporary professed of a Roman Catholic religious institute, society, house, or order.

## IDENTIFICATION OF DESTROYED DOCUMENTS

If any document referenced in an answer has been destroyed, erased, or otherwise discarded, please identify the document in the same manner as you have been requested to identify documents that you claim are privileged, to the extent that such identification is possible.

## INTERROGATORIES

1. Identify all persons answering these interrogatories, the interrogatories they answered and their association and/or position with Defendant Diocese Corporation and Diocese of Buffalo.

2. Describe the Perpetrating Cleric's or Perpetrating Religious Individual's relationship with Defendant Diocese Corporation and Diocese of Buffalo including, but not limited to, the following:

a. The circumstances surrounding the initial association between or among the Perpetrating Cleric or Perpetrating Religious Individual and Defendant Diocese Corporation and Diocese of Buffalo;

98

b. Each assignment of the Perpetrating Cleric or Perpetrating Religious Individual with the Defendant Diocese Corporation and Diocese of Buffalo and set forth the years he served in each position, his title and duties, and the reasons for any reassignments, transfers, retirement, leaves of absence, periods of restriction, periods of psychological, physical, or other medical treatment lasting more than one week.

c. The method by which the Perpetrating Cleric or Perpetrating Religious Individual was compensated by Defendant Diocese Corporation or Diocese of Buffalo for each position to which the Perpetrating Cleric or Perpetrating Religious Individual was assigned by Defendant Diocese Corporation or Diocese of Buffalo, including the amount, nature, source and frequency of his compensation;

d. The Perpetrating Cleric's or Perpetrating Religious Individual's specific duties and responsibilities for each position to which the Perpetrating Cleric or Perpetrating Religious Individual was assigned by Defendant Diocese Corporation or Diocese of Buffalo;

e. If the Perpetrating Cleric or Perpetrating Religious Individual had specific duties and responsibilities outside of his assigned positions, but during his association with Defendant Diocese Corporation and Diocese of Buffalo, then please also state those specific duties and responsibilities ;

f. State the identities of the Defendant Diocese Corporation's and Diocese of Buffalo's supervisor(s) of the Perpetrating Cleric or Perpetrating Religious Individual during his association with Defendant Diocese, including the Perpetrating Cleric's or Perpetrating Religious Individual's supervisors at each assigned positon with Defendant Diocese Corporation and Diocese of

Buffalo.

3.  State the identity of all person(s) Defendant Diocese Corporation contends has knowledge or claims to have knowledge of any facts relating to the incidents which are the subject matter of this Complaint, and state for each such person their address, phone number and the nature of such knowledge.

4.  State the identity of each person or entity Defendant Diocese Corporation (its agents, investigators or attorneys) has contacted or spoken to, at any time, concerning the facts relating to the incidents which are the subject matter of this Complaint or your defenses to this Complaint. For each person/entity state the following:

   a.  Whether documents concerning the contact exists, and if so please identify such documents;

   b.  If a statement was taken, identify the date on which it was taken and state the identity of the person who took the statement.

5.  Identify all communications Defendant Diocese Corporation (its agents, investigators or attorneys) has had with Plaintiff regarding the subject matter of this Complaint.

6.  Is Defendant Diocese Corporation aware of any legal action or insurance claims brought by Plaintiff prior to the institution of this lawsuit? If so, please furnish all information you possess in this regard, including dates, nature of the claims and final disposition of any claims made.

7.  Has Defendant Diocese Corporation, its agents, or attorneys at any time received any medical report, oral or written, x-ray report, hospital records or writings of any kind from any medical practitioners, psychiatrists, psychologists, hospitals, counselors or social workers, whether licensed or non-licensed, regarding the medical, physical, mental or emotional condition of Plaintiff before, during or after the occurrences which are the subject matter of this Complaint? If so, please provide the name and address of the person(s), clinics, hospitals or other institutions

100

from which the information was originally received by Defendant Diocese or its representatives.

8. State whether Defendant Diocese Corporation has ever had or currently has any claims, complaints and/or allegations against it regarding sexual abuse of minors, other than the allegations which are the subject matter of this Complaint. If so, state the identity of the persons making the claims, complaints and/or allegations; state the date of each such claim, complaint and/or allegation; describe the nature of the claims, complaints and/or allegations; state the identity of the alleged perpetrators for each such claim, complaint and/or allegation; and identify the documents relating to the claims, complaints and/or allegations.

9. Identify all clerics who have worked or continue to work in the Diocese Corporation or the Diocese of Buffalo who have been accused of boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate behavior with minors.

