UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re

    THE DIOCESE OF BUFFALO, N.Y.,      BK 20-10322 CLB

                            Debtor.      <u>DECISION & ORDER</u>

---

    THE DIOCESE OF BUFFALO, N.Y.,

                         Plaintiff,      AP 20-1016 CLB

       v.

    JMH 100 DOE, et al,

                         Defendants.

---

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
Grayson T. Walter, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for The Diocese of Buffalo, N.Y.

Blank Rome LLP
James R. Murray, Esq., of counsel
1825 Eye Street NW
Washington, DC 20006
Co-Counsel for The Diocese of Buffalo, N.Y.

Office of the U.S. Trustee
Joseph W. Allen, Esq.
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

Pachulski Stang Ziehl & Jones LLP
Ilan D. Scharf, Esq., and Brittany M. Michael, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, NY 14604
Co-Counsel for Parish Steering Committee

Elsaesser Anderson, CHTD.
J. Ford Elsaesser, Esq., of counsel
414 Church St Ste 201
Sandpoint, ID 83864
Co-Counsel for Parish Steering Committee

Lipsitz Green Scime Cambria LLP
Richard Weisbeck, Esq., and Amy Keller, Esq., of counsel
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Attorneys for 36 Claimants

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

The Diocese of Buffalo, N.Y., has requested that the Court reinstate a preliminary injunction to stay 36 individuals from litigating abuse claims in state court against parishes and other entities affiliated with the debtor. The central issue is whether a further stay is necessary to preserve the status quo until the resolution of

interconnected disputes.

Through legislation enacted on February 14, 2019, New York State reopened its statute of limitations to allow additional time for victims of child abuse to assert claims that were previously barred by the passage of time. *See* Child Victims Act, 2019 N.Y. Sess. Laws c. 11, § 3. To date, more than 450 actions alleging sexual abuse have been commenced against the Diocese or against various Catholic parishes or other affiliates that operate within the geographic boundaries of the Diocese. Recognizing a need to address these claims, The Diocese of Buffalo filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020.

On May 2, 2020, The Diocese of Buffalo commenced Adversary Proceeding No. 20-1016 to obtain a judgment declaring that the filing of its bankruptcy petition operated automatically to stay the prosecution of abuse claims in state court against not only the debtor but also its parishes and other affiliates. Alternatively, the Diocese sought an injunction barring the commencement or continued prosecution of these abuse claims. In the context of this adversary proceeding, the Diocese then moved for the expedited grant of a permanent injunction. For the reasons stated in a written opinion issued on July 2, 2020, this Court denied the request, but without prejudice to a showing that state court litigation would adversely affect a property interest in insurance policies. *See In re Diocese of Buffalo, N.Y.*, 618 B.R. 400 (Bankr. W.D.N.Y. 2020). However, in order to prevent irreparable injury before the Diocese could prove its case, we granted a preliminary injunction that stayed the prosecution of suits against parishes and affiliates until September 15, 2020.

Following our decision of July 2, the Diocese continued to investigate the status of insurance coverage. Meanwhile, it initiated negotiations with the Official Committee of Unsecured Creditors for a consensual extension of the preliminary injunction. The debtor and the Committee thereafter agreed to a stipulation that would stay the prosecution of suits against parishes and other affiliates until December 15, 2020, or such later date upon which the parties might agree. On October 9, 2020, the Diocese filed a motion (the "October 9 motion") to approve its stipulation with the Committee. Thirty-five litigants, all represented by the same counsel, opposed this request. For the reasons stated in a written decision issued on December 7, 2020, this Court granted the debtor's motion in part, to the effect that the stipulated stay would apply to abuse creditors other than the objecting claimants and those who did not receive service of the October 9 motion. *See In re Diocese of Buffalo, N.Y.*, 623 B.R. 354 (Bankr. W.D.N.Y. 2020). Subsequent to the decision of December 7, the debtor and the Committee have twice extended their stipulation.

In the context of Adversary Proceeding No. 20-1016, The Diocese of Buffalo has now moved to enjoin 36 non-consenting litigants[1] from continuing their prosecution of abuse claims against parishes and other affiliates. In support of this request, the debtor presents two primary arguments. First, it contends that these affiliates are insured through the Diocese or under policies providing joint coverage with the Diocese. Asserting that insurance is an asset of the debtor, the Diocese believes that

---

[1] One additional litigant now joins in opposing the stipulation staying the prosecution of state court suits.

prosecution of insured claims will violate 11 U.S.C. § 362(a)(3).  Second, the Diocese argues that any prosecution of abuse claims will impair its ability to develop a confirmable plan.  Hoping to avoid any such adverse impact, the debtor urges the Court to exercise its authority to enjoin litigation under 11 U.S.C. § 105(a).  The 36 non-consenting litigants respond that parishes and affiliates are distinct corporate entities whose liabilities are separate from those of the Diocese.  The non-consenting litigants contend further that the debtor has failed to demonstrate that its assets will be affected by prosecution of claims against non-debtor defendants.

