UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:  　　　　　　　　　　　　　　　　Case No. 20-10322

The Diocese of Buffalo, N.Y.,  　　　　Chapter 11

　　　　　　　Debtor.

---

The Diocese of Buffalo, N.Y.,

　　　　　　　Plaintiff,

　　v.  　　　　　　　　　　　　　　　　Adversary Proc. No. 20-01016

JMH 100 Doe, *et. al.*,

　　　　　　　Defendants.

---

**DEFENDANTS' OBJECTION TO THE MOTION FILED BY THE DEBTOR/PLAINTIFF TO EXTEND THE PRELIMINARY INJUNCTION STAYING THE PROSECUTION OF LG CVA VICTIMS CASES PURSUANT TO 11 U.S.C. §§ 105(a) AND 362**

## INTRODUCTION

Adversary Proceeding Defendants, LG 1 DOE, LG 2 DOE, LG 3 DOE, LG 4 DOE, LG 10 DOE, LG 11 DOE, LG 12 DOE, LG 13 DOE, LG 14 DOE, LG 15 DOE, LG 16 DOE, LG 17 DOE, LG 18 DOE, LG 19 DOE, LG 20 DOE, LG 21 DOE, LG 22 DOE, LG 23 DOE, LG 24 DOE, LG 25 DOE, LG 26 DOE, LG 27 DOE, LG 28 DOE, LG 29 DOE, LG 30 DOE, LG 31 DOE, LG 36 DOE, LG 45 DOE, LG 49 DOE, LG 69 DOE, LG 74 DOE, LG 77 DOE, DON E. WHELAN, DORIAN REEVES, WYATT SCHOENLE and LG 65 DOE (hereinafter referred to collectively as "LG CVA Victims"), submit this Objection to the motion filed by the Debtor, The Diocese of Buffalo, N.Y., to extend the preliminary injunction of the state court prosecution of the LG CVA Victims cases through August 31, 2022. Adv. Proc. Case No. 20-01016, Doc. No. 162.

The LG CVA Victims are child victims of sexual assault and abuse who seek recompense for their injuries. The Debtor now moves to extend a stay of the prosecution of LG CVA Victims state court cases until at least August 31, 2022, despite the irreparable harm that it will cause the LG CVA Victims if they are unable to proceed, and despite the Debtor's failure to meet its burden of establishing its entitlement to an extension of the preliminary injunction. The long-term injunction requested by the Debtor is excessive and deprives the LG CVA Victims of the due process afforded them in this adversary proceeding. See gen., Adv. Proc. Case No. 20-01016, Doc. No. 70, pp. 5-6.

2

4094072, 1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document, Page 2 of 14

# ARGUMENT

## POINT I

### THE DEBTOR FAILS TO MEET ITS BURDEN OF ESTABLISHING ITS ENTITLEMENT TO AN EXTENSION OF THE PRELIMINARY INJUNCTION UNDER THE TRADITIONAL TEST

In order for the Debtor to obtain a preliminary injunction, the Debtor must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). As the Supreme Court has noted, "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) quoting Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 542 (1987).

As this Court has observed, in the Second Circuit, the controlling standard for issuance of a preliminary injunction requires the Debtor to demonstrate:

> (1) either a likelihood that [it] will succeed on the merits of [its] claim, or that the merits present serious questions for litigation and the balance of hardship tips decidedly toward the [Debtor]; and (2) that without the injunction, [it] will likely suffer irreparable harm before the court can rule upon his claim. Adv. Proc. Case No. 20-01016, Doc. 70, p. 6 and Adv. Proc. Case No. 20-01016, Doc. No. 149, p. 8, citing Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 122 (2d Cir. 1994).

Upon consideration of each of these factors, it is respectfully submitted that the Debtor has failed to meet its burden of proof for a long-term extension of the preliminary injunction granted against LG CVA Victims on March 31, 2021.

