UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------

In re

    THE DIOCESE OF BUFFALO, N.Y.,                   BK 20-10322 CLB

                                  Debtor.                       <u>DECISION & ORDER</u>
----------------------------------------------------------

    THE DIOCESE OF BUFFALO, N.Y.,

                                Plaintiff,                      AP 20-1016 CLB

    v.

    JMH 100 DOE, et al,

                                Defendants.

----------------------------------------------------------

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
Grayson T. Walter, Esq., of counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for The Diocese of Buffalo, N.Y.

Blank Rome LLP
James R. Murray, Esq., of counsel
1825 Eye Street NW
Washington, DC 20006
Co-Counsel for The Diocese of Buffalo, N.Y.

Office of the U.S. Trustee
Joseph W. Allen, Esq.
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, New York 14202

Pachulski Stang Ziehl & Jones LLP
James I. Stang, Esq., Ilan D. Scharf, Esq., and Brittany M. Michael, Esq., of counsel
780 Third Avenue, 34th Floor
New York, New York 10017
Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, NY 14604
Co-Counsel for Parish Steering Committee

Elsaesser Anderson, CHTD.
J. Ford Elsaesser, Esq., of counsel
414 Church St Ste 201
Sandpoint, ID 83864
Co-Counsel for Parish Steering Committee

Lipsitz Green Scime Cambria LLP
Amy Keller, Esq., of counsel
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Attorneys for 36 Claimants

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

The Diocese of Buffalo has moved to extend a prior order that enjoined the prosecution of certain claims against parishes and other affiliated entities. The central issue is whether section 105 of the Bankruptcy Code authorizes the Court to grant further injunctive relief, even with regard to actions that do not directly affect any

property interest of the Diocese's bankruptcy estate.

This Court has previously recited many of the relevant facts in three published decisions addressing requests by the Diocese to stay litigation against parishes and affiliated entities. *See In re Diocese of Buffalo, N.Y.*, 618 B.R. 400 (Bankr. W.D.N.Y. 2020); *In re Diocese of Buffalo, N.Y.*, 623 B.R. 354 (Bankr. W.D.N.Y. 2020); and *In re Diocese of Buffalo, N.Y.*, 626 B.R. 866 (Bankr. W.D.N.Y. 2021). We incorporate these decisions into the present opinion, and will repeat only those facts that are pertinent to the current request for the extension of a temporary injunction.

On February 14, 2019, New York State enacted legislation that reopened its statute of limitations to allow additional time for victims of child abuse to assert claims that were previously barred by the passage of time. *See* Child Victims Act, 2018 N.Y. Sess. Laws c. 11, § 3. Anticipating a need to address hundreds of these complaints, The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. Pursuant to section 362 of the Bankruptcy Code, this filing imposed an automatic stay that applies not only to litigation against the Diocese, but also to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

In Adversary Proceeding No. 20-1016, the Diocese seeks a determination that the automatic stay applies or should be extended to apply to litigation against its parishes and other affiliated entities. In support of this request, the Diocese advances two alternative arguments: either that the prosecution of parish and affiliate litigation

is itself a violation of section 362(a)(3), or that the Court can enjoin such litigation as an exercise of its equitable powers under 11 U.S.C. §105(a). Immediately upon filing its complaint, the Diocese moved for an injunction barring the commencement or continued prosecution of litigation against affiliates. For the reasons stated in our opinion of July 2, 2020, we granted limited relief in the form of a preliminary injunction that was to expire on September 15, 2020. *See In re Diocese of Buffalo, N.Y.*, 618 B.R. 400 (Bankr. W.D.N.Y. 2020). During the effective period of the preliminary injunction, the Diocese and the Official Committee of Unsecured Creditors negotiated a stipulation that contemplated a temporary stay of all related litigation in state court. Thirty-five of the state court plaintiffs objected to a motion to approve that settlement. In a decision issued on December 7, 2020, this Court held that the Committee enjoyed only limited authority to negotiate on behalf of creditors, and that any individual creditor could reject the stipulation. *See In re Diocese of Buffalo, N.Y.*, 623 B.R. 354 (Bankr. W.D.N.Y. 2020). Accordingly, the stipulated stay was approved only with regard to litigation by named creditors other than the 35 non-consenting plaintiffs.

