UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

---

In re:                                       Case No. 20-10322

The Diocese of Buffalo, N.Y.,                Chapter 11

                Debtor.

---

The Diocese of Buffalo, N.Y.,

                Plaintiff,
                                             Adversary Proc. No. 20-01016
v.

JMH 100 Doe, *et. al.*,

                Defendants.

---

**DEFENDANTS' OBJECTION TO THE SECOND MOTION FILED BY THE
DEBTOR/PLAINTIFF TO EXTEND THE PRELIMINARY INJUNCTION
STAYING THE PROSECUTION OF LG CVA VICTIMS LAWSUITS
UNTIL AT LEAST MAY 31, 2023 PURSUANT TO 11 U.S.C. §§ 105(a) and 362**

## INTRODUCTION

Adversary Proceeding Defendants, LG 1 DOE, LG 2 DOE, LG 3 DOE, LG 4 DOE, LG 10 DOE, LG 11 DOE, LG 12 DOE, LG 13 DOE, LG 14 DOE, LG 15 DOE, LG 16 DOE, LG 17 DOE, LG 18 DOE, LG 19 DOE, LG 20 DOE, LG 21 DOE, LG 22 DOE, LG 23 DOE, LG 24 DOE, LG 25 DOE, LG 26 DOE, LG 27 DOE, LG 28 DOE, LG 29 DOE, LG 30 DOE, LG 31 DOE, LG 36 DOE, LG 45 DOE, LG 49 DOE, LG 69 DOE, LG 74 DOE, LG 77 DOE, DON E. WHELAN, DORIAN REEVES, WYATT SCHOENLE, LG 65 DOE, SUSAN PATRIZI, ARTHUR STAFFORD, KEVIN BLACKWELL, THOMAS SMITH, TODD DERK, LG 19 DOE, LG 20 DOE, LG 37 DOE, LG 80 DOE, LG 81 DOE, LG 85 DOE, LG 92 DOE and LG 102 DOE (hereinafter referred to collectively as "LG CVA Victims"), submit this Objection to the second motion filed by the Debtor, The Diocese of Buffalo, N.Y., to extend the preliminary injunction of the state court prosecution of the LG CVA Victims cases through May 31, 2023 pursuant to 11 U.S.C. §§ 105(a) and 362. Adv. Proc. Case No. 20-01016, Doc. No. 247 (hereinafter "Debtor's Second Motion to Extend a Preliminary Injunction").

The LG CVA Victims are child victims of sexual assault and seek to continue prosecution of their state court actions against the non-debtor Catholic entities, and individual perpetrators, who are named as defendants in their respective underlying Child Victims Act State Court proceedings. The Debtor now moves to extend a stay of the prosecution of LG CVA Victims state court cases until at least May 31, 2023, despite the irreparable harm that it will cause the LG CVA Victims if they are unable to proceed, and despite the Debtor's failure to meet its burden of establishing its entitlement to another extension of a preliminary injunction. The non-debtor Catholic entities who are named as defendants in the underlying Child Victims Act State Court proceedings have been, so far, essentially shielded from litigation, at the grave expense of the LG

2

CVA Victims. In fact, since the Debtor has commenced this Chapter 11 proceeding, three of the LG CVA Victims have passed away and their right to seek justice under the Child Victims Act has been forever taken away from them. The surviving LG CVA Victims request that this Court deny the Debtor's request for yet another extended preliminary injunction shielding non-debtor Catholic entities from their liability in causing the LG CVA Victims to be subjected to horrific sexual assaults at the hands of clergy. The Debtor is not the victim in this proceeding, and its attempts to continue trying to silence the LG CVA Victims and deprive them of their right to a jury trial versus non-debtor entities, should not be permitted.

The LG CVA Victims incorporate herein by reference, Attorney Jeffrey Reina's Declaration [Adv. Doc. No. 29], LG CVA Victims Answer [Adv. Doc. No. 69], Attorney Amy Keller's Declaration [Adv. Doc. No. 81], Affirmation of Attorney Richard P. Weisbeck, Jr. [Doc. No. 878], Affidavit of LG 3 Doe [Doc. No. 878-7], Affidavit of LG 25 Doe [Doc. No. 878-8], LG CVA Victims Memorandum of Law [Adv. Doc. No. 129], LG CVA Victims Answer to the First Amended Complaint [Adv. Doc. No. 154], LG CVA Victims Objection [Adv. Doc. No. 166], LG CVA Victims Answer to the Second Amended Complaint [Adv. Doc. No. 256], along with all exhibits annexed to the afore-referenced submissions, and counsel for LG CVA Victims oral arguments at the May 20, 2020 Court appearance, June 10, 2020, November 2, 2020, November 16, 2020, March 4, 2021, and September 24, 2021 hearings.

