UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re

  THE DIOCESE OF BUFFALO, N.Y.,    BK 20-10322 CLB


       Debtor.        <u>DECISION & ORDER</u>
------------------------------------------------------

  THE DIOCESE OF BUFFALO, N.Y.,

      Plaintiff,       AP 20-01016 CLB

  v.

  JMH 100 DOE, ET AL,


      Defendants.
------------------------------------------------------

      Bond, Schoeneck & King, PLLC
      Stephen A. Donato, Esq., Grayson T. Walter, Esq.,
      Charles J. Sullivan, Esq. & Jeffrey D. Eaton, Esq.,  of counsel
      One Lincoln Center
      Syracuse, New York 13202-1355
      Attorneys for The Diocese of Buffalo, N.Y.

      Pachulski Stang Ziehl & Jones LLP
      Ilan D. Scharf, Esq., of counsel
      780 Third Avenue, 34th Floor
      New York, New York 10017
      Attorneys for Official Committee of Unsecured Creditors

      Gleichenhaus, Marchese & Weishaar, PC
      Scott Bogucki, Esq., of counsel
      43 Court Street, Suite 930
      Buffalo, New York 14202
      Co-Counsel for Official Committee of Unsecured Creditors

      Lipsitz Green Scime Cambria
      Richard P. Weisbeck, Jr., Esq. & Amy C. Keller, Esq., of counsel
      42 Delaware Avenue, Suite 120
      Buffalo, New York 14202
      Attorneys for 49 Claimants

> Office of the U.S. Trustee
> Joseph W. Allen, Esq.
> Olympic Towers
> 300 Pearl Street, Suite 401
> Buffalo, New York 14202

Carl L. Bucki, Chief U.S.B.J.

The Diocese of Buffalo has moved to extend a stay of litigation that 49 plaintiffs wish to pursue against parishes and other entities to recover damages for alleged instances of sexual abuse.  The issue once again is whether the debtor has met its burden to show that a further stay is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

On February 28, 2020, the Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code.  As a consequence, 11 U.S.C. § 362(a)(1) imposed an automatic stay of the commencement or continuation of judicial proceedings against the debtor.  No one here questions the applicability of this section to numerous actions against the Diocese itself to recovery damages for alleged instances of child abuse.  With regard to many claims, however, plaintiffs also assert the joint liability of parishes and other affiliated entities.  Altogether, more than 900 individuals have filed abuse claims.  Although the majority of these claimants have voluntarily stipulated to suspend the prosecution of litigations against affiliates, 49 plaintiffs declined to consent to any such moratorium.

On four prior occasions, this Court has entertained requests by the Diocese to stay the continued prosecution of abuse claims as against parishes and other affiliates.

Most recently, on August 11, 2022, we issued a decision staying litigation by the 49 non-consenting plaintiffs.  *See In re Diocese of Buffalo, N.Y.*, 642 B.R. 350 (Bankr. W.D.N.Y. 2022).  The duration of that restriction ended on May 31, 2023.  Accordingly, the Diocese now seeks an extension of our prior ruling.  The 49 non-consenting plaintiffs object.  Emphasizing that the affiliates are not themselves in bankruptcy, these plaintiffs assert a right to pursue recoveries from non-debtor defendants.

Section 105(a) of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  In our decision of October 21, 2021, we found that "piecemeal litigation against some parishes will further entangle an already knotty situation and threatens to impair efforts to achieve a global resolution of claims for child abuse."  *In re Diocese of Buffalo, N.Y.*, 633 B.R. 185, 189.  Under the circumstances then extant, "a stay under 11 U.S.C. § 105 [was] appropriate and necessary to fulfill the purpose of" the automatic stay provisions of 11 U.S.C. § 362.  *Id.* at 188.  When the Court then approved its most recent stay extension on August 11, 2022, we recognized a need to allow the process of mediation "to continue for a reasonable time without the distraction of state court litigation."  *In re Diocese of Buffalo, N.Y.*, 642 B.R. 350, 352.

This Court has previously approved the appointment of two mediators, both impartial and well qualified to assist in negotiating the terms of a consensual plan. Implicit in their assignment is the expectation that the mediators will report to the Court when negotiations have reached an impasse.  Not only have we received no such communication, but the debtor further advises that additional mediation sessions have

been scheduled for four upcoming dates in July and August of 2023. Furthermore, even though the mediation process has been ongoing for more than a year, no active participant has alleged a lack of progress.

Every debtor in Chapter 11 is charged with the responsibility to develop a confirmable plan as quickly as practicable. *See* 11 U.S.C. § 1106(a)(5). Before the Diocese can present a plan with any hope for confirmation, it must resolve many intricate issues, among which are arrangements for funding. At this time, litigation against parishes and affiliates will distract those entities and insurers from the process of negotiating contributions to the plan. This distraction is further exasperated by insurance arrangements that provide shared coverage for both the Diocese and many affiliates.

Any use of 11 U.S.C. § 105(a) to restrict conduct involving a non-debtor is an extraordinary measure that this Court will impose only upon a clear demonstration of need. On this question, the burden of proof falls on the party seeking to extend a stay. In this complex case, mediation is both necessary and appropriate to facilitate the development of a confirmable plan. Accordingly, a well-founded anticipation of good faith negotiations will here suffice to establish a need to continue the stay of litigation against parishes and affiliates. The Diocese asks that the stay be extended through January 31, 2024. However, its proof shows only that trusted mediators have scheduled meetings through August of 2023. Unlike the last request for a stay extension in July of 2022, the Diocese presents its current motion after more than a year of settlement discussions. Without further evidence of progress, we find cause

to extend the stay for no more than about two months after the last scheduled mediation session.

In opposing the extension of a stay, the non-consenting plaintiffs argue stridently that non-bankrupt defendants should be held accountable for wrongful conduct. But each of the non-consenting plaintiffs has also filed a proof of claim seeking recovery in this bankruptcy case. Having thereby consented to the jurisdiction of this Court, they are bound under 11 U.S.C. § 105(a) to a process that "is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Nothing in this decision will preclude any claimant from seeking stay relief if warranted by special circumstances. In particular, we again remind counsel that they may seek permission to pursue whatever options the state may allow to preserve the testimony of witnesses and victims with failing health or advanced age.

On behalf of claimants other than the 49 non-consenting plaintiffs, the Official Committee of Unsecured Creditors has been agreeing to periodic extensions of a stipulation to stay litigation against affiliates of the Diocese. For the reasons stated herein, with regard to the non-consenting plaintiffs, the debtor's motion to extend the stay of litigation is granted only through November 1, 2023, or such earlier date that the Committee's stipulation terminates without extension.

So ordered.

Dated: July 14, 2023                     __/s/ Carl L. Bucki_____
      Buffalo, New York                Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y