**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF BUFFALO, N.Y.,<br><br>                Debtor.<br><hr><br>The Diocese of Buffalo, N.Y.,<br><br>                Plaintiff,<br><br>    v.<br><br>JMH 100 Doe, *et al.*[1]<br><br>                Defendants. | Case No. 20-10322 (CLB)<br><br>Chapter 11<br><br><br><br><br><br>Adversary No. 20-01016 |

### GENERAL AND SPECIFIC OBJECTIONS TO DECLARATION OF JAMES R. MURRAY IN SUPPORT OF THE DIOCESE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(a) ENJOINING THE PROSECUTION OF CERTAIN STATE COURT LAWSUITS

The Official Committee of Unsecured Creditors (the "Committee") of the Roman

Catholic Diocese of Buffalo, New York (the "Diocese") objects to the Direct Testimony of

James R. Murray [Adversary Docket No. 290] (the "Testimony"), submitted by the Diocese

in support of its Motion for a Preliminary Injunction Under 11 U.S.C. §§ 362 and 105(a).

### <u>GENERAL OBJECTIONS</u>

The Committee objects generally James Murray's Testimony is mostly based upon

speculation and incomplete hypotheticals that do not take into account relevant facts.  Mr.

---

[1] A full list of the Defendants in this adversary proceeding is attached as Exhibit A to the Diocese's complaint, which has been redacted to protect the privacy interests of survivors.

Murray's Testimony frequently relies upon allegations that the Diocese is an insured under Pre-1973 policies issued individually to each parish as evidence that that is the case, but fails to explain the basis for that assumption. Much of the information he testifies to constitutes unsupported conclusions regarding the effects of judgments on the estate's insurance and is irrelevant in any regard because the Committee has conceded it will not enforce any judgments without Court approval.

Below, the Committee objects specifically to particular paragraphs of Mr. Murray's Testimony to the extent the statements lack foundation, are speculative, conclusory, not based on his personal knowledge, not based on his perception, or outside the scope of his non-legal expertise.

