UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>THE DIOCESE OF BUFFALO, N.Y.,<br><br>　　　　　　　　　Debtor. | Case No. 20-10322 (CLB)<br><br>Chapter 11 |
| The Diocese of Buffalo, N.Y.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JMH 100 Doe, *et al.*[1]<br><br>　　　　　　　　　Defendants. | Adversary No. 20-01016 |

### GENERAL AND SPECIFIC OBJECTIONS TO DECLARATION OF MELISSA POTZLER, ESQ., IN SUPPORT OF THE DIOCESE'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§105(a) AND 362(a) ENJOINING THE PROSECUTION OF CERTAIN STATE COURT LAWSUITS

The Official Committee of Unsecured Creditors (the "Committee") of the Roman Catholic Diocese of Buffalo, New York (the "Diocese") objects to the Direct Testimony of Melissa Potzler [Adversary Docket No. 290] (the "Testimony"), submitted by the Diocese in support of its Motion for a Preliminary Injunction Under 11 U.S.C. §§ 362 and 105(a).

### GENERAL OBJECTIONS

The Committee objects generally that Ms. Potzler's Testimony is riddled with statements for which she has no personal knowledge, and therefore lacks the foundation to make such statements, all because she commenced her employment with the Diocese in September 2022.

---

[1] A full list of the Defendants in this adversary proceeding is attached as Exhibit A to the Diocese's complaint, which has been redacted to protect the privacy interests of survivors.

Simply as a matter of timing, Ms. Potzler could not know what the Diocese faced, or was facing prior to the filing for bankruptcy and the imposition of the automatic stay on all ongoing litigation. Ms. Potzler's Testimony fails to explain the basis for much of the information she testifies to regarding individual State Court Actions, and makes unsupported conclusions regarding the effects of such litigation on the estate.

Below, the Committee objects specifically to particular paragraphs of Ms. Potzler's. Testimony to the extent the statements lack foundation, are speculative, conclusory, not based on her personal knowledge, not based on her perception, or outside the scope of experience.

## SPECIFIC OBJECTIONS

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| 2¶6 | "Many of the complaints in those actions do not meaningfully distinguish between allegations of liability asserted against the Diocese and those asserted against the Related Entities. In addition nearly all of the Abuse Claimants who filed Abuse Action against Related Entities only after the Petition Date, and who were therefore prevented by the Bankruptcy Code's automatic stay provisions from including the Diocese as a named defendant, have nevertheless filed a companion proof of claim in this Chapter 11 Case based upon the same allegations of abuse asserted in their respective Abuse Actions, essentially substituting a proof of claim in lieu of a complaint against the Diocese." | Objection based upon Federal Rules of Evidence 601 and 602. The witness only reviewed approximately twenty complaints. Tr.18:4-19:13. |
| 3¶7 | "Litigating the Abuse Actions during the pendency of the Chapter 11 Case, while the Diocese also attempts to engage in mediation with the Committee and its Insurers, will put a significant strain on the Diocese's staff and will be burdensome and highly disruptive to the administration of the Chapter 11 Case, impairing the Diocese's ability to successfully reorganize. State court litigation against Related Entities would require the Diocese to divert its limited personnel away from the Diocese's restructuring efforts, thereby draining estate resources, and shifting the Diocese's attention away from the mediation, which is the best option for developing a plan of reorganization that will | Objection based upon Federal Rules of Evidence 601 and 602. The Witness's employment commenced in September 2022 and therefore has no knowledge of litigation commenced against the Diocese pre-bankruptcy, nor of the impact of such |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
|  | allow the Diocese to emerge from the Chapter 11 Case successfully." | litigation on the Diocese. Tr.18:15-19:13; 24:11-14 ("I don't know….I wasn't there then."); 30:6-31:4 ("This is a guess… I don't know. . . I cannot answer"); 32:14-16 ("Have you ever coordinated abuse actions before? No."). This testimony is speculation and lacks personal knowledge and foundation. |
| 3¶8 | "In addition, litigation of the Abuse Actions will cause the Diocese and its limited personnel to shift their focus from continuing to provide religious and humanitarian services while pursuing reorganization efforts through mediation and to instead take an active role monitoring and possibly even participating in the litigation of the Abuse Actions." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. |
| 3¶8 | "The Diocese would have to monitor the Abuse Actions in an effort to, among other things, protect against adverse findings and rulings that would impact insurance coverage liability, all of which would negatively affect the Diocese's efforts to confirm a plan of reorganization." | Objection based upon Federal Rules of Evidence 601 and 602. Speculation, no personal knowledge. See Objection to Paragraph 7 |
| 3¶9 | "Specifically, if the Abuse Actions go forward, they will require significant attention from Bishop Fisher, Vicar General Fr. Peter Karalus, myself as Chancellor, Chief Operating Officer Richard Suchan, Chief Financial Officer Ellen Musalowski, Director of Insurance Services, John Scholl, and likely many others." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. |
| 4¶10 | "Because the Bishop also makes all decisions concerning the assignment of priests in the Diocese, it is likely that he will be required to appear and give testimony at depositions and trials." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| 4¶10 | "I anticipate that Mr. Suchan, Ms. Musalowski and I would also need to spend a significant amount of time to assist the Bishop in addressing such matters on behalf of the Diocese, as well as overseeing the Diocese's response to the inevitable flood of discovery requests from Abuse Claimants, Insurers and Related Entity defendants." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. |
| 4¶10 | "I further expect that if litigation goes forward, Fr. Karalus will likely be distracted from his religious and operational duties as he will be called upon to sit for depositions and provide testimony at trial, and Mr. Scholl and I will need to coordinate the efforts of the multiple law firms that the Diocese and Related Entities would rely upon as defense counsel. Each of the above individuals is critical to the Diocese's day-to-day functioning, and the Diocese does not have anyone who can replace their services or, alternatively, who could take over for them in connection with this Chapter 11 Case or the Abuse Actions." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. |
| 5¶11 | "In fact, because of the staffing reductions, the Diocese has already had to reduce and/or eliminate several centralized ministry functions, including the following departments: (1) Youth & Young Adults; (ii) Camp Turner; (iii) Evangelization & Cathechesis; (iv) Deaf Ministry; (v) Disability Ministry; (vi) Hispanic Ministry; (vii) STREAM (Science, Technology, Religion, Engineering, Arts and Math); (vii) Family Life; and (ix) The Catholic Union Store." | Objection based upon Federal Rule of Evidence 402. Relevance to alleged burden to Diocese from litigation if no stay. |
| 5¶12 | "Absent a stay of the Abuse Actions, the Diocese will be required to participate in substantial discovery concerning these fact-specific cases, including preparing for and participating in potentially hundreds of depositions, and providing testify at numerous trials." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. See also Tr. 36:22-37:2; Tr. 37:21-38:2. |
| 5¶12 | "Moreover, even if litigation proceeds only in those Abuse Actions where the Diocese is not a named defendant, because the causes of action asserted against the Related Entities in those Abuse Actions are the same or substantially similar causes of action asserted against the Diocese, the Diocese will be required to take an active part in defending against those causes of action in an effort to | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 6. See also Tr. 101:18-21; Tr. 105:4-22. |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| | avoid issues relating to collateral estoppel, adverse precedent, vicarious liability, or imputed admissions." | |
| 6¶13 | "For example, if findings of fact in a specific Abuse Action establish knowledge or notice of abuse sufficient to support an Insurer's declination of coverage for a Related Entity under the "expected or intended" defense, such findings could have negative precedential value for the Diocese with respect to its attempts to secure coverage for the same instance of abuse, as well as potentially any Abuse Claims of other individuals involving subsequent abuse committed by the same perpetrator." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. Additionally, calls for a legal conclusion (Rules 601 and 602). |
| 7¶16 | "With respect to general liability claims, including claims for bodily injury and sexual misconduct, some of the insurance policies provide for deductibles and self-insured retentions ranging from $10,000 to as much as $250,000 *per occurrence*." | Objection based upon Federal Rule of Evidence 403: Overbroad and confusing as testimony suggests some common trait of retentions over the 50 years of coverage when that is contrary to the evidence. Also, no foundation (Rules 601 and 602), Witness has no demonstrated insurance knowledge. See Tr. 90:16-18; 92:1-13 ("That's what I was told… I don't know…That's well beyond my scope of employment.") |
| 7¶16 | "Consistent with its longstanding practices and the reliance interests and expectations of the Related Entities, the Diocese is obligated to use this earmarked pool of funds to satisfy any defense and/or indemnity costs in each Abuse Action until any applicable deductibles and/or self-insured retentions are satisfied." | Objection based upon Federal Rules of Evidence 601, 602 and 802. Calls for a legal conclusion and is hearsay. |
| 8¶18 | "As the Court is aware, prior to the passage of the Child Victims Act ("CVA"), the Diocese conducted an Independent Reconciliation and Compensation Program | Objection based upon Federal Rule of Evidence 402. IRCP |

