UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Diocese of Buffalo, N.Y.,<br><br>Debtor. | Case No. 20-10322 (CLB)<br><br>Chapter 11 |
| The Diocese of Buffalo, N.Y.,<br><br>Plaintiff,<br><br>v.<br><br>JMH 100 Doe, *et al.*[1]<br><br>Defendants. | Adversary No. 20-01016 |

### THE DEBTOR'S OMNIBUS RESPONSE TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE DECLARATIONS OF JAMES R. MURRAY, ESQ., JOHN M. SCHOLL AND MELISSA POTZLER, ESQ.

The Diocese of Buffalo, N.Y. (the "Diocese"), by and through its undersigned counsel, hereby submits this omnibus response (the "Omnibus Response") to the objections (the "Objections") [Docket Nos. 312, 313, 314] filed by the Official Committee of Unsecured Creditors (the "Committee"), to the direct testimony of James R. Murray, Esq., John M. Scholl, and Melissa Potzler, Esq. (the "Witnesses"), which testimony was filed in the form of Declarations (the "Declarations") in support of Diocese's motion for a preliminary injunction pursuant to 11 U.S.C. §§ 362 and 105(a) (the "Motion") [Docket No. 289]. The Objections seek to strike portions of the Declarations the Committee claims are irrelevant, lack foundation, are speculative, or constitute hearsay. As established below, the

---

[1] A full list of the Defendants in this in this adversary proceeding is attached as Exhibit A to the *Second Amended Complaint Seeking Declaratory and Injunctive Relief Pursuant to 11 U.S.C. §§ 105 and 362 or, Alternatively, a Preliminary Injunction Pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure* [Adv. Proc. 20-01016, Docket No. 251], which has been redacted protect the privacy interests of survivors.

Committee's Objections are meritless and, respectfully, should be overruled and rejected in their entirety. In support of this Omnibus Response, the Diocese respectfully states as follows:

**OMNIBUS RESPONSE**

### I. *The Objections Are Premature and Procedurally Improper*

1. Initially, the Committee's Objections are premature and procedurally improper. The Committee will have the opportunity to cross-examine the Witnesses at the live hearing on the Motion and can seek to question any factual assertions made by the Witnesses in their respective Declarations. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 457 n.1 (S.D.N.Y. 2007) ("[i]n the context of a bench trial where there is not a concern for juror confusion or potential prejudice, the court has considerable discretion in admitting the proffered testimony at the trial and then deciding after the evidence is presented whether it deserves to be credited"); *see New York v. Solvent Chem Co., Inc.*, 2006 WL 2640647, at *1 (W.D.N.Y. Sept. 14, 2006) (collecting cases holding the same); *BIC Corp. v. Far Eastern Source Corp.*, 23 F. App'x 36, 39 (2d Cir. 2001) ("[A]dmission of evidence in a bench trial is rarely ground for reversal, for the trial judge is presumed to be able to exclude improper inferences from his or her own decisional analysis.").

### II. *The Committee's Relevance Objections Are Baseless*

2. The Committee objects to multiple statements made in the Declarations as irrelevant to the Motion. Those objections are baseless.

3. The Committee objects to statements in the Declarations that detail the Diocese's current self-insured retention obligations and current insurance policy limits as irrelevant to the Motion because the "Committee is conceding it will not proceed with actions that impact these policies (post 1986)." [Dkt. 312 at 2.] The Committee is not the plaintiff in any Abuse Action, and its non-binding representations do not render the parameters of the Diocese's insurance coverage irrelevant to the motion. This is particularly true because the claimants represented by the law firm Lipsitz Green Scime Cambria LLP (the "LG Claimants") made crystal clear in their papers in opposition to the Motion that

they "do not consent or agree with the [Committee's] 'concessions' to not oppose the Debtor's motion as to claims alleging abuse after July 1, 1986, and that no sexual abuse victim may enforce any judgment or settlement against non-debtor entities without Bankruptcy Court approval." [Dkt. No. 308 at 4.]

4. The Committee next objects to statements in the Declarations that discuss the eventualities that will or are likely to occur if judgments are entered in Abuse Actions as irrelevant to the Motion because "no judgment will be entered" or "enforced." [Dkt. 313 at 3-5.] The Committee misrepresents its own purported concession. The Committee does not promise to refrain from entering or enforcing any judgment; rather, it purports to agree (without authority to do so) only that "[n]o plaintiff may seek to enforce any judgment or settlement, including through payment of any insurance proceeds, <u>without further order of this Court</u>." [Dkt. 305 at 18 (emphasis added).] Moreover, as established above, the Committee is not the plaintiff in any Abuse Action, and its non-binding representations do not render testimony regarding the eventualities if judgments are entered irrelevant, particularly in light of the LG Claimants' express rejection of the Committee's "concession" in that regard. [Dkt. No. 308 at 4.]

