UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------
In re

    THE DIOCESE OF BUFFALO, N.Y.,          BK 20-10322 CLB


              Debtor.                      <u>DECISION & ORDER</u>
------------------------------------------------------

    THE DIOCESE OF BUFFALO, N.Y.,

              Plaintiff,               AP 20-01016 CLB

    v.

    JMH 100 DOE, ET AL,

              Defendants.
------------------------------------------------------

                  Bond, Schoeneck & King, PLLC
                  Stephen A. Donato, Esq., Grayson T. Walter, Esq.,
                  Charles J. Sullivan, Esq., Jeffrey D. Eaton, Esq.,
                  Brendan M. Sheehan, Esq., of counsel
                  One Lincoln Center
                  Syracuse, New York 13202-1355
                  Attorneys for The Diocese of Buffalo, N.Y.

                  Blank Rome LLP
                  James R. Murray, Esq., James S. Carter, Esq., of counsel
                  1271 Avenue of the Americas
                  New York, New York 10020
                  Attorneys for The Diocese of Buffalo, N.Y.

                  Pachulski Stang Ziehl & Jones LLP
                  Ilan D. Scharf, Esq., Brittany M. Michael, Esq.,
                  Iain A. W. Nasatir, Esq., of counsel
                  780 Third Avenue, 34th Floor
                  New York, New York 10017
                  Attorneys for Official Committee of Unsecured Creditors

Gleichenhaus, Marchese & Weishaar, PC
Scott Bogucki, Esq., of counsel
43 Court Street, Suite 930
Buffalo, New York 14202
Co-Counsel for Official Committee of Unsecured Creditors

Elsaesser Anderson, Chtd.
J. Ford Elsaesser, Esq., of counsel
414 Church Street, Suite 201
P.O. Box 1049
Sandpoint, Idaho 83864
Attorneys for Parish Steering Committee

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, NY 14604
Co-Counsel for Parish Steering Committee

Jeff Anderson & Associates, PA
Stacey Benson, Esq., Michael Finnegan, Esq., of counsel
366 Jackson Street, Suite 100
Saint Paul, Minnesota 55101
Attorneys for Various Defendants

Steve Boyd, PC
Stephen Boyd, Esq., of counsel
40 North Forest Rd
Williamsville, New York 14221
Attorneys for Various Defendants

Chiacchia & Fleming, LLP
Daniel J. Chiacchia, Esq., of counsel
5113 South Park Avenue
Hamburg, New York 14075
Attorneys for Various Defendants

Lipsitz Green Scime Cambria LLP
Amy C. Keller, Esq., of counsel
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Attorneys for Various Defendants

O'Melveny & Myers LLP
Tancred V. Schiavoni, Esq., of counsel
Times Square Tower
7 Times Square
New York, New York 10036
Attorneys for Aetna Insurance Company

Clyde & Co US LLP
Marianne G. May, Esq., of counsel
340 Mt. Kemble Ave., Suite 300
Morristown, New Jersey 07340
Attorneys for Aetna Insurance Company

Rivkin Radler LLP
Jay D. Kenigsberg, Esq., of counsel
926 RXR Plaza
Uniondale, New York 11556
Attorneys for Hanover Insurance Company

Goldberg Segalla LLP
Adam R. Durst, Esq., of counsel
665 Main Street
Buffalo, New York 14203-1425
Attorneys for Employers Insurance Company of Wausau,
Wausau Underwriters Insurance Company, Nationwide
Insurance Company of America, and Nationwide Mutual
Insurance Company

Gibbons P.C.
Robert K. Malone, Esq., of counsel
One Gateway Center
Newark, New Jersey 07102
Attorneys for Selective Insurance Company of New York

Kenney Shelton Liptak Nowak LLP
Judith Treger Shelton, Esq., of counsel
The Calumet Building
233 Franklin Street
Buffalo, New York 14202
Attorneys for Selective Insurance Company of New York

       Coughlin Midlige & Garland LLP
       William T. Corbett, Jr. Esq., of counsel
       350 Mount Kemble Avenue
       PO Box 1917
       Morristown, New Jersey 07962
       Attorneys for Selective Insurance Company of New York

       Gimigliano Mauriello & Maloney, PA
       John Maloney, Esq., of counsel
       163 Madison Avenue, Suite 500
       P.O. Box 1449
       Morristown, New Jersey 07962-1449
       Attorneys for Hartford Accident and Indemnity Company,
       Hartford Fire Insurance Company and First State Insurance
       Company

       Crowell & Moring LLP
       Miranda Turner, Esq., of counsel
       1001 Pennsylvania Ave, NW
       Washington, District of Columbia 20004
       Attorneys for The Continental Insurance Company

       Office of the U.S. Trustee
       Joseph W. Allen, Esq.
       Olympic Towers
       300 Pearl Street, Suite 401
       Buffalo, New York 14202

Carl L. Bucki, Chief U.S.B.J.