10. State whether Defendant Diocese Corporation had in effect a liability insurance policy or policies, or similar risk-sharing policies or pools, providing coverage for any of the damages claimed by the Plaintiff in this action. If so, please provide the named insured in each policy; provide the policy number; provide the name, address and phone number of the company extending coverage; provide the policy limits; provide the effective dates of each policy of insurance; if coverage under any policy is being denied or, if legal defense is being provided under a reservation of rights, identify all policy clauses identified by the insurance company as the basis for the denial of coverage or the reservation of rights; and attach a copy of each and every insurance policy identified in this interrogatory together with all declaration pages, reservation of rights letters and amendatory endorsements applicable during the period of time of the alleged misconduct.

11. State whether Defendant Diocese Corporation had in effect an insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for

payments made to satisfy the judgment. If so, please provide the named insured in each policy; provide the policy number; provide the name, address and phone number of the company extending coverage; provide the policy limits; provide the effective dates of each policy of insurance; if coverage under any policy is being denied or, if legal defense is being provided under a reservation of rights, identify all policy clauses identified by the insurance company as the basis for the denial of coverage or the reservation of rights; and attach a copy of each and every insurance policy identified in this interrogatory together with all declaration pages, reservation of rights letters and amendatory endorsements applicable during the period of time of the alleged misconduct.

12. Does Defendant Diocese Corporation have knowledge of any claims, complaints and/or allegations made against the Perpetrating Cleric or Perpetrating Religious Individual for boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct with any individual, including the Plaintiff, before, during or after the incidents which are the subject matter of this action? If so, please state separately for each:

  a. The identity of all persons who informed Defendant Diocese Corporation or the Diocese of Buffalo of these claims, complaints and/or allegations;

  b. The identity of each individual involved in the claimed, purported, reported, and/or alleged boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct;

  c. The dates and nature of the boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct that was purported to have occurred;

d. If criminal charges or civil damage claims resulted from such claimed, purported, reported, and/or alleged boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct, state the identity of the parties to that action; the venue of court in which that action was filed, brought or commenced; the court index, docket or file number; and the ultimate disposition of the charge, action or litigation;

e. The date Defendant Diocese Corporation or the Diocese of Buffalo became aware of such allegations, stating the identity of the particular agent or agents who became aware of these allegations;

f. Identify the documents, or other tangible evidence concerning in any manner Defendant Diocese Corporation's or the Diocese of Buffalo's knowledge of claimed, purported, reported, and/or alleged boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct committed by the Perpetrating Cleric or Perpetrating Religious Individual;

g. If the Perpetrating Cleric or Perpetrating Religious Individual admitted to the allegations of boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct, provide the date of and substance of such admissions and identify the Defendant Diocese Corporation's or the Diocese of Buffalo's agents who became aware of any of those admissions; and

h. Describe any disciplinary or preventative actions Defendant Diocese

Corporation or the Diocese of Buffalo took in response to knowledge of such boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct.

13.    Does Defendant Diocese Corporation have knowledge of any claims, complaints and/or allegations made against any of its agents or representatives or people working within the Diocese Corporation, including, but not limited to, priests, for boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct with any individual, including the Plaintiff, before, during or after the incidents which are the subject matter of this Complaint? If so please state separately for each:

a.    The identity of all persons who informed Defendant Diocese Corporation or the Diocese of Buffalo of these claims, complaints and/or allegations;

b.    The identity of each individual involved in the claimed, purported, reported, and/or alleged boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct;

c.    The dates and nature of the act or acts of the boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct that was purported to have occurred;

d.    Whether Defendant Diocese Corporation or the Diocese of Buffalo reported such boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct to law enforcement authorities. If reported to authorities, state the identity

of the individual who made the report, the date on which it was made, and the identity of the person to whom the report was made;

e.    If criminal charges or civil damage claims resulted from such claimed, purported, reported, and/or alleged boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct, identify the parties to that action, the venue of court in which that action was filed, brought or commenced; the court index, docket or file number and the ultimate disposition of the charge, action or litigation;

f.    The date Defendant Diocese Corporation or the Diocese of Buffalo became aware of such allegations, stating the identity of the particular agent or agents who became aware of these allegations;

g.    Identify the documents, or other tangible evidence relating in any manner to Defendant Diocese Corporation's or the Diocese of Buffalo's knowledge of claimed, purported, reported, and/or alleged boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct committed by any of its agents;

h.    If a party claimed, purported, reported, and/or alleged to have committed boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct admitted the allegations of such misconduct, provide the date of and substance of the admission and state the identity of the Defendant Diocese

105

Corporation's or the Diocese of Buffalo's agents who became aware of the admission;

i.      Describe any disciplinary or preventative actions the Defendant Diocese Corporation or the Diocese of Buffalo took in response to knowledge of this sexual or physical misconduct;

j.      State whether any individual claimed, purported, reported, and/or alleged to have committed boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct received an assignment following such accusations. If any such accused individual did receive an assignment following the receipt by Defendant Diocese Corporation or the Diocese of Buffalo of a claim, accusation, report or allegation that that individual committed boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct state the location of that assignment and the date on which it began; and

k.      State whether any persons at such accused individual's subsequent assignments were informed of any claim, accusation, report or allegation that that individual had previously committed boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct. If yes, please list state the identities of the individuals who were informed.