Discussion

The arguments of counsel do not change any of the views expressed in either our decision of July 2, 2020, or our decision of December 7, 2020.  Consequently, this opinion will incorporate the findings of fact and conclusions of law expressed in those prior rulings.  For the reasons stated in the decision of July 2, we rejected the contention that lawsuits against parishes or affiliates are stayed by operation of 11 U.S.C. § 362(a)(1) or § 362(a)(6).  *See* 618 B.R. at 405.  In the present instance, an automatic stay will arise, if at all, only under subdivision (a)(3) of section 362.  This subdivision states that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The property of a bankruptcy estate can include the insurance policies of a debtor.  *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 92 (2d Cir. 1988).  With regard to the debtor's

cause of action for a declaratory judgment that the automatic stay has been violated, however, the Diocese carries the burden of proof to show that litigation against affiliates will impact insurance or some other asset of the estate.

In its July 2 decision, this Court granted a preliminary injunction that stayed the prosecution of abuse claims against parishes and affiliates until September 15, 2020. With regard to litigation after that date, we provided the following guidance:

> "Before considering any request for an extension of this preliminary injunction, the Court will look for substantial progress in the collection of evidence sufficient to prove the nature and scope of insurance coverage. The parties should be mindful that a preliminary injunction serves only to preserve the status quo until such time as this Court can conduct a trial on the merits of the request for a declaratory judgment."

618 B.R. at 407. The Court is satisfied that the Diocese has made progress in its archival search for insurance information. Unfortunately, this investigation shows that the status of insurance remains a quagmire of speculation and contention.

For abuse claims arising on or after July 1, 1973, the Diocese, its parishes and affiliates have supposedly maintained a joint program of self-insurance. The precise terms of this program are undefined, as the Diocese and its affiliates never memorialized this arrangement in writing.[2] In an affidavit presented to the Court, the Director of Insurance Services for the Diocese has represented that the program

---

[2] The Court acknowledges but does not now determine the potential impact of the New York Statute of Frauds. See N.Y. GEN. OBLIG. § 5-701(a)(2)(McKinney 2012), which states that "a special promise to answer for the debt, default or miscarriage of another person" is void unless made in writing.

"provides comprehensive risk management services and insurance coverage for the Diocese and also for parishes, schools and other Catholic ministry entities and institutions." Each participant pays a ratable portion of the projected overall cost, including the cost of maintaining a fund from which to pay a self-insured retention. The program contemplates the existence of excess liability insurance. The Diocese claims that this excess liability insurance is an asset of the bankruptcy estate. However, the alleged insurers dispute the existence and extent of coverage. On February 28, 2020, in an effort to resolve this uncertainty, the Diocese commenced a declaratory judgment action against eight insurance carriers (the "Adversary Proceeding of February 28, 2020"). At this time, discovery in that adversary proceeding is still ongoing.

Prior to July 1, 1973, each parish would procure its own insurance. For acts of abuse that occurred during that period, the Diocese has collected some evidence that insurance may have existed. However, the debtor has thus far been generally unable to locate the actual policies. Consequently, it has submitted no documentary evidence regarding the amount of coverage or whether both the parish and the Diocese are named insureds. On January 19, 2021, in an effort to resolve this further uncertainty, the Diocese and 286 parishes commenced a declaratory judgment action against 67 insurance companies ("the Adversary Proceeding of January 19, 2021"). At this time, none of the defendants have filed an answer.

If abuse claims are not insured, then litigation does not impact any insurance asset and 11 U.S.C. § 362(a)(3) would not prohibit litigation against separately

incorporated affiliates. At best, the proof suggests only possibilities of adverse implications for estate assets. Whether insurance exists is an issue of fact that this Court can resolve only in an adversary proceeding in which the insurers are named as necessary party defendants. For this reason, the Court cannot decide the merits of Adversary Proceeding 20-1016 until after a resolution of both the Adversary Proceeding of February 28, 2020, and the Adversary Proceeding of January 19, 2021.