3

### A. THE DEBTOR HAS FAILED TO ESTABLISH IT WILL SUCCEED ON THE MERITS OF ITS CLAIM OR THAT THE MERITS PRESENT SERIOUS QUESTIONS FOR LITIGATION

"In the bankruptcy context, likelihood of success on the merits may be understood as the likelihood of a successful reorganization." In re Roman Cath. Diocese of Syracuse, New York, 628 B.R. 571, 580 (Bankr. N.D.N.Y. 2021), citing In re Calpine Corp., 365 B.R. 401, 409 (Bankr. S.D.N.Y. 2007).

This Adversary Proceeding was commenced by the Debtor against Child Victims Act plaintiffs seeking a judgment declaring that section 362 of the Bankruptcy Code stays continued prosecution of the claims against non-debtor parishes, schools and other Catholic ministry entities and institutions within the geographical territory of the Debtor. Adv. Proc. Case No. 20-01016, Doc. 1. Alternatively, the Debtor sought a permanent or preliminary injunction barring the commencement or continued prosecution of Child Victims Act cases against the aforementioned non-debtor entities. Id.

This Court has already rejected the contention by the Debtor that lawsuits against parishes or affiliates are stayed by operation of 11 U.S.C. § 362(a)(1) or § 362 (a)(6). Adv. Proc. Case No. 20-01016, Doc. No. 149, p. 5. This Court determined in its Decision and Order dated March 31, 2021, that "an automatic stay will arise, if at all, only under subdivision (a)(3) of section 362." Id. The Court found that assuming the Debtor has accurately represented the state of its insurance coverage there are at least three possible situations:

> As to some claims, neither the Diocese nor the Affiliated Entity has the benefit of any insurance coverage. For plaintiffs in this first group, litigation against the Affiliated Entity only will not infringe on any asset of the bankruptcy estate. For such instances, this Court can identify no likely basis for a long-term stay of litigation against the Affiliated Entity. A second category of claims involves Affiliated Entities who have maintained adequate insurance policies that do not list the Diocese as a co-insured. Here too, litigation against the Affiliated Entity does not infringe

4

upon estate assets in a way that would justify a stay applicable to non-debtors. However, the Diocese is correct in suggesting a possibility that the stay of 11 U.S.C. § 362(a)(3) may apply to a third category of claims where any recovery will dissipate estate assets. Subject to proof of their existence, these assets may include the debtor's self-insurance fund or capped coverage on a policy under which the Diocese is a named insured. Adv. Proc. Case No. 20-01016, Doc. 70, p. 10-11.

This Court acknowledged in its March 31, 2021 Decision and Order that the Debtor's search for insurance information thus far, showed that the status of insurance remained a "quagmire of speculation and contention." Adv. Proc. Case No. 20-01016, p. 6. The Debtor now asserts that *since* the entry of the Court's March 31, 2021 Decision and Order, the Debtor's Insurance Archaeology Group has substantially concluded its review of the Debtor's records and as a result of *newly uncovered information*, a large number of additional insurance carriers were added as defendants in the insurance adversary proceedings. Adv. Proc. Case No. 20-01016, Doc. No. 162, ¶ 48 (emphasis added). However, through a review of the docket of both Insurance Adversary Proceeding Case No. 20-01009 and Insurance Adversary Proceeding Case No. 21-01001, it does not appear that any additional insurance carriers were added as defendants since March 31, 2021.

Furthermore, LG CVA Victims have not been provided with any "newly uncovered information" from the Debtor's Insurance Archaeology Group since the issuance of this Court's March 31, 2021 Decision and Order. If the Debtor's Insurance Archaeology Group has "newly uncovered information" since March 31, 2021, it is respectfully submitted that the same should have been provided to LG CVA Victims and this Court, as it would presumably help this Court and the parties to determine the actual status of the Debtor's insurance and allow this Court to address with specificity, which LG CVA Victim actions neither the Diocese nor the Affiliated Entity has the benefit of any insurance coverage for, which actions may only implicate insurance

5

that does not list the Debtor as a co-insured, and which may include a policy in which the Debtor is a named insured. As this Court noted in its Decision and Order, as of March 31, 2021, the Debtor had submitted "no documentary evidence regarding the amount of [insurance] coverage or whether both the parish and the Diocese are named insureds." Adv. Proc. Case No. 20-01016, Doc. 149, p. 7. If the Debtor now has this documentation in its possession it should have promptly provided the same to all parties, including the LG CVA Victims.

The Debtor's former motion to mediate Insurance Adversary Proceeding Case No. 20-01009 had been denied as premature in September 2020. Adv. Proc. Case No. 20-01009, Doc. 172, p. 8. The Debtor asserts that significant progress has been made to address the Court's numerous bases in denying its former request to mediate Insurance Adversary Proceeding Case No. 20-01009; however, it concedes that discovery is ongoing in the Insurance Adversary Proceedings and that the Debtor "continues to make additional rolling productions." Adv. Proc. Case No. 20-01016, Doc. 162, p. 8. Although Debtor claims it has provided the Committee and certain Insurers "tens of thousands of pages of documents", a review of Insurance Adversary Proceeding Case No. 20-01009 provides that there have been numerous scheduling conferences and the parties are still continuing with the process of responding to requests for discovery. See Adv. Proc. Case No. 20-01009, Doc. 251, Doc. 242, Doc. 234. This Court specifically warned the Debtor that it would "be concerned if parties encounter procrastination in allowing access to information that is relevant to consideration of plan proposals." Adv. Proc. Case No. 20-01016, Doc. 149, p. 10. LG CVA Victims are not parties to the insurance adversary proceedings and are not privy to what documents the Debtor and insurance company adversary proceeding defendants have exchanged. To the extent that the Debtor has been dilatory in providing documents responsive to outstanding document demands, LG CVA Victims respectfully request

6

4094072.1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document, Page 6 of 14

that the Court consider the same in denying Debtor's current request for a long-term extension of a preliminary injunction.

The Debtor reasserts throughout its motion that it seeks to achieve a "global resolution" of CVA claims which were filed against it, which "will provide for a full resolution of all claims against the Stay Parties (including the claims of LG CVA Claimants) through a substantial contribution to the Diocese's plan of reorganization and the implementation of a channeling injunction." Adv. Proc. Case No. 20-01016, Doc. 162, ¶ 58. However, at no point in its Motion does the Debtor address the substantial contribution that the "Stay Parties" will have to contribute to the Debtor's reorganization plan to include third party releases for non-debtor parishes and schools. Furthermore, the Debtor makes no indication in its Motion as to the status of identifying the assets of each non-debtor parish, school or other Catholic ministry entities and institutions within the geographical territory of the Debtor, available to pay Child Victims Act claims. The Debtor also represents that it is only now, preparing to identity diocesan assets available to satisfy its liabilities. Adv. Proc. Case No. 20-01016, Doc. 162, ¶ 48. It is respectfully submitted, that the Debtor should/could have been identifying diocesan assets and the assets of each non-debtor parish, school or other Catholic ministry entities and institutions within the geographical territory of the Debtor, available to satisfy its liabilities, since it commenced this chapter 11 bankruptcy with the laudatory goal of a "global resolution."

The Debtor should not be rewarded with a long-term injunction against LG CVA Victims when it has failed to address an insurance status of "quagmire of speculation and contention", continues to have outstanding discovery demands in the insurance adversary proceeding(s), which presumably, prevents the parties from progressing to mediation, has failed to address the substantial contribution needed by the non-debtor entities to achieve a "global resolution" and is

7

apparently only now beginning the process to identify diocesan assets available to satisfy its liabilities.

The Fourth Order extending the Debtor's exclusive periods within which to file and solicit acceptances of its chapter 11 plan extended its exclusivity period until August 28, 2021, and its solicitation period to October 28, 2021. Case No. 20-10322, Doc. 1005. Upon information and belief, the Debtor has not filed an extension of these dates, and as such there is no basis then to extend a preliminary injunction against LG CVA Victims until August 31, 2022, over 10 months from the expiration of its solicitation period, and the expiration of the stay issued by the Court in its March 31, 2021 Decision and Order.

It is respectfully submitted that the above should be considered by this Court in finding that the Debtor has failed to meet its burden of a successful emergence from bankruptcy and/or that it will succeed on the merits of its claim or that the merits present serious questions for litigation.

### B. THE DEBTOR HAS MADE NO SHOWING IT WILL BE IRREPARABLY HARMED IF THE PRELIMINARY INJUNCTION IS NOT EXTENDED

"A showing of irreparable harm is essential to the issuance of a preliminary injunction." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995). "To establish irreparable harm, the movant must demonstrate "an injury that is neither remote nor speculative, but actual and imminent" and that cannot be remedied by an award of monetary damages. Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995) quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).

Here, the Debtor seeks an extended stay of the state court prosecution of the LG CVA Victims cases. It is respectfully submitted, that the LG CVA Victims claims will have to be

8

4094072.1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document, Page 8 of 14

liquidated in either state court or bankruptcy court and therefore, the cost of litigation should not be considered prejudicial to the Debtor or non-bankrupt defendants. "It is unreasonable to presume that the continuance in the state court would subject the debtor's estate to a greater expense." Matter of Rabin, 53 B.R. 529, 531–32 (Bankr. D.N.J. 1985). "The cost of defending the state court action in the state court has not been considered so prejudicial as to require continuance of the stay." Matter of Rabin, 53 B.R. 529, 532 (Bankr. D.N.J. 1985) citing In re McGraw, 18 B.R. 140, 142 (Bankr.W.D.Wis.1982); Hoenig v. Hoffman (In re Hoffman), 33 B.R. 937, 941 (Bankr.W.D.Okla.1983). If any "insurance coverage" asset claimed to be owned by the Debtor would be depleted by the continuation of the LG CVA Victims state court actions, then the Debtor should pursue a preliminary injunction against the non-debtor parish and/or school, not the child victims of sexual assault.

The Debtor's arguments of a potential risk of collateral estoppel is speculative and not supported by case law. It is the non-bankrupt parties' negligence which will be determined in the LG CVA Victims State Court Actions, not the Debtor. The Debtor's purported need to monitor and participate in the defense of non-debtor parties is voluntarily and should not be a basis for issuing a preliminary injunction against child victims of sexual assault from pursuing their actions against non-bankrupt defendants. There is no greater diversion of attention of Debtor personnel in continuing to administer its insurance program and provide support to parishes and schools for current litigation than in the continuation of the LG CVA Victims state court actions.

9

4094072, 1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document , Page 9 of 14

### C. LG CVA VICTIMS WILL BE IRREPARABLY HARMED IF THE PRELIMINARY INJUNCTION IS EXTENDED

LG CVA Victims will be effectively estopped from pursuing their claims in a forum of their choosing, even as to non-bankrupt defendants, if the Debtor's motion for a long-term extension of the preliminary injunction is granted.

It is clear that the Debtor's intent in filing this motion is not to grant the Debtor a "breathing spell", but rather, to stop the prosecution of all pending abuse actions, even as to the non-bankrupt, financially independent "Stay Parties", and force a global settlement of the cases. See Adv. Proc. Case No. 20-01016, Doc. No. 162, ¶¶ 57-58, 81. If the Debtor's requested relief is granted, the underlying plaintiffs of the pending abuse actions will most certainly be irreparably harmed if they are permanently prevented from seeking justice against the individuals and institutions liable for the horrendous sexual abuse in a court of law.

There is no date established for the Debtor to emerge from bankruptcy and then permit the continuation of the state court actions against the non-bankrupt defendants. Therefore, the motion by the Debtor to protect the non-bankrupt defendants by extending the stay is an unjustifiable and unreasonable delay of justice for the child victim. The sexual abuse of the Child Victims Act claimants occurred decades ago. The Debtor is seeking to prevent any discovery from taking place on the pending child victims act cases, including depositions of the child victims, child molesters, and employees of the "Stay Parties".

Unfortunately for LG CVA Victims, the extended stay requested by the Debtor will severely, if not permanently, hamper the child victims' abilities to pursue their respective state court actions. LG CVA Victims are continuing to age, and several LG CVA Victims have passed away since the Debtor commenced this adversary proceeding on May 2, 2021. It is imperative for the surviving LG CVA Victims, that discovery and depositions of key party witnesses take

4094072, 1, 067000.0001

Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document , Page 10 of 14

place and that LG CVA Victims' testimony be preserved. The permanent harm on extending the preliminary injunction against LG CVA Victims is unfortunately further seen in the death of Norbert Orsolits, a named child molester in <u>LG 28 Doe v. Norbert F. Orsolits, et. al.</u>, Index No.: 813916/2019. LG 28 Doe was granted a default judgment against Defendant Orsolits by Order dated March 2, 2020; however the Court ordered that the assessment of damages against Defendant Orsolits would be conducted at the time of trial or other disposition of the action against the non-defaulting Defendants [Diocese and St. John Gualbert Church and Diocesan Shrine]. LG 28 Doe appealed that portion of the Order, however, prosecution of the appeal was stayed pursuant to the Debtor filing chapter 11 bankruptcy, as the Debtor had participated in the Plaintiff's motion for a default judgment by arguing that the damage assessment should be held in abeyance such that the damages would be assessed against the individual perpetrator and defendant Diocese at the same time.

In the event that this Court extends the preliminary injunction against LG CVA Victims, it is respectfully requested that at a minimum it be for a limited duration of time and that as to LG 1 Doe, LG 2 Doe, LG 24 Doe, LG 25 Doe, LG 27 Doe and LG 36 Doe, the order specify that their respective state court actions are not stayed with respect to the individual perpetrators, Mark Friel, Gerald Jasinski, Fred D. Ingalls, Douglas Faraci, Donald W. Becker, and John J. Sardina. This will permit LG 1 Doe, LG 2 Doe, LG 24 Doe, LG 25 Doe, LG 27 Doe and LG 36 Doe, to seek a severance in their respective state court motions and continue prosecution of their claims against the individuals who molested them as children. The United States Bankruptcy Court for the District of Delaware specifically permitted this relief and did not extend a stay to the perpetrator in <u>LG 37 Doe v. Douglas Nail et. al.</u>, Case No. 1:20-00217 (W.D.N.Y.) A copy of the United States Bankruptcy Court for the District of Delaware Order dated April 3, 2020 is

11

attached hereto as **Exhibit A**. The United States District of New York, Western District, subsequently severed LG 37 Doe's claims against Boy Scouts of America and Greater Niagara Frontier Council from the claims against the perpetrator, Douglas Nail and remanded the claims against Douglas Nail to the Supreme Court of New York State, County of Erie, Index No.: 816082/2019. A copy of the January 19, 2021, United States District of New York, Western District Decision and Order is annexed hereto as **Exhibit B**.

It is respectfully submitted that in review of the balance of hardship, the harm to LG CVA Victims is real, irreparable and is increasing as the Debtor's chapter 11 bankruptcy continues to wane on. Certain LG CVA Victims already lost the opportunity to hold the child molesters and responsible institutions liable in a court of law. It is respectfully submitted that the permanent harm LG CVA Victims are facing if the Debtor's attempts to insulate not only non-debtor parishes and schools from liability, but also the individuals who sexually assaulted the child victims, far outweighs the purported harm to the Debtor.

### D. THE PUBLIC INTEREST WOULD NOT BE SERVED BY GRANTING AN EXTENDED STAY OF CIVIL PROCEEDINGS AGAINST NON-BANKRUPT CO-DEFENDANTS WHO WERE NEGLIGENT IN FACILITATING THE SEXUAL ASSAULTS UPON CHILDREN

As the Supreme Court has noted there is "no doubt that ... the sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." Packingham v. North Carolina, 137 S. Ct. 1730, 1736 (2017) quoting Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244 (2002). "[T]he Church's responsibility for the misconduct and its alleged cover-up, is a "'public controversy'". New Life Ctr., Inc. v. Fessio, 229 F.3d 1143 (4th Cir. 2000). The relief requested by the Debtor seeks to protect independent, solvent corporations who are liable for sexual abuse of innocent children, which is in contravention to the New York State

12

4094072, 1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document , Page 12 of 14

Legislature's justification for passing the Child Victims Act.[1] It closes the door that the Child Victims Act opened for LG CVA Victims to pursue legal action against the individual(s) who molested them as children and hold the responsible institutions liable. The non-bankrupt defendants should not be able to hide behind the shield of the Debtor's chapter 11 bankruptcy and avoid being held accountable in a court of law. It is respectfully submitted that the public interest in seeing institutions and perpetrators liable for sexual abuse of children be held accountable, is far more important, than the Debtor's self-serving attempt to extend the stay to non-bankrupt defendants.

## POINT II

### CHILD VICTIMS ACT ACTIONS COMMENCED BY VICTIMS REPRESENTED BY LIPSITZ GREEN SCIME CAMBRIA LLP NOT PROPERLY SERVED WITH NOTICE BY THE DEBTOR ARE NOT SUBJECT TO THE "STIPULATED STAY ORDER" OR THIS ADVERSARY PROCEEDING

The Debtor asserts in paragraph 40 of its motion that "[a]ll CVA cases, except those of LG CVA Claimants[2] are currently stayed by consent of CVA Claimants and the Committee

---

[1] The New York Senate Sponsor's Memorandum for the Child Victims Act identified the legislative rationale for the Child Victims Act, and the injustice it was designed to remedy, as follows:

> New York is one of the worst states in the nation for survivors of child sexual abuse. New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average. Because of these restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety.
> . . . .
> Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties. 2019 New York Senate Bill No. 2440, New York Two Hundred Forty-Second Legislative Session.

[2] Debtor defines LG CVA Claimants as the thirty-six plaintiffs/defendants named in this Adversary Proceeding. Adv. Proc. Case No. 20-01016, Doc. 162, ¶ 2.

4094072, 1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document, Page 13 of 14

pursuant to the Stipulated Stay Order"; however, that assertion is inaccurate as this Court has already held that "the stipulation will have no effect on parties who did not receive notice of the debtor's motion." Adv. Proc. Case No. 20-01016, Doc. 102, p. 8. There are numerous plaintiffs, represented by Lipsitz Green Scime Cambria LLP, who have commenced Child Victims Act cases against non-debtor parishes and/or schools within the geographical territory of the Debtor, which have not been served with proper notice of a motion by the Debtor seeking to add them to this Adversary Proceeding or subject them to a stay stipulation, and thus, are not subject to this Adversary Proceeding or the "Stipulated Stay Order". The most recent extension of the Stipulation expressly states that it excludes plaintiffs who are represented by Lipsitz Green Scime Cambria LLP (see ¶ C), and it is disingenuous of the Debtor to assert that all child victims act claimants, with exception of the 36 LG CVA Victims, are subject to a "Stipulated Stay Order." See Adv. Proc. Case No. 20-01016, Doc. 160.

## CONCLUSION

The extended stay requested by the Debtor will severely, if not permanently, hamper the child victims' abilities to pursue their respective state court actions and hold non-debtor defendants accountable in a court of law. The Debtor has failed to establish its burden of entitlement to an extension of the preliminary injunction issued March 31, 2021, and the relief requested by Debtor should be denied in its entirety.

Dated: September 17, 2021
Buffalo, New York

LIPSITZ GREEN SCIME CAMBRIA LLP

By: /s Amy C. Keller, Esq.
Amy C. Keller, Esq.
*Counsel for the LG CVA Victims*
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
(716) 849-1333 [Ext. 439]
akeller@lglaw.com

14

4094072, 1, 067000.0001
Case 1-20-01016-CLB, Doc 166, Filed 09/17/21, Entered 09/17/21 16:10:25, Description: Main Document , Page 14 of 14