On February 22, 2021, the Diocese moved to enjoin 36 non-consenting litigants[1] from continuing their prosecution of abuse claims against parishes and other affiliates. Again, the Diocese argued that the litigation either violated the automatic stay of 11 U.S.C. § 362 or could be properly enjoined under 11 U.S.C. §105. In a decision dated March 31, 2021, the Court granted a preliminary injunction through October 1, 2021.

---

[1] Subsequent to the Court's decision of December 7, 2020, one additional plaintiff joined in opposing the stipulation staying the prosecution of state court actions.

*In re Diocese of Buffalo*, 626 B.R. 866 (Bankr. W.D.N.Y. 2021). We explained that "property of a bankruptcy estate can include the insurance policies of a debtor." *Id.* at 869. At the time, the parties were still investigating the status of insurance and the Diocese had commenced two other adversary proceedings to determine the scope of insurance coverage. The Court held that a preliminary injunction was warranted in order to preserve the status quo until the parties could present their proof on whether litigation against parishes and other affiliates would impact existing insurance arrangements. Having decided the motion on the basis of a need to preserve rights under 11 U.S.C. § 362(a)(3), we did not address the debtor's other arguments regarding the application of 11 U.S.C. § 105(a).

In its present motion, the Diocese seeks to extend the stay granted on March 31, 2021, for an additional eleven months, until August 31, 2022. The Official Committee of Unsecured Creditors supports this application. The 36 plaintiffs object. They contend that an extended stay will severely impair their right to recover damages from defendants who have not sought bankruptcy protection. Additionally, they assert that the Diocese has failed to show any adverse consequences that would follow from litigation against non-debtors. After hearing argument, the Court granted a temporary continuance of the stay until the issuance of this decision.

Discussion

In July of 2020, when the Court first considered the request of the Diocese to stay abuse litigation against affiliates, we found that "the character and status of [the debtor's insurance] policies are murky, jumbled, questionable and uncertain." *In re*

*Diocese of Buffalo, N.Y.*, 618 B.R. at 405-06. A preliminary injunction was then granted "to preserve the status quo" until the parties could complete the collection of information needed to show whether parish and affiliate litigation would impact insurance policies that were property of the bankruptcy estate. *Id.* at 407. Subsequent extensions of the stay were based on the same premise. In the last sixteen months, however, the parties have made considerable progress in clarifying the nature and character of coverage. For many instances of alleged abuse, both the Diocese and its affiliates may look for coverage to the same policies. But in its most recent submissions, the Diocese now acknowledges that at least some of the 36 non-consenting plaintiffs have claims arising from events for which no insurance has been identified. Such uninsured events implicate no property interest that would impose an automatic stay of litigation against defendants other than the Diocese itself. Consequently, we must now address the issue that we did not previously reach, namely whether 11 U.S.C. § 105(a) grants sufficient authority to continue a stay against all of the 36 non-consenting plaintiffs.

Section 105(a) of the Bankruptcy Code provides that this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." We must always appreciate that this broad authority does not license "action that the Code prohibits." *Law v. Siegel*, 571 U.S. 415, 421, 134 S.Ct. 1188, 1194 (2014). Nonetheless, "[t]his provision has been construed liberally to enjoin suits that might impede the reorganization process." *MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 93 (2d Cir. 1988).

The deadline for filing proofs of claim in this case was August 14, 2021. As we previously explained, this date was selected to coincide with the conclusion of the reopened period for commencing litigation under the Child Victims Act. *See In re Diocese of Buffalo, N.Y.*, 620 B.R. 445 (Bankr. W.D.N.Y. 2020). Thus, in considering the present request for an extended stay, the Court now benefits from information regarding both the status of claims against the Diocese and the existence of actions commenced against parishes and other affiliates. As of the bar date, over 900 individuals have filed claims to recover damages for child abuse. All but 36 of these claimants have accepted a stipulation to stay litigation against parishes and affiliates to recover damages for the same injuries that they have asserted in their proofs of claim. While acknowledging that 11 U.S.C. § 362 imposes a stay on actions against the Diocese itself, the 36 non-consenting plaintiffs assert that they should be allowed to continue litigation against one or more of 28 affiliates.[2] When one looks into the mirror of practicality, however, we witness the image of those same claims in the form of demands for contribution and indemnification.

The bar date of August 14, 2021, applied to all creditors in this case, and was not limited to claimants under the Child Victims Act. As of that date, 392 proofs of claim were also filed on behalf of Catholic parishes, abbeys, cemeteries, schools and other affiliates. These include all of the 28 affiliates that were named as defendants in the actions that the 36 non-consenting plaintiffs filed in state court. In their proofs

---

[2]Some parishes are defendants in more than one of the actions commenced by the 36 non-consenting plaintiffs.

of claim, each of these affiliates has asserted a right to indemnification and contribution from the Diocese for any damages that may be assessed against them.

Section 362(a) of the Bankruptcy Code allows to debtors in Chapter 11 an opportunity to develop a plan without the pressures of state court litigation. In the present instance, the automatic stay may not necessarily apply to those actions against affiliates that do not implicate insurance or other property interests of the Diocese. Even in such instances, however, the contribution and indemnity rights of parishes and affiliates will operate like a circular whirlpool of claims that the Diocese must still address. By reason of their claims for indemnification or contribution, parishes and affiliates have prospectively converted any judgment against them into a claim against the Diocese. Consequently, the prosecution of actions against parishes will ultimately require the parties to revisit the same dispute when in this proceeding, the Diocese proposes a plan to deal with contribution or indemnity rights. Under these circumstances, a stay under 11 U.S.C. § 105 is appropriate and necessary to fulfill the purpose of section 362.

Subject to limited exceptions, a debtor in possession performs the functions and duties of a trustee. 11 U.S.C. § 1107(a). Because it serves in this capacity, The Diocese of Buffalo is charged with the obligation "as soon as practicable," to file a confirmable plan. 11 U.S.C. § 1106(a)(5). Complexity affects practicability, however, and in the present instance, the Chapter 11 case of the Diocese of Buffalo is extremely complicated. Over 900 individuals seek damages arising from instances of abuse. The passage of time presents special challenges for liquidating their claims, as decades

have passed since the occurrence of many of the alleged injuries. Meanwhile, the Diocese has commenced two adversary proceedings to determine the scope of coverage from more than 5,000 policies of insurance issued by more than 70 carriers. At this time, piecemeal litigation against some parishes will further entangle an already knotty situation and threatens to impair efforts to achieve a global resolution of claims for child abuse. As long as the debtor shows a continuing effort to address these complexities in good faith, we ought to avoid needless impediments to the development of a confirmable plan.

Pursuant to 11 U.S.C. § 105(a), this Court may issue any order "that is necessary or appropriate to carry out the provisions of [Title 11]." These provisions include section 1106(a)(5) and its call for an expeditious plan confirmation. The claims against parishes and other affiliates are not extraneous disputes, but ones that will ultimately define the unliquidated claims of those same affiliates. Litigation in state court would achieve not a separate resolution of claims, but the duplication of a dispute that the bankruptcy process must still address in the context of claims for contribution and indemnity. For these reasons, the separate prosecution of the 36 actions would become an inherent distraction that promises to complicate negotiations. Accordingly, the Court finds good cause for an extension of the current stay.

Because a stay is warranted under 11 U.S.C. § 105, we need not at this time identify those actions that would otherwise have been stayed under 11 U.S.C. § 362(a)(3). As with any injunctive relief, however, a stay must be carefully defined and reasonable in scope. Recognizing the challenges in developing a confirmable plan,

we conclude that the debtor is reasonable in its request to extend the current stay until August 31, 2022. However, we predicate this finding on an expectation of collegial cooperation. Such cooperation should include prompt response to proper requests for access to documents and information. Notwithstanding the present need to stay third-party litigation, victims retain an independent cause of action against parishes and affiliates. The justification for a stay under 11 U.S.C. § 105(a) will surely begin to evaporate if the debtor procrastinates in working toward a global and just settlement. Should circumstances warrant, the 36 non-consenting plaintiffs may move at any time to limit or modify the extended stay. In particular, for good cause shown, the plaintiffs may seek relief to pursue remedies against individuals who may have committed acts of abuse.

For the reasons stated herein, the Court will grant the debtor's motion to enjoin 36 litigants from the continued prosecution of abuse claims through August 31, 2022. To the extent that the debtor wishes to extend this stay to other claimants, it will need to bring a separate motion on notice.

So ordered.

Dated: October 21, 2021  /s/ Carl L. Bucki
Buffalo, New York Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.