3

4645346, 1, 067000.0001
Case 1-20-01016-CLB, Doc 257, Filed 07/22/22, Entered 07/22/22 14:38:10, Description: Main Document, Page 3 of 13

# ARGUMENT

## POINT I

### THE DEBTOR HAS FAILED TO MEET ITS BURDEN OF PROOF THAT LITIGATION AGAINST NON-DEBTOR CATHOLIC ENTITIES WILL VIOLATE 11 U.S.C 362(a)(3)

This Court has already held that "at least some of the 36 non-consenting plaintiffs have claims arising from events for which no insurance has been identified. Such uninsured events implicates no property interest that would impose an automatic stay of litigation against defendants other than the Diocese itself." In re Diocese of Buffalo, 633 B.R. 185, 187 (Bankr. W.D.N.Y. 2021). Since the Court's October 21, 2021 Decision, the Debtor has failed to provide any additional proof of insurance coverage. This is especially concerning, whereas here, the Debtor is now seeking to request that the preliminary injunction be extended to an additional 13 cases, yet provides no proof that these LG CVA Victims cases would materially erode coverage under a specific policy of insurance. See e.g., In Re Diocese of Rochester, 2022 WL 1638966, at *5 (Bankr. W.D.N.Y. May 23, 2022) (Court found that the Diocese failed to carry its burden of proving that a specific CVA case would materially erode coverage under a specific policy of insurance, and thus did not find that victims case against non-debtor Catholic corporations were automatically stayed pursuant to 11 U.S.C. § 362(a)(3)). It is respectfully submitted that the Debtor's conclusory assertion that "[i]n the event that the existing preliminary injunction is not extended, the LG CVA Cases will deplete insurance assets owned by the Diocese's estate" (Debtor's Second Motion to Extend a Preliminary Injunction, ¶ 32), is insufficient to meet its burden of proof that each LG CVA Victims case is stayed pursuant to 11 U.S.C. § 362(a)(3). Therefore, the LG CVA Victims request that the Debtor's second motion to extend the preliminary injunction pursuant to 11 U.S.C. § 362(a)(3) be denied.

4

## POINT II

## THE DEBTOR FAILS TO MEET ITS BURDEN OF ESTABLISHING ITS ENTITLEMENT TO A SECOND EXTENSION OF THE PRELIMINARY INJUNCTION UNDER THE TRADITIONAL TEST

In order for the Debtor to extend the preliminary injunction, the Debtor must establish (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). As the Supreme Court has noted, "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) quoting Amoco Prod. Co. v. Vill. of Gambell, AK, 480 U.S. 531, 542 (1987).

As noted by Western District Court Bankruptcy Court Judge Warren, "[a] preliminary injunction is a tool to be wielded with great care." In re Diocese of Rochester, 2022 WL 1638966, at *4 (Bankr. W.D.N.Y. 2022). The Debtor carries the burden of proof in establishing the "extraordinary and drastic remedy" of an injunction staying litigation against non-debtors. See In re Third Eighty-Ninth Assocs., 138 B.R. 144, 146 (S.D.N.Y. 1992).

In the Second Circuit, the controlling standard for issuance of a preliminary injunction requires the Debtor to demonstrate:

> (1) either a likelihood that [it] will succeed on the merits of [its] claim, or that the merits present serious questions for litigation and the balance of hardship tips decidedly toward the [Debtor]; and (2) that without the injunction, [it] will likely suffer irreparable harm before the court can rule upon his claim. In Re Diocese of Buffalo, 626 B.R. 866, 870 (Bankr. W.D.N.Y. 2021), citing Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 122 (2d Cir. 1994).

5

It is respectfully submitted that the Debtor has failed to meet its burden to extend the preliminary injunction staying the prosecution of certain lawsuits brought by LG CVA Victims against non-debtor Catholic entities, and its request to extend the preliminary injunction should be denied.

### A. THE DEBTOR HAS FAILED TO ESTABLISH IT WILL SUCCEED ON THE MERITS OF ITS CLAIM OR THAT THE MERITS PRESENT SERIOUS QUESTIONS FOR LITIGATION

"In the bankruptcy context, likelihood of success on the merits may be understood as the likelihood of a successful reorganization." In re Roman Cath. Diocese of Syracuse, New York, 628 B.R. 571, 580 (Bankr. N.D.N.Y. 2021), citing In re Calpine Corp., 365 B.R. 401, 409 (Bankr. S.D.N.Y. 2007).

In its Second Motion to Extend a Preliminary Injunction, the Debtor represents that it has made "significant progress" toward reorganization since the Court issues its October 21, 2021 extension order. Debtor's Second Motion to Extend a Preliminary Injunction, ¶ 6. However, the Debtor has been in Chapter 11 bankruptcy for 874 days and the proof of claim deadline passed almost a year ago. Yet, the Debtor admits that mediation discussions are still in "early stages" and that it has only participated in two mediation sessions since the mediation order was issued on February 3, 2022. Id., ¶¶ 15-16. As this Court observed in its October 2021 order, "[t]he justification for a stay under 11 U.S.C. 105(a) will surely begin to evaporate if the debtor procrastinates in working toward a global and just settlement." 633 B.R. at 189.

The Debtor has failed to provide any indication as to what action it has taken, if any, to get the non-debtor Catholic entities it seeks to protect through staying state court litigation, to meaningfully contribute towards a settlement for child sexual assault victims. It appears that rather than this Chapter 11 bankruptcy moving swiftly, it is dredging along to such a degree the Debtor

6

is seeking to extend this injunction for another 9 months, without any indication as to when it expects to present a confirmable and consensual plan of reorganization.

This Adversary Proceeding was commenced by the Debtor against Child Victims Act plaintiffs seeking a judgment declaring that section 362 of the Bankruptcy Code stays continued prosecution of the claims against non-debtor parishes, schools and other Catholic ministry entities and institutions within the geographical territory of the Debtor. Adv. Proc. Case No. 20-01016, Doc. 1. Alternatively, the Debtor sought a permanent or preliminary injunction barring the commencement or continued prosecution of Child Victims Act cases against the aforementioned non-debtor entities. Id.

This Court has already rejected the contention by the Debtor that lawsuits against parishes or affiliates are stayed by operation of 11 U.S.C. § 362(a)(1) or § 362 (a)(6). In re Diocese of Buffalo, N.Y., 618 B.R. 400, 405 (Bankr. W.D.N.Y. 2020). This Court has also found, as noted above, that at least some of the LG CVA Victims have claims for which no insurance has been identified, and as such 11 U.S.C. § 362(a)(3) would not apply. 633 B.R. at 187.

In re Diocese of Rochester, 2022 WL 1638966 (Bankr. W.D.N.Y. 2022), the Diocese of Rochester commenced an adversary proceeding against child victims who were plaintiffs in state court actions against non-debtor Catholic entities and filed a motion requesting an order pursuant to 11 U.S.C. section 105(a) and 362 enjoining the continued prosecution of certain lawsuits. As in this action, mediation has not been successful and the Debtor admitted there remained a "significant divergence" in the positions of the parties. See Adv. Proc. Case No. 22-02075, Doc. No. 4, ¶ 4. The Official Committee of Unsecured Creditors submitted an objection to the debtor's motion for entry of an order pursuant to 11 U.S.C. section 105(a) and 362 enjoining the continued prosecution of certain lawsuits. See Adv. Proc. Case No. 22-02075, Doc. No. 17. The Official

7

Committee of Unsecured Creditors noted that "[t]hroughout the negotiation process it has become clear that the Diocese is not willing to do anything more than push the Survivors to accede to an unreasonable settlement while litigation is stayed." Id. at ¶ 1. The Official Committee of Unsecured Creditors also noted that the stay requested would not facilitate meaningful settlement discussion or allow a productive mediation to occur, but rather, would insulate insurance carriers from risk, removing any incentive to fund a fair settlement. Id. at ¶ 9. The Court denied the motion by the Diocese and dismissed the adversary proceeding complaint. The Court in reviewing the four preliminary injunction factors, found that each factor weighed against imposition of a preliminary injunction. 2022 WL 1638966 (Bankr. W.D.N.Y. 2022). Specifically, the Court found that the likelihood of a successful reorganization without survivor consent would weigh against the imposition of a preliminary injunction. 2022 WL 1638966 at *6. The Court further held that the Diocese failed to demonstrate that an immediate and irreparable adverse economic consequence would result if the injunction request was denied. The Court also found that the balance of harms to the victims, by a continued stay of litigation, "is substantially greater than the speculative harms imagined by the Diocese." Finally, the Court found the public interest factor strongly favors denial of the injunctive relief sought by the Diocese. Id., at *7.

Similarly, here the Debtor has set forth no basis as to how granting this extraordinary relief of a subsequent nine month long preliminary injunction will aid the mediation process or provide any incentive for insurers or non-debtor Catholic entities to fund a meaningful settlement, such that likelihood of reorganization is likely. The Debtor has also made no showing it will suffer an immediate adverse impact. Furthermore, as noted above, three LG CVA Victims have already passed away since the Debtor commenced its Chapter 11 proceeding, and as time continues to

8

4645346.1, 067000.0001
Case 1-20-01016-CLB, Doc 257, Filed 07/22/22, Entered 07/22/22 14:38:10,
Description: Main Document , Page 8 of 13

pass, the balance of harms tips more decidedly in the favor of the victims, as does the public interest factor.

### B. THE DEBTOR HAS MADE NO SHOWING IT WILL BE IRREPARABLY HARMED IF THE PRELIMINARY INJUNCTION IS NOT EXTENDED

"A showing of irreparable harm is essential to the issuance of a preliminary injunction." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995). "To establish irreparable harm, the movant must demonstrate "an injury that is neither remote nor speculative, but actual and imminent" and that cannot be remedied by an award of monetary damages. Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995) quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).

A party cannot prevail on a preliminary injunction motion absent a showing of imminent, irreparable harm, which must be more than a mere possibility. 3 Collier on Bankruptcy ¶ 7065.02 (internal citations omitted).

Here, the Debtor seeks an extended stay of the state court prosecution of the LG CVA Victims cases. It is respectfully submitted, that the LG CVA Victims claims will have to be liquidated in either state court or bankruptcy court and therefore, the cost of litigation should not be considered prejudicial to the Debtor or non-bankrupt defendants. "It is unreasonable to presume that the continuance in the state court would subject the debtor's estate to a greater expense." Matter of Rabin, 53 B.R. 529, 531–32 (Bankr. D.N.J. 1985). "The cost of defending the state court action in the state court has not been considered so prejudicial as to require continuance of the stay." Matter of Rabin, 53 B.R. 529, 532 (Bankr. D.N.J. 1985) citing In re McGraw, 18 B.R. 140, 142 (Bankr.W.D.Wis.1982); Hoenig v. Hoffman (In re Hoffman), 33 B.R. 937, 941 (Bankr.W.D.Okla.1983). If any "insurance coverage" asset claimed to be owned by the Debtor

9

would be depleted by the continuation of the LG CVA Victims state court actions, then the Debtor should pursue a preliminary injunction against the non-debtor parish and/or school, not the child victims of sexual assault.

The Debtor's arguments of a potential risk of collateral estoppel is speculative and not supported by case law. It is the non-bankrupt parties' negligence which will be determined in the LG CVA Victims State Court Actions, not the Debtor. The Debtor's purported need to monitor and participate in the defense of non-debtor parties is voluntarily and should not be a basis for issuing a preliminary injunction against child victims of sexual assault from pursuing their actions against non-bankrupt defendants. There is no greater diversion of attention of Debtor personnel in continuing to administer its insurance program and provide support to parishes and schools for current litigation than in the continuation of the LG CVA Victims state court actions.

### C. **LG CVA VICTIMS WILL BE IRREPARABLY HARMED IF THE PRELIMINARY INJUNCTION IS EXTENDED**

If the Debtor's requested relief is granted, the LG CVA Victims will most certainly be irreparably harmed if they are prevented from seeking justice against the individuals and institutions liable for the horrendous sexual abuse in a court of law. There is still no date established for the Debtor to emerge from bankruptcy and then permit the continuation of the state court actions against the non-bankrupt defendants. Therefore, the motion by the Debtor to protect the non-bankrupt defendants by extending the stay is an unjustifiable and unreasonable delay of justice for the child victim. The sexual abuse of the LG CVA Victims occurred decades ago. The Debtor is seeking to prevent any discovery from taking place on the pending child victims act cases, including depositions of the child victims, child molesters, and employees of the "Stay Parties".

10

4645346_1_067000_0001
Case 1-20-01016-CLB, Doc 257, Filed 07/22/22, Entered 07/22/22 14:38:10, Description: Main Document , Page 10 of 13

Unfortunately for LG CVA Victims, the extended stay requested by the Debtor will severely, if not permanently, hamper the child victims' abilities to pursue their respective state court actions. LG CVA Victims are continuing to age, and three LG CVA Victims have passed away since the Debtor filed for Chapter 11 bankruptcy relief. It is imperative for the surviving LG CVA Victims, that discovery and depositions of key party witnesses take place and that LG CVA Victims' testimony be preserved.

It is respectfully submitted that in review of the balance of hardship, the harm to LG CVA Victims is real, irreparable and is ever increasing as the Debtor's chapter 11 bankruptcy continues to wane on. Certain LG CVA Victims have already lost the opportunity to hold the child molesters and responsible institutions liable in a court of law. It is respectfully submitted that the permanent harm LG CVA Victims are facing if the Debtor's attempts to insulate not only non-debtor parishes and schools from liability, but also the individuals who sexually assaulted the child victims, far outweighs the purported harm to the Debtor.

### D. THE PUBLIC INTEREST WOULD NOT BE SERVED BY GRANTING AN EXTENDED STAY OF CIVIL PROCEEDINGS AGAINST NON-BANKRUPT CO-DEFENDANTS WHO WERE NEGLIGENT IN FACILITATING THE SEXUAL ASSAULTS UPON CHILDREN

As the Supreme Court has noted there is "no doubt that ... the sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people." Packingham v. North Carolina, 137 S. Ct. 1730, 1736 (2017) quoting Ashcroft v. Free Speech Coalition, 535 U.S. 234, 244 (2002). "[T]he Church's responsibility for the misconduct and its alleged cover-up, is a '"public controversy"'". New Life Ctr., Inc. v. Fessio, 229 F.3d 1143 (4th Cir. 2000). The relief requested by the Debtor seeks to protect independent, solvent corporations who are liable for sexual abuse of innocent children, which is in contravention to the New York State Legislature's justification for passing the Child Victims Act. The New York Senate Sponsor's Memorandum for

11

4645346, 1, 067000.0001
Case 1-20-01016-CLB, Doc 257, Filed 07/22/22, Entered 07/22/22 14:38:10, Description: Main Document , Page 11 of 13

the Child Victims Act identified the legislative rationale for the Child Victims Act, and the injustice it was designed to remedy, as follows:

> New York is one of the worst states in the nation for survivors of child sexual abuse. New York currently requires most survivors to file civil actions or criminal charges against their abusers by the age of 23 at most, long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average. Because of these restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety. Passage of the Child Victims Act will finally allow justice for past and future survivors of child sexual abuse, help the public identify hidden child predators through civil litigation discovery, and shift the significant and lasting costs of child sexual abuse to the responsible parties. 2019 New York Senate Bill No. 2440, New York Two Hundred Forty-Second Legislative Session.

The relief requested by the Debtor closes the door that the Child Victims Act opened for LG Victims to pursue legal action against the individual(s) who molested them as children and hold the responsible institutions liable. The non-bankrupt defendants should not be able to hide behind the shield of the Debtor's Chapter 11 bankruptcy and avoid being held accountable in a court of law. It is respectfully submitted that the public interest in seeing institutions liable for sexual abuse of children be held accountable, is far more important, than the Debtor's self-serving attempt to force a global resolution on victims of child sexual abuse, even as to non-bankrupt parties, and to rob the victims of their last chance at closure.

4645346.1.067000.0001
Case 1-20-01016-CLB, Doc 257, Filed 07/22/22, Entered 07/22/22 14:38:10, Description: Main Document, Page 12 of 13

## CONCLUSION

The extended stay requested by the Debtor will severely, if not permanently, hamper the child victims' abilities to pursue their respective state court actions and hold non-debtor defendants accountable in a court of law. The Debtor has failed to establish its burden of entitlement to an extension of the preliminary injunction until May 31, 2023, and the relief requested by Debtor should be denied in its entirety.

Dated: July 22, 2022
      Buffalo, New York

**LIPSITZ GREEN SCIME CAMBRIA LLP**

By: */s/ Amy C. Keller, Esq.*
    Amy C. Keller, Esq.
    *Counsel for the LG CVA Victims*
    42 Delaware Avenue, Suite 120
    Buffalo, New York 14202
    (716) 849-1333 [Ext. 439]
    akeller@lglaw.com

13

4645346_1, 067000.0001
Case 1-20-01016-CLB, Doc 257, Filed 07/22/22, Entered 07/22/22 14:38:10, Description: Main Document, Page 13 of 13