## SPECIFIC OBJECTIONS

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| 7 ¶19 | "Like the policies from July 1, 1972 until July 1, 1990 in the Diocese-wide insurance program, the pre-July 1973 parish policies very likely have per occurrence limits." | Objection based upon Federal Rule of Evidence 601 & 602, 802. "Very likely" is speculation with no foundation. |
| 7 ¶20 | "Although the parishes were responsible for purchasing their own coverage prior to July 1, 1973, the Diocese alleges that some or all of the parish policies also provide coverage for the Diocese as an additional insured. | Objection based upon Federal Rules of Evidence 402, 601 & 602. Allegations are not evidence. No foundation for allegation. |
| 7 ¶21 | "Many of the Abuse Actions implicate the insurance coverage discussed above because they involve claimants that seek to hold the Diocese and the Related Entities liable for the same occurrence(s) of alleged abuse." | Objection based upon Federal Rules of Evidence 402 and 802. Statement is overbroad and therefore confusing and not relevant. |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| | | Also hearsay as the source of this statement is not provided. |
| 8 ¶23 | "However, the insurers will likely contend that the number of insureds seeking coverage for the same occurrence of alleged abuse pursuant to the same policy does not increase the number of available per occurrence limits.." | Objection based upon Federal Rules of Evidence 601 and 602. "Likely" means this statement is speculation. |
| 8 ¶23 | "For example, if an Abuse Action alleges one act of abuse and both the Diocese and a parish are held liable for that act of abuse, only one per occurrence limit would be available to provide coverage for both the Diocese and the parish. In other words, the insureds would have to share the per occurrence limit. If the per occurrence limit is fully used to pay the liability of one insured, that could deprive the other insured of coverage." | Objection based upon Federal Rules of Evidence 601, 602 and 611. Speculation and Incomplete Hypothetical. |
| 9 ¶25 | "But insurers sometimes contend in this situation that only one per person sublimit applies to a claimant, regardless of the number of occurrences of abuse. Thus, if an Abuse Action alleges that the claimant was abused on two occasions in 1974, his or her claim would implicate the policy sold by Commercial Insurance, which has limits of liability of $500,000 per occurrence and sublimits of $250,000 per person. Although in this example there are two occurrences, Commercial Insurance may contend that a maximum of $250,000 of insurance is available, no matter how many insureds are covered by the policy and regardless of the number of occurrences of abuse Therefore, if a $1 million judgment is entered against a parish that is alleged to be liable along with the Diocese for the same abuse, and the insurer's coverage position prevails, the entirety of the per person sublimit of liability would be used to satisfy the judgment. Thus, allowing litigation against the parishes in cases alleging abuse that implicates policies with per person sublimits of liability could have a negative impact on the Diocese's coverage." | Objection based upon Federal Rules of Evidence 601 and 602. "Insurers sometimes contend…." No foundation. "…could have a negative impact on the Diocese's coverage." Speculation. Objection based upon Federal Rule 611 and 402, incomplete hypothetical, and irrelevant because no judgment will be entered. |
| 9 ¶25 | "Moreover, some policies that are part of the Diocese-wide program have aggregate limits that encompass defense costs, such as attorneys' fees, expended in connection with | Objection based upon Federal Rules of Evidence 601 and |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| | the defense of covered claims. Thus, the cost of defending against Abuse Actions against the Related Entities, as well as judgments or settlements against them, would reduce or exhaust the total amount of insurance coverage available to the Diocese. In other words, the Diocese would not only be deprived of insurance under such policies for the alleged abuse in the particular Abuse Action that is litigated, but also it would be deprived of insurance for any other allegations of abuse." | 602 and 611. Speculation as to what "would" happen. Confusing and overbroad in that 50 years of coverage cannot be reduced to "some policies have aggregated limited that encompass defense costs…" |
| 9 ¶25 | "Many proofs of claim that indicate that the claimant filed a suit against a Related Entity allege abuse during 1973 and prior to 1973. Although such allegations of abuse impact the policies purchased by the parishes, they may nonetheless impact coverage available to the Diocese. This is because, as noted above, the Diocese alleges it may be additional insured and entitled to coverage pursuant to the parish policies. Thus, permitting claimants who filed proofs of claim alleging abuse implicating the parish policies to pursue Abuse Actions against the Related Entities could deplete the insurance proceeds available to the Diocese." | Objection based upon Federal Rules of Evidence 601 and 602, 802. "May nonetheless impact…" speculation. "Diocese alleges…" hearsay, no foundation for truth of allegation. "could deplete…" speculation, no foundation. |
| 11 ¶30 | "Exhibit C is a table listing proofs of claim alleging abuse during 1973 and prior to 1973 that indicate that the claimant filed an Abuse Action against a Related Entity. Exhibit C shows 271 such proofs of claim. If a claimant secures a settlement or judgment against a parish whose insurance also covers the Diocese as an additional insured, all of the insurance proceeds may be used to pay the Parish's liability, leaving nothing for the Diocese, which would have to pay its share of liability from the estate." | Objection based upon Federal Rule of Evidence 402. No judgments will be enforced. |
| 11 ¶31 | "Some claimants who filed Abuse Actions against the Diocese and Related Entities did not submit proofs of claim. Exhibit D is a table showing the Abuse Actions filed by such claimants alleging abuse during 1973 or after 1973 and thus implicate the post July 1, 1973 Diocese-wide policies. There are five such Abuse Actions. Exhibit E is a table showing Abuse Actions alleging abuse during | Objection based upon Federal Rule of Evidence 402. Incomplete hypothetical. |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| | 1973 and prior to 1973, and thus implicate the parish policies. There are 11 such Abuse Actions." | |
| 12 ¶32 | "In the event that a judgment is secured against a parish, it may make the insurers responsible for covering the judgment reluctant to participate in a settlement in the bankruptcy. This is true, even if the judgment is held in abeyance, because the insurer will likely have to set aside funds to pay the judgment the event that a judgment is permitted to take effect. Thus, allowing continuing litigation against the parishes could become an obstacle to reaching a settlement with all the insurers in the bankruptcy." | Objection based upon Federal Rules of Evidence 601, 602 and 402. Speculation, incomplete hypothetical. Irrelevant as no judgments will be enforced. |

Dated: November 24, 2023       PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Brittany M. Michael*

James I. Stang (*Admitted Pro Hac Vice*)
Iain A.W. Nasatir (*Pending Pro Hac Vice*)
Ilan D. Scharf
Brittany M. Michael
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone: 212-561-7700
Facsimile: 212-561-7777

*Counsel for the Official Committee of Unsecured Creditors*