| Pg./Para. | Excerpt | Specific Objections |
|---|---|---|
| | ("IRCP"), which provided survivors of sexual abuse an opportunity to settle their Abuse Claims against the Diocese and Related Entities. The Diocese expended approximately $17.6 million to settle 107 survivor claims as part of the IRCP program, with an average settlement payment of approximately $164,486. Because the IRCP program predated passage of the CVA, the survivors who participated in that program were settling claims that were, at the time, subject to an absolute statute of limitations defense. Even setting aside the potential for massive jury verdicts, I anticipate that the per-claim cost to settle Abuse Actions that are now legally viable because they were commenced during the CVA revival window will require at least as much, if not substantially more than, what the Diocese expended to settle time-barred claims through the IRCP. | program irrelevant to alleged burden to Diocese from litigation. Also Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. IRCP program occurred prior to Witness's employment with Diocese. |
| 8¶18 | "Thus, even if only a small subset of the Abuse Actions moves forward in litigation, the reserves established by the Diocese to pay deductibles and self-insured retentions will quickly be exhausted by defense costs and settlement/indemnity payments. Rather than dissipating those resources through litigation, the Diocese believes that they would be put to far better use as a contribution to a survivor trust under a plan of reorganization in this Chapter 11 Case." | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. |
| 8¶19 | "Thus, even if only a small subset of the Abuse Actions moves forward in litigation, the reserves established by the Diocese to pay deductibles and self-insured retentions will quickly be exhausted by defense costs and settlement/indemnity payments. Rather than dissipating those resources through litigation, the Diocese believes that they would be put to far better use as a contribution to a survivor trust under a plan of reorganization in this Chapter 11 Case. | Objection based upon Federal Rules of Evidence 601 and 602. Same objection as to Paragraph 7. See also Tr. 92:23-93:20 ("I don't know. That's beyond my scope of employment.") |

Dated: November 24, 2023            PACHULSKI STANG ZIEHL & JONES LLP

/s/ *Brittany M. Michael*
James I. Stang (*Admitted Pro Hac Vice*)
Iain A.W. Nasatir (*Pending Pro Hac Vice*)
Ilan D. Scharf
Brittany M. Michael
780 Third Avenue, 34th Floor
New York, New York 10017-2024
Telephone: 212-561-7700
Facsimile:  212-561-7777

*Counsel for the Official Committee of Unsecured Creditors*