5. The Committee next objects to statements in the Declarations as irrelevant because they are "confusing." [*see e.g.,* Dkt. 313 at 2.] That the Committee perceives certain testimony as "confusing" plainly does not render such evidence irrelevant. The Committee may seek to clarify any purportedly "confusing" testimony on cross-examination if it so elects.

6. The Committee next objects to a statement made by Melissa Potzler, Esq., regarding Diocesan staffing reductions, including with respect to certain centralized ministry functions and particular departments, as irrelevant to the "alleged burden to Diocese from litigation if no stay." [Dkt. No. 314 at 4.] The Diocese's current staffing levels, however, are plainly relevant to the impact the prosecution of Abuse Actions would have on the Diocese, including to the extent the attention and efforts of the Diocese's reduced personnel would be diverted from reorganization-related efforts.

7.  Finally, the Committee objects to a statement made by Melissa Potzler, Esq. regarding, *inter alia*, the fact that, through the Independent Reconciliation and Compensation Program ("IRCP"), the Diocese expended approximately $17.6 million to settle 107 survivor claims, with an average settlement payment of approximately $164,486, as irrelevant to the "alleged burden to Diocese from litigation." [Dkt. No. 314 at 5-6.] The subject statement by Melissa Potzler, Esq. is relevant to the Motion, including with respect to the Diocese's pattern and practice of indemnifying Related Entities for potential liability for claims of abuse.

### III. The Committee's Objections for Lack of Foundation, Speculation and Calling for a Legal Conclusion Are Baseless

8.  The Committee objects to several statements in the Declarations as lacking a proper foundation, constituting speculation, and/or calling for a legal conclusion. These objections are similarly meritless.

9.  Lay witness testimony, even in the form of opinions, is admissible so long as the "opinion … [is] rationally based on the perception of the witness" through "first-hand knowledge or observation." *United States v. Glenn*, 312 F.3d 58, 67 (2d Cir. 2002) (quotation omitted) (discussing Fed. Rule Evid. 701). Moreover, as established by the Supreme Court, whether to grant a preliminary injunction is often based on "procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Indeed, a "lay witness" may even testify about "specialized or technical matters" so long as that witness has that "particularized knowledge by virtue of her experience … because [such] testimony is based upon the layperson's *personal* knowledge rather than on *specialized* knowledge within the scope of rule 702." *Donlin v. Phillips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) (emphases added); *see also In re LTV Steel Co.*, 285 B.R. 259, 265 (Bankr. N.D. Ohio 2012) (witness testifies as to projected cost of environmental liabilities based "upon his own knowledge and daily participation in the Debtor's affairs to prepare his projections").

10. Here, the Witnesses have provided sufficient foundation for their testimony. James R. Murray, Esq. explained in his Declarations that he is the Chair of Blank Rome, LLP's policyholder-only Insurance Recovery Practice Group, that he has 35 years of insurance coverage experience, representing exclusively policyholders against insurance companies, that a "significant portion" of his experience "involves pursuing coverage under general liability policies from the 1940's through the 1980's," that, since 2003, approximately half of his practice "has involved insurance coverage for historical sexual abuse claims," and that his firm has prepared an evolving "coverage chart" regarding insurance coverage in this proceeding. [Dkt. No. 45 ¶¶ 2-8; Dkt. No. 290 ¶¶ 2-3; *see also Adversary Proceeding 20-1009*, Dkt. No. 168 ¶¶ 1-12.]

11. John M. Scholl established in his Declaration dated April 30, 2020 that he is the Director of Insurance Services for the Diocese and that, in that capacity, he is the "individual primarily responsible for the Diocese's risk management functions, including, without limitation, its insurance programs." [Dkt. No. 5.] He established further that he has more than 40 years of experience working in the insurance and risk management industry, including nearly 25 years working for the Diocese. [*Id.*]

12. Melissa Potzler, Esq. established in her Declaration dated October 23, 2023 that she is the Diocese's Chancellor, Child Protection Policy Coordinator, Chief Compliance Officer, and In-house Counsel, that she has served in those roles since September 2022, and that in her latter two roles, she handles "the Diocese's legal affairs" and is "generally familiar with the assets, liabilities, and operations of the Diocese." [Dkt. No. 291].

13. Accordingly, the Witnesses base their respective testimony on either personal knowledge, perception or experience,[2] and that testimony is thus admissible under, *inter alia*, Federal

---

[2] The Committee objects to multiple statements in Melissa Potzler, Esq.'s Declaration detailing the anticipated impacts on the Diocese and its personnel if the Abuse Actions are permitted to move forward on the ground that Ms. Potzler's employment with the Diocese "commenced September 2022." [Dkt. No. 314.] The challenged statements

Rule of Evidence 701. Moreover, because the Motion deals with anticipated events that have not yet occurred – and the Committee has speculated extensively in its papers on how those events are likely to unfold – the Committee's objections on the grounds of speculation are, at minimum, disingenuous.

14. The Committee also objects to the following passage from John M. Scholl's Declaration as calling for a legal conclusion: "Even absent the Diocese's obligations under the SIP to provide a defense to the other SIP Participants with respect to the CVA Cases, the Diocese would be required to monitor and participate in the CVA Cases, notwithstanding the bankruptcy automatic stay, because the claims asserted against other SIP Participants are so closely intertwined with the claims asserted against the Diocese that the Diocese may be exposed to collateral estoppel, adverse precedent, vicarious liability, or imputed admissions if he litigation continues." [Dkt. No. 312 at 3.] The Committee objects on the same basis to a similar statement made by Melissa Potzler, Esq. in her Declaration. [Dkt. 314 at 5.]

15. The statements by Mr. Scholl and Ms. Potzler (the Diocese's In-house Counsel) neither call for, nor posit, a legal conclusion. Rather, Mr. Scholl and Ms. Potzler are clearly articulating one of the reasons the Diocese believes it must monitor and participate in the Abuse Actions if they move forward, even if the Diocese is not named as a defendant in those Actions: that the allegations in the Abuse Actions are so intertwined with the proofs of claim asserted against the Diocese that the resolution of factual and legal issues in the Abuse Actions could have a host of negative future consequences against the Diocese. Moreover, Ms. Potzler, as the Diocese's In-house Counsel is permitted to testify regarding the Diocese's understanding of its legal obligations, notwithstanding the Committee's disagreement with those understandings.

---

are predicated on Ms. Potzler's understanding and perception of various Diocesan roles as formed during the pendency of her employment with the Diocese, and are thus clearly supported by a proper foundation.

## IV. The Committee's Hearsay Objections Are Baseless

16. Finally, the Committee objects to multiple statements in the Declarations on that ground that such statements constitute hearsay. Once again, these objections are baseless.

17. None of the statements the Committee challenges constitute hearsay under Federal Rule of Evidence 801. That rule defines "hearsay" as a statement that "the declarant does not make while testifying at the current trial or hearing," and that the "party offers in evidence to prove the truth of the matter asserted in the statement." F.R.E. 801. The challenged statements were made solely by the Witnesses in their respective Declarations. [*See* Dkt. No. 312 at 3-4; Dkt. No. 313 at 2-4; Dkt. No. 313 at 5.] The Diocese and the Committee agreed to stipulate to the introduction of the Declarations as the Witnesses' direct testimony, subject to cross-examination by the Committee. As such, the Declarations are to be treated in the same manner as direct testimony by the Witnesses – i.e., as testimony "at the current" hearing, which remains subject to cross-examination. As such, those statements do not fall within the definition of, and do not constitute, hearsay.

18. Even if one or more of the challenged statements was found to be hearsay, such statements would nevertheless be admissible in relation to the Motion. Consistent with the less formal evidentiary standards applicable to a preliminary injunction motion, the Second Circuit has held that even "hearsay evidence may be considered by a . . . court in determining whether to grant a preliminary injunction." *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) (holding that, at the "preliminary injunction stage," the "admissibility of hearsay . . . goes to weight, not preclusion"); *see also United States v. Buddhu,* 2008 WL 2355930, at *1 n.2 (D. Conn. June 5, 2008) ("In considering a motion for a preliminary injunction, the Court may rely on affidavits, depositions, and sworn testimony, even when they include hearsay." (citations omitted)).

19. Accordingly, for the reasons established herein, the Diocese respectfully requests that this Court overrule and reject the Committee's Objections in their entirety.

**WHEREFORE**, for the reasons set forth above, the Diocese respectfully requests that this Court enter an order overruling the Committee's Objections, and providing such other and further relief as the Court may deem just and proper.

Dated: November 27, 2023

BOND, SCHOENECK & KING, PLLC

By: /s/ Stephen A. Donato
Stephen A. Donato
Charles J. Sullivan
Grayson T. Walter
Brendan M. Sheehan
One Lincoln Center
Syracuse, NY 13202-1355
Telephone:  (315) 218-8000
Fax:  (315) 218-8100
Emails:  sdonato@bsk.com
 csullivan@bsk.com
 gwalter@bsk.com
 bsheehan@bsk.com

*Attorneys for The Diocese of Buffalo, N.Y.*