     The Diocese of Buffalo again moves to enjoin the prosecution of certain state court lawsuits against parishes and other affiliated entities. The controlling issue is whether this Court should exercise authority under 11 U.S.C. § 105 to stay all such litigation, particularly in the face of opposition from the Official Committee of Unsecured Creditors (the "Committee").

     The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 28, 2020. In one of its first-day motions, the debtor

represented that "[m]any of the unsecured creditors in the Chapter 11 case are individuals whose claims against the Diocese are premised on allegations of sexual abuse." Indeed, more than 900 claims for damages arising from sexual abuse have been filed in this case. Many of these creditors assert that the Diocese shares liability with one or more affiliates. Meanwhile, in state court, abuse claimants have initiated nearly 800 lawsuits against either the Diocese or its affiliates or both.

The Diocese of Buffalo currently maintains an affiliation with 161 parishes and with various schools and other Catholic entities. Additionally, the debtor has identified 211 closed or merged parishes, some of which are named as defendants in actions brought to recover damages for sexual abuse. All of the parishes and affiliates are separately incorporated.

On May 2, 2020, the Diocese commenced the above referenced adversary proceeding to enjoin the continued prosecution of lawsuits against parishes and other affiliates. In the context of this adversary proceeding, the Court has on six prior occasions granted temporary injunctive relief.[1] Meanwhile, on behalf of certain claimants, the Creditors' Committee has stipulated periodically to an extension of the stay of state court litigation. By its terms, the most recent of these stipulations terminated on September 30, 2023. Under our Decision and Order of July 14, 2023, this termination also caused a termination of a stay that we had granted with regard to other claimants not subject to the Committee's stipulation. In response to these

---

[1] *See In re Diocese of Buffalo, N.Y.*, 618 B.R. 400 (Bankr. W.D.N.Y. 2020); *In re Diocese of Buffalo, N.Y.*, 623 B.R. 354 (Bankr. W.D.N.Y. 2020); *In re Diocese of Buffalo, N.Y.*, 626 B.R. 866 (Bankr. W.D.N.Y. 2021); *In re Diocese of Buffalo, N.Y.*, 633 B.R. 185 (Bankr. W.D.N.Y. 2021); *In re Diocese of Buffalo, N.Y.*, 642 B.R. 350 (Bankr. W.D.N.Y. 2022); and *In re Diocese of Buffalo, N.Y.*, 652 B.R. 574 (Bankr. W.D.N.Y. 2023).

developments, the Diocese now renews its motion for a preliminary injunction to stay all state court abuse litigation against its affiliates through April 15, 2024.

This Court has previously approved the selection of two mediators to assist the parties in negotiating the terms of a confirmable plan of reorganization. In its present motion, the debtor argues that state court litigation "will be highly disruptive to the course of mediation, will likely slow the progress of this case, will be a huge drain on the resources of the Diocese, and will diminish the ability of the Related Entities to contribute to a survivor trust under a chapter 11 plan." Forty-nine claimants oppose any injunctive relief. Speaking for most of the creditors, the Committee advises that it does not object to a stay of actions involving instances of alleged abuse after July 1, 1986, for which any recovery might impact shared insurance or the use of Diocesan funds. Additionally, the Committee agrees that no abuse survivor should be allowed to enforce any judgment without further authorization from the Bankruptcy Court. Otherwise, the Committee asserts that the debtor's motion should be denied "because (1) the automatic stay does not apply to the State Court Actions in which the Diocese is not a defendant and there is no material impact on shared insurance; (2) the Diocese fails to establish entitlement to an injunction under Section 105(a); and (3) the Diocese cannot meet its burden of proof regarding each of the State Court Actions that it seeks to enjoin under the applicable four-factor test for a preliminary injunction."

## Discussion

The Diocese and the Committee agree that even without further order of this

Court, section 362 of the Bankruptcy Code already stays many of the outstanding state actions. For example, 11 U.S.C. § 362(a)(1) imposes an automatic stay of litigation against the debtor itself. Meanwhile, insurance policies of the debtor are property of the bankruptcy estate. Pursuant to 11 U.S.C. § 362(a)(3), the automatic stay also extends to actions that impact any such property interest. *See In re Diocese of Buffalo, N.Y.*, 618 B.R. 400, 405 (Bankr. W.D.N.Y. 2020). Further, many defendants in this adversary proceeding have defaulted in answering the debtor's complaint. Presumably, these defaulting defendants do not dispute the imposition of a stay. Nonetheless, we have previously observed that at least some objecting creditors "have claims arising from events for which no insurance has been identified." *In re Diocese of Buffalo, N.Y.*, 633 B.R. 185, 187 (Bankr. W.D.N.Y. 2021). For these parties, litigation against parishes would "implicate no property interest that would impose an automatic stay of litigation against defendants other than the Diocese itself." *Id.*

The present adversary proceeding seeks a judgment declaring the existence of a stay as against 816 individuals. This Court stands ready to schedule a hearing to identify the defendants against whom a default judgment may be entered. As to non-defaulting defendants, we are prepared to consider evidence regarding the applicability of the automatic stay to each of the hundreds of outstanding lawsuits in state court. Additionally, we welcome argument about whether a litigant would violate the automatic stay by moving to sever the Diocese from an action. In its present motion, however, the Diocese seeks not a decision about the application of 11 U.S.C. § 362 to each particular defendant, but instead, a temporary restraint against every defendant.

As we previously held in our decision of October 21, 2021 (the "October 21st Decision"), such generalized relief is available only through use of powers granted under 11 U.S.C. § 105(a). *In re Diocese of Buffalo, N.Y.*, 633 B.R. at 187. That decision also recited the standard that applies to the debtor's current request: "Pursuant to 11 U.S.C. § 105(a), this Court may issue any order 'that is necessary or appropriate to carry out the provisions of [Title 11].' These provisions include section 1106(a)(5) and its call for an expeditious plan confirmation." *Id.* at 189.

Our October 21st Decision granted a general stay of state court litigation in order to facilitate the development of a plan that might include a global settlement of abuse claims against the Diocese, as well as abuse claims against parishes and affiliates, as well as parish and affiliate claims against the Diocese for indemnification and contribution. The implicit expectation was that any such plan would include a channeling order, that is, "the funneling of claims into one proceeding to preserve the debtors' estate." *In re Purdue Pharma L.P.*, 69 F.4th 45, 75 (2d Cir. 2023). If one assumes that a Chapter 11 Plan can include a nonconsensual channeling order, then this Court can consider a stay that reasonably facilitates the development of such a proposal.

On May 30, 2023, the Court of Appeals for the Second Circuit issued its decision in *In re Purdue Pharma, L.P.* We need not now discuss the complexities of the majority opinion, but note the Court's conclusion "that two sections of the Bankruptcy Code, 11 U.S.C. §§ 105(a), 1123(b)(6), jointly provide the statutory basis for the bankruptcy court's authority to approve a plan that includes nonconsensual releases of third-party

claims against non-debtors." 69 F.4th at 57.  In a concurring opinion, Circuit Judge Richard C. Wesley emphasized his reliance on existing precedents:

> "Does a bankruptcy court have the power to release direct or particularized claims asserted by third parties against nondebtors without the third parties' consent?  Yes – this Court said so in *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992).  *Drexel* has not been overruled either by the Supreme Court or by this Court sitting *en banc*.  It is binding.  Consequently, although the parties have sacrificed a forest on the matter – and rightly so, weighty as it is – that ship has, for better or worse, sailed.  I therefore reluctantly concur with the majority's conclusion that a bankruptcy court has the authority to approve a Chapter 11 reorganization plan that includes nonconsensual nondebtor releases."

69 F.4th at 85.  In previously granting stays of litigation against parishes and affiliates, this Court likewise assumed the state of law as described by Judge Wesley.  However, on August 10, 2023, the Supreme Court granted certiorari to consider an appeal of the Second Circuit's decision in *Purdue Pharma*.  It then heard oral argument on December 4, 2023.  Practitioners of bankruptcy law now anxiously await a decision.

In the event that the Supreme Court were to reverse the Second Circuit's ruling in *Purdue Pharma*, the result might severely diminish any likelihood that the Diocese could confirm a plan that provides a nonconsensual channeling order for the benefit of parishes and affiliates.  If the debtor were so constrained as to long-term relief, how can it justify a temporary restraint?  We will allow for a future time an opportunity to respond to that question.  For now, the uncertainty of outcome works to inhibit our ability to analyze the appropriateness of the temporary injunction that the debtor requests.  For certain, however, the parties are constrained from knowing the type of

plan that they can propose.

In the event that the Supreme Court were to affirm the Second Circuit's decision in *Purdue Pharma*, a renewed stay of affiliate litigation is not inevitable. As we observed in the October 21st Decision, "the justification for a stay under 11 U.S.C. §105(a) will surely begin to evaporate if the debtor procrastinates in working toward a global and just settlement." 633 B.R. at 189. For now, the Court will defer this review until after all receive the anticipated benefit of guidance from higher authority.

Strident opposition to the debtor's motion suggests that at least some claimants are unlikely to consent to a channeling order. Under these circumstances, a pause is necessary to enable the parties and the Court to proceed with knowledge of the law regarding whether a plan can enjoin litigation against third parties. Accordingly, the Court will grant a temporary injunction until the earlier of the requested date of April 15, 2024, or twenty days after the Supreme Court issues its decision in *Purdue Pharma*. The debtor may use those twenty days to bring before this Court any appropriate motion. While we await the Supreme Court's decision, the parties should continue in good faith to seek a mediated settlement of all outstanding disagreements.

So ordered.

Dated: January 9, 2024            \_\_/s/ Carl L. Bucki_____
    Buffalo, New York           Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y