14.   Does Defendant Diocese Corporation have knowledge of any psychiatric, psychological or other therapy or counseling the Perpetrating Cleric or Perpetrating

Religious Individual has undergone either before, during or after the incidents which are the subject matter of this action? If so, state the following:

   a.   The identity of the person(s) who counseled or provided therapy for the Perpetrating Cleric or Perpetrating Religious Individual and the dates of this therapy or counseling;

   b.   Whether Defendant Diocese Corporation or the Diocese of Buffalo or its agents, servants or employees directed or suggested that the Perpetrating Cleric or Perpetrating Religious Individual undergo this therapy or counseling. If so, please state the identities of the individuals who directed or suggested that the Perpetrating Cleric or Perpetrating Religious Individual undergo such therapy or counseling, and the date(s) of such directions or suggestions;

   c.   Identify the documents in Defendant's possession relating in any way to such therapy or counseling.

15.   Describe Defendant Diocese Corporation's and the Diocese of Buffalo's written and unwritten policies and/or procedures concerning the duties and obligations of priests, deacons, religious, brothers and others serving within the structure of the Diocese Corporation or the Diocese of Buffalo that arose when they received any reports, allegations, or suspicions of boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct which were in effect during the during the relevant time period.

16.   State the identity of all bishops of Defendant Diocese Corporation or the Diocese of Buffalo who served during the time of each assignment the Perpetrating Cleric

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41, Description: Exhibit 5, Page 107 of 116

or Perpetrating Religious Individual. As to each, please also provide the positions they held and the corresponding years, and their current assignment.

17. For each assignment of the Perpetrating Cleric or Perpetrating Religious Individual, state the identity of the priests, deacons, brothers, sisters, parish council members, parish trustees, lay ministers and religious figures, and all church and rectory employees, including, but not limited to, housekeepers who served with or were at each such assignment during the time that the Perpetrating Cleric or Perpetrating Religious Individual was at that assignment and during the preceding and following two years. As to each, please provide the positions they held and the corresponding years; and their current assignment.

18. Describe in detail the document filing system and document retention policy of the Diocese Corporation and the Diocese of Buffalo from 1950 to the present.

19. Describe in detail the document filing system and document retention policy of each parish, school, chaplaincy or assignment where the Perpetrating Cleric or Perpetrating Religious Individual was assigned or ministered while in the Diocese Corporation or the Diocese of Buffalo.

20. Have you, your agents, investigators, or attorneys or anyone acting on your behalf, destroyed any documents which relate to or refer to the Perpetrating Cleric or Perpetrating Religious Individual? If so, please: identify each such document, and state for each such document the retention policy applicable to that document, the contents of the document, the identity of the person who drafted the document, and the date of destruction of the document.

21. Describe in detail and identify all documents relating to the Perpetrating

Cleric or Perpetrating Religious Individual while he was in seminary, including the seminary's own records and files. If these files are no longer in your possession, for each document no longer in your possession state where you sent the document, to whom the document was addressed/sent, the subject of the document, the current location of the document, the date of the document, and any other information you have concerning the document.

22. Identify the person who has the most knowledge within Defendant Diocese Corporation or the Diocese of Buffalo concerning the Perpetrating Cleric or Perpetrating Religious Individual and/or the Perpetrating Cleric's or Perpetrating Religious Individual's duties and/or history and/or any claims, allegations or suspicions of inappropriate conduct whatsoever.

23. Identify the person who has the most knowledge within the Defendant Diocese Corporation or the Diocese of Buffalo concerning what to do when claims, allegations or suspicions of boundary violations, attempted sexual misconduct, sexual misconduct or other inappropriate conduct shave been reported, claimed or alleged to the Diocese Corporation or the Diocese of Buffalo and/or the Diocese Corporation's or the Diocese of Buffalo's sexual abuse prevention policies, education, training and/or prevention.

24. Describe all documents which Defendant Diocese Corporation will introduce as evidence at the hearing/trial of this action.

25. State the identity of all witnesses that Defendant Diocese Corporation, its agents or attorneys will call at the hearing/trial of this matter.

26. State the identity of each person whom you expect to call as an expert witness at the time of trial, including in reasonable detail the subject matter on which each expert is expected to testify; the substance of the facts and opinions on which each

expert is expected to testify; and the qualifications of each expert witness and a summary of the grounds for each expert's opinion.

27. For each and every primary insurance policy which insures you from liability for any and all of the claims alleged against you by the Plaintiff in the Complaint, please state the following: the name and address of the company issuing such policy; the effective date and expiration date thereof; the amount of deductible, if any; the limits of liability insurance coverage afforded by said policy; and whether the carrier is defending under any reservation of rights and, if so, the grounds for such reservation of rights.

28. For each and every liability insurance policy which insures you from liability for any and all of the claims alleged against you by Plaintiff in the Complaint, in excess of the coverage provided by the policy or policies described in the answer to the previous interrogatory please state the following: the name and address of the company issuing such policy; the effective date and expiration date thereof; the amount of deductible, if any; the limits of liability insurance coverage afforded by said policy; and whether the carrier is defending under any reservation of rights and, if so, the grounds for such reservation of rights.

29. For each and every liability insurance policy which provides reimbursement insurance to any party who may pay part or all of a judgment which may be entered in this action, which may indemnify or reimburse for payments made to satisfy the judgment, or which may indemnify or reimburse for payments made to satisfy the judgment in excess of other insurance coverage, please state the following: the name and address of the company issuing such policy; the effective date and expiration date thereof; the amount of deductible, if any; the limits of liability insurance coverage

110

afforded by said agreement; and whether the carrier is defending under any reservation of rights and, if so, the grounds for such reservation of rights.

30.   Please state the identity of any witnesses which support any of your affirmative or other defenses, please identify any documents which support any of your affirmative or other defenses, and please describe any facts or circumstances which support any of your affirmative or other defenses.

Appendix F

# APPENDIX G

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 112 of 116

# DISCOVERY AND TRIAL SUBMISSION CHECKLIST

1. Date by which defendants are to serve standard interrogatories and document requests.

   _____

2. Date by which plaintiffs are to serve responses to defendants' standard interrogatories and documents requests and any objections to defendant's standard interrogatory and document requests.

   _____

3. Date by which plaintiffs to serve standard interrogatories and document requests; serve medical authorizations.

   _____

4. Date by which defendants are to serve responses to plaintiffs' standard interrogatories and document requests and any objections to plaintiffs' interrogatory responses.

   _____

5. Date by which defendants are to serve supplemental interrogatories.

   _____

6. Date by which plaintiffs are to serve supplemental interrogatories.

   _____

7. Date by which defendants are to serve responses to plaintiffs' supplemental interrogatories.

   _____

Case 1-20-01016-CLB, Doc 29-5, Filed 05/19/20, Entered 05/19/20 13:48:41, Description: Exhibit 5, Page 113 of 116

8. Date by which plaintiffs are to serve responses to defendants' supplemental interrogatories.

   _____

9. Date for referral to Alternative Dispute Resolution prior to depositions.

   _____

10. The date of injured plaintiff's deposition. In all actions, the rights of defendants and third-party defendants to depose plaintiff spouses, personal representatives and distributees of decedents at any time prior to jury selection is reserved.

    _____

11. The date of commencement of depositions of defendants, third-party defendants and non-parties.

    _____

12. Date by which plaintiffs are to provide all medical materials relative to damages to defendants. It is plaintiffs' duty to locate and obtain possession of all medical materials relative to damages and to provide them to the defendants.

    _____

13. Pretrial conference.

    _____

14. Date by which defendants are to commence third-party actions, if any.

    _____

15. Date by which plaintiffs are to serve expert information.

    _____

114

16. Date by which defendants are to serve expert information. _____

17. Pretrial conference. _____

18. Date for referral to Alternative Dispute Resolution prior to trial. _____

19. Date by which plaintiffs and defendants are to serve all motions for summary judgement. _____

20. The date by which plaintiffs are to serve and file notes of issue and statements of readiness and to serve on each defendant a settlement demand. _____

21. Pretrial conference and argument of motions for summary judgement. _____

22. Date by which plaintiffs and defendants are to serve trial witness and exhibit lists and by which both plaintiffs and defendants are to serve all motions in limine. _____

23. Date by which plaintiffs and defendants are to serve deposition designations for trial. _____

24. Date by which plaintiffs and defendants are to serve counter designations for trial. _____

115

25. Date on which motions in limine will be argued and a final pretrial conference will be conducted. Ordinarily, the motions in limine will be argued two weeks prior to jury selection.                    _____

25. The jury selection date.                    _____

APPENDIX G

Case 1-20-01016-CLB,    Doc 29-5,    Filed 05/19/20,    Entered 05/19/20 13:48:41,
Description: Exhibit 5, Page 116 of 116