Although the Diocese may be able someday to establish the existence of insurance coverage, we remain in no position to decide whether the debtor's bankruptcy has automatically stayed litigation against parishes and affiliates. Rather, the issue continues as it was when we rendered our decision on July 2, 2020. What extension of the Court's preliminary injunction is appropriate in order to preserve the status quo until a resolution of insurance coverage?

In our July 2 decision, we cited the controlling standard in the Second Circuit for issuance of a preliminary injunction:

> "To obtain a preliminary injunction, a plaintiff must demonstrate: (1) *either* a likelihood that he will succeed on the merits of his claim, *or* that the merits present serious questions for litigation and the balance of hardships tips decidedly toward the plaintiff; and (2) that without the injunction, he will likely suffer irreparable harm before the court can rule upon his claim."

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994). Here, the Diocese satisfies these requirements and now justifies a further injunction.

In Chapter 11, the automatic stay is an essential tool to facilitate the development of a plan of reorganization. Without a stay, the debtor must divert its attention and resources to the defense of state court litigation, rather than to focus on the negotiation of acceptable plan provisions. We recognize that for the 36 objecting litigants, the stay of proceedings in state court will postpone the long-awaited access to remedies under the Child Victims Act. The Court must balance this delay, however, with the desire of the Creditors Committee and most abuse claimants, at least 90 % of whom have accepted the stipulation for a voluntary extension of the original preliminary injunction. The stipulation acknowledges a willingness by the debtor and the Creditors Committee to seek resolution through the reorganization process.

The bankruptcy proceeding of The Diocese of Buffalo is an extremely complicated case. At a time when the vast majority of interested parties are working to find a way for the debtor to reorganize, the distraction of state court litigation for the benefit of a few will endanger the prospects of an outcome for the benefit of everyone. Thus, on the serious issue of allowing prosecution of claims against parishes and affiliates, the balance of hardships tips decidedly toward the Diocese. We cannot guarantee that the bankruptcy process will succeed, but interference with that process will surely risk irreparable harm to the Diocese and its creditors. For these reasons, the Court finds sufficient grounds for a further preliminary injunction of limited duration.

The availability of insurance is a critical and necessary factor in the development of a reorganization plan for The Diocese of Buffalo. Despite progress in the gathering

of information about the nature and scope of insurance, the Court foresees no quick resolution of the outstanding disputes regarding coverage. To the extent that these disputes are to be settled without trial, we must anticipate that final negotiations will occur only after insurers learn more about potential exposure after an examination of all timely filed claims. By prior order, the claims bar date has been set for August 14, 2021. Without a negotiated settlement, a trial of coverage disputes is unlikely to begin until many months thereafter. On the other hand, the Court is unwilling to grant an injunction of indefinite duration, but wishes to monitor whether parties are cooperating in good faith to work for a just and appropriately prompt resolution of claims. After giving careful consideration to all of the circumstances of this case, the Court will enjoin the 36 non-consenting litigants from prosecuting their abuse claims against non-debtor entities until October 1, 2021. We select this date so that on any application for a further extension of the preliminary injunction, the Diocese will have an opportunity to report the impact of filed claims on the process of developing a reorganization plan.

A preliminary injunction is appropriately granted only after a careful balancing of interests. Although the Diocese has established grounds for a preliminary injunction at this moment, facts may change. For example, the Court would be concerned if parties encounter procrastination in allowing access to information that is relevant to consideration of plan proposals. Accordingly, if circumstances warrant, the 36 affected claimants may seek reconsideration of this decision at any time. The Court also recognizes that the debtor's motion sought an injunction of general application to all

of the 36 objectors.  In their state court suits, these objecting litigants named co-defendants that include a number of individual priests and religious orders.  To the extent that litigants believe that prosecution of claims against particular defendants will not affect Diocesan interests, they may still move for limited stay relief.

The Court has carefully considered all of the other arguments of the parties and finds that they do not change the outcome of this decision.  Because a preliminary injunction is warranted as a proper exercise of the Court's authority to manage Adversary Proceeding 20-1016, we find no need at this time to address the debtor's other arguments regarding application of 11 U.S.C. § 105(a).

Conclusion

For the reasons stated herein, the motion of The Diocese of Buffalo is granted in part, to the effect that the 36 non-consenting litigants are enjoined until October 1, 2021, from their further prosecution of abuse claims against parishes and other affiliates of the debtor.

So ordered.

Dated: March 31, 2021          _/s/ Carl L. Bucki_____
       Buffalo, New York              Hon. Carl L. Bucki, Chief  U.S.B.J., W